No. 26-12692-CC

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP, JR., ERIC
TRUMP, THE TRUMP ORGANIZATION, LLC,
Plaintiffs-Appellants,

ALEJANDRO BRITO, DANIEL EPSTEIN,
Interested Parties-Appellants

v.

INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE
TREASURY,
Defendants,

THIRTY-FIVE FORMER FEDERAL JUDGES,
Interested-Parties-Appellees.

On Appeal from the United States District Court
for the Southern District of Florida, No. 1:26-cv-20609 (Kathleen M. Williams)

DEFENDANTS' RESPONSE TO APPELLANTS' TIME-SENSITIVE
MOTION FOR STAY

R. TRENT MCCOTTER
*Acting Deputy Attorney General*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-514-2105*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendants certifies that the following have an interest in the outcome of this appeal:

1) Aburos, Tal – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

2) Biazzo, Corey J. – Pro se Amicus in the District Court

3) Bingham, Lauren C. – Counsel for Amicus in the District Court CREW

4) Bissell, Retired Chief Judge John W. – Appellee and Amicus in the District Court

5) Blanche, Todd – Attorney General, U.S. Department of Justice

6) Boisture, Pooja A. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

7) Bonta, Rob – Amicus, Attorney General of California, Lead Signatory for Twenty-Three State Attorneys General Amici

8) Bradley, Conor – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

9) Bridgman, Glenn – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

10) Brito, Alejandro – Appellant and Counsel for Plaintiffs in the District Court

11) Brito, PLLC – Counsel for Plaintiffs-Appellants

12) Brook, Davida – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

13) Brown, Retired Judge Geraldine Soat – Appellee and Amicus in the District Court

14) Cai, Angela – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

15) Carullo, Nick – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

16) Castillo, Retired Chief Judge Rubén – Appellee and Amicus in the District Court

17) Citizens for Responsibility and Ethics in Washington (CREW) – Amicus in the District Court

18) Clemon, Retired Chief Judge U.W. – Appellee and Amicus in the District Court

19) Common Cause – Amicus in the District Court

20) Corp, Ian Michael – Counsel for Plaintiffs-Appellants

21) Cox, Retired Judge Susan E. – Appellee and Amicus in the District Court

22) Debevoise & Plimpton LLP – Counsel for Amicus in the District Court

23) Democracy Defenders Action – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

24) Democracy Forward Foundation – Counsel for Amici in the District Court

Former Government Officials & Public Interest Organizations

25) Denlow, Retired Judge Morton – Appellee and Amicus in the District Court

26) DLA Piper LLP (US) – Counsel for Plaintiffs-Appellants President Donald J.

Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro

Brito, and Daniel Epstein

27) Dow, Randy R. – Counsel for Amici in the District Court Twenty-Three State

Attorneys General

28) Duncan, Retired Judge David K. – Appellee and Amicus in the District Court

29) Eisen, Norman L. – Counsel for Appellees Retired Judges Michael Luttig and

Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of

Representatives

30) Epstein & Co. LLC – Counsel for Plaintiffs-Appellants

31) Epstein, Daniel Z. – Appellant and Counsel for Plaintiffs in the District Court

32) Farchadi, Kayvan A. – Counsel for Amicus in the District Court CREW

33) Finnegan, Retired Chief Judge Sheila – Appellee and Amicus in the District Court

34) Fogel, Retired Judge Jeremy – Appellee and Amicus in the District Court

35) Francis IV, Retired Judge James C. – Appellee and Amicus in the District Court

36) Gay, Faith E. – Amicus in the District Court

37) Gelber Schachter & Greenberg, P.A. – Counsel for Amici in the District Court

Former Government Officials & Public Interest Organizations

38) Gertner, Retired Judge Nancy – Appellee and Amicus in the District Court

39) Gleeson, John – Amicus in the District Court

40) Gold, Retired Judge Steven M. – Appellee and Amicus in the District Court

41) Goldgar, Retired Judge A. Benjamin – Appellee and Amicus in the District Court

42) Green, Nicholas R. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

43) Greenberg, Gerald E. – Counsel for Amici in the District Court, Former Government Officials & Public Interest Organizations

44) Grimm, Retired Judge Paul W. – Appellee and Amicus in the District Court

45) Haier, Aaron E. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

46) Halpern, Josh – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

47) Henderson, Retired Judge Thelton – Appellee and Amicus in the District Court

48) Henry, Retired Chief Judge Robert Harlan – Appellee and Amicus in the District Court

49) Hewitt, Jillian – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

50) Holwell, Retired Judge Richard J. – Appellee and Amicus in the District Court

51) Horton, Rachel A.H. – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

52) Hoshijima, Tsuki – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

53) Huvelle, Retired Judge Ellen Segal – Appellee and Amicus in the District Court

54) Internal Revenue Service – Defendant

55) Jasrasaria, Jyoti – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

56) JH Legal PLLC – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

57) Jonas, Stephen A. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

58) Jones III, Retired Judge John E. – Appellee and Amicus in the District Court

59) Joshi, Nandan – Counsel for Amicus in the District Court Public Citizen

60) Keneally, Kathryn – Amicus in the District Court

61) Khan, Ayesha – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

62) Kirn, Harald H. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

63) Klugh, Richard C. – Counsel for Plaintiffs-Appellants

64) Koskinen, John – Amicus in the District Court

65) Lett, Hon. Enjolique A. – U.S. Magistrate Judge

66) Liao, Cynthia – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

67) Luttig, Retired Judge Michael – Appellee and Amicus in the District Court

68) Lynn, Retired Judge Barbara M. G. – Appellee and Amicus in the District Court

69) Mann, Retired Judge Roanne L. – Appellee and Amicus in the District Court

70) Manne, Neal S. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

71) Matz, Retired Judge A. Howard – Appellee and Amicus in the District Court

72) McCotter, R. Trent – Counsel for Defendants

73) Michel, Retired Chief Judge Paul – Appellee and Amicus in the District Court

74) Milelli, Rosario – Nonparty

75) Munger Tolles & Olson LLP – Counsel for Amicus in the District Court

76) Nelson, Justin A. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

77) Newman, Lisa – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

78) O'Malley, Retired Judge Kathleen – Appellee and Amicus in the District Court

79) O'Neil, David A. – Amicus in the District Court

80) Ogden, David W. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

81) Olson, Nina – Amicus in the District Court

82) Oprison, Christopher G. – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

83) Owsley, Retired Judge Brian – Appellee and Amicus in the District Court

84) Perryman, Skye L. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

85) Platkin LLP – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

86) Platkin, Matthew J. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

87) Pro, Retired Judge Philip M. – Appellee and Amicus in the District Court

88) Project On Government Oversight – Amicus in the District Court

89) Public Citizen – Amicus in the District Court

90) Ramanathan, Ravi – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

91) Rennie, Russell – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

92) Rivero Mestre LLP – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

93) Rivero, Andrés – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

94) Roberts, Retired Judge Victoria A. – Appellee and Amicus in the District Court

95) Rothenberg, Gilbert – Amicus in the District Court

96) Savage, Zach – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

97) Scheindlin, Retired Judge Shira A. – Appellee and Amicus in the District Court

98) Selendy Gay PLLC – Counsel for Amicus in the District Court

99) Selendy, Philippe Z. – Amicus in the District Court

100) Shackelford, Jr., Stephen – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

101) Sheehan, Daniel C. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

102) Shih, Daniel J. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

103) Smith, Retired Judge Fern M. – Appellee and Amicus in the District Court

104) Stephens III, Glenn – Requested Intervenor in District Court

105) Stoughton, Corey – Amicus in the District Court

106) Sus, Nikhel S. – Counsel for Amicus in the District Court CREW

107) Susman Godfrey L.L.P. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

108) Tenjido-Eljaiek, Daniela – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

109) The Trump Organization, LLC – Plaintiff-Appellant

110) Thurston, Robin F. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

111) Tinder, Retired Judge John D. – Appellee and Amicus in the District Court

112) Trump Jr., Donald J. – Plaintiff-Appellant

113) Trump, Eric – Plaintiff-Appellant

114) Trump, President Donald J. – Plaintiff-Appellant

115) Ungaro, Retired Judge Ursula – Appellee and Amicus in the District Court

116) United States Department of the Treasury – Defendant

117) Verrilli, Jr., Donald B. – Amicus in the District Court

118) Walsh, Daniel R. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

119) Ward, Retired Judge T. John – Appellee and Amicus in the District Court

120) Williams, Hon. Kathleen M. – U.S. District Judge

121) Wolf, Retired Judge Mark L. – Appellee and Amicus in the District Court

122) Woodward, Jr., Stanley E. – Associate Attorney General, U.S. Department of Justice

123) Yeakel, Retired Judge Lee – Appellee and Amicus in the District Court

I am unaware of any publicly traded company that has an interest in the outcome of this appeal. Counsel for Appellant The Trump Organization, LLC has certified that The Trump Organization, LLC has no parent organization, and that no publicly traded company or corporation holds a 10% or more interest in The Trump Organization, LLC.

Dated: August 12, 2026

*/s/ R. Trent McCotter*
R. Trent McCotter

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..................................................................... 1

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION AND SUMMARY ................................................................. 1

STATEMENT ...................................................................................................... 1

    A.    The Littlejohn Leak of Sensitive IRS Information. .................................. 1

    B.    Prior Proceedings .................................................................................. 2

ARGUMENT ....................................................................................................... 4

    I.    There Is No Improper Purpose in Suing and Then Later Settling. ........... 5

        A.    The Department of Justice Routinely Settles Cases Even Before Litigation Commences. ............................................................. 5

        B.    The District Court Could Not Have Been "Tricked"— Because the Parties Never Asked the District Court to Do Anything Regarding the Merits or Settlement. ............................... 7

    II.    Supreme Court Precedent Confirms There Was an Article III Case or Controversy. ....................................................................... 8

        A.    There Was Adversity Under Longstanding Supreme Court Precedent. ................................................................................ 9

        B.    The Undisputed Facts Confirm Adversity. ..................................... 10

        C.    The District Court Could Not Reject the Complaint's Allegation That President Trump Was Suing in His Personal Capacity. ............................................................................ 13

    III.    In Any Event, Sanctions Are Unavailable. .................................................. 14

i

A. Even in the District Court's View, the Case Raised Novel Legal Questions About Article III..................................................... 14

B. Accepting the District Court's Offer to "Review" the Settlement Agreement Would Have Violated Article III. ............ 16

C. The District Court's Gag Order Is Unlawful. ................................ 18

IV. The Appearance of Politically Based Timing of the District Court's Order Warrants Reassignment....................................... 18

CONCLUSION ......................................................................................................... 22

CERTIFICATE OF COMPLIANCE .......................................................................... 23

CERTIFICATE OF SERVICE ................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bost v. Illinois State Bd. of Elections,*
   607 U.S. 71 (2026) ...................................................................................... 12

*Carney v. Adams,*
   592 U.S. 53 (2020) ...................................................................................... 16

*Davis v. Carl,*
   906 F.2d 533 (11th Cir. 1990) .................................................................. 14

*FEC v. Wisc. Right to Life, Inc.,*
   551 U.S. 449 (2007) .................................................................................... 17

*Griffin v. IRS,*
   730 F. Supp. 3d 1312 (S.D. Fla. 2024) ................................................... 11

*Hyde v. Irish,*
   962 F.3d 1306 (11th Cir. 2020) ................................................................ 14

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH,*
   141 F.3d 1434 (11th Cir. 1998) .................................................................. 6

*Kentucky v. Graham,*
   473 U.S. 159 (1985) .................................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of America,*
   511 U.S. 37 (1994) ...................................................................................... 12

*Lynn's Food Stores, Inc. v. United States,*
   679 F.2d 1350 (11th Cir. 1982) ................................................................ 16

*Patterson v. Lew,*
   265 F. App'x 767 (11th Cir. 2008) .......................................................... 14

*Purchasing Power, LLC v. Bluestem Brands, Inc.,*
   851 F.3d 1218 (11th Cir. 2017) ................................................................ 14

*Safe Harbor Int'l LLC v. Booz Allen Hamilton, Inc.*,
  No. 25-CV-00139-LKG, 2026 WL 900051 (D. Md. Apr. 2, 2026)............................ 11

*Tello v. Dean Witter Reynolds. Inc.*,
  410 F.3d 1275 (11th Cir. 2005) .................................................................. 11

*Trump v. Mazars USA, LLP*,
  591 U.S. 848 (2020) .................................................................................. 13

*United States v. Nixon*,
  418 U.S. 683 (1974) ................................................................................ 8, 9

*United States v. Torkington*,
  874 F.2d 1441 (11th Cir. 1989) .................................................................. 20

*United States v. Windsor*,
  570 U.S. 744 (2013) .................................................................................... 9

**Statutes**

26 U.S.C. § 7122 ......................................................................................... 5

28 U.S.C. § 2414 ......................................................................................... 5

28 U.S.C. § 2672 ......................................................................................... 5

28 U.S.C. § 2677 ......................................................................................... 5

## INTRODUCTION AND SUMMARY

After *amici* with no cognizable legal interest in this case filed a frivolous Rule 60 motion, the District Court issued an extraordinary order imposing sanctions on Plaintiffs and their counsel for voluntarily dismissing a case that was settled before Defendants even appeared. Equally jarring is the court's decision to impose a seeming gag order on all "Parties," arguably barring them from "referring to" or "using, offering, admitting, or citing" any provision of the settlement that the Parties had agreed to outside of that court, and over which the court never had authority or jurisdiction. ECF106 at 47. The District Court's Order should be stayed immediately.

## STATEMENT

### A. The Littlejohn Leak of Sensitive IRS Information.

In 2019 and 2020, Charles Littlejohn, who Plaintiffs allege was jointly employed by the IRS and one of its contractors, illegally obtained access to and disclosed significant amounts of sensitive tax returns and return information to numerous media outlets. ECF1, ¶ 7. Littlejohn obtained his position for the express purpose of targeting President Donald Trump. ECF1, ¶ 72. The result was dozens of articles, including some entirely false, about President Trump's sensitive tax information. ECF1, ¶ 74.

Littlejohn was eventually identified as the leaker, and he was charged and sentenced to the statutory maximum for unlawful disclosure of tax information. In 2024, the IRS sent letters to President Trump, Melania Trump, Eric Trump, Donald Trump Jr., and The Trump Organization stating that "[a]n Internal Revenue Service

(IRS) contractor has been charged with the unauthorized inspection or disclosure of your tax return or return information, between 2018 and 2020." ECF1, ¶¶ 76-84.

### B.    Prior Proceedings

On January 29, 2026, Plaintiffs—President Trump, Donald Trump Jr., Eric Trump, and The Trump Organization—filed suit for breaches of their statutory privacy rights. ECF1. That was the two-year anniversary of when President Trump and Mrs. Trump received the above-identified notice from the IRS. ECF1, ¶ 76. President Trump expressly sued in his private capacity. ECF1, ¶ 1.

On April 17, 2026, Plaintiffs asked the District Court for a 90-day extension of all deadlines because the Parties were "engage[d] in discussions designed to resolve this matter and to avoid protracted litigation." ECF40 at 2.

On April 24, 2026, rather than rule on that motion, the District Court instead ordered the Parties "to address the question of the Cout's subject matter jurisdiction," with briefs due by May 20, 2026. ECF41 at 1, 4. On April 29, 2026, the District Court appointed three different sets of amici to address jurisdiction. ECF43.

On May 14, 2026, the *amici* filed their brief, concluding that the Article III "adversity inquiry likely cannot be concluded at this time." ECF45 at 14.

On May 18, 2026, before any responsive filing was due, Plaintiffs filed a Rule 41(a) notice of dismissal, which automatically divested the District Court of jurisdiction. ECF52. That same morning, the Department of Justice announced that the case had been settled and made the Settlement Agreement publicly available. Plaintiffs agreed to

accept no money for the dismissal of their tax claims, as well as for withdrawing two Federal Tort Claims Act claims that were pending in administrative proceedings. Rather, Plaintiffs accepted an apology from the government. The Settlement Agreement contemplated the creation of the "Anti-Weaponization Fund," mirroring President Obama-era settlement commissions that let aggrieved individuals submit claims for compensation. The Department later announced a mutual release of claims between the Parties.

Because the case had settled, Defendants did not file an appearance in the case. The same day that Plaintiffs filed their notice of dismissal, the District Court closed the case, acknowledging the court had lost jurisdiction and canceling all deadlines. ECF62.

Nine days later, however, a group of retired judges with no cognizable legal interest in the matter filed a motion to reopen the case, relying in part on an improper characterization of precedent about when a non-party with no legal interest could move to reopen. ECF63 at 6.

On May 29, 2026, the District Court issued an order directing only "Plaintiffs" to address "(1) the charges of collusion and whether the Parties are truly adverse; (2) the assertion that the dismissal in this case was premised on deception by the Parties; and (3) the question of whether the case should be reopened because the Court was the 'victim of a fraud.'" ECF65 at 3. Plaintiffs filed a detailed response on June 12, 2026.

On July 13, 2026, the District Court issued a 56-page Order accusing Plaintiffs of bringing this case for "improper purpose" because they allegedly desired to obtain a

3

settlement, and also because there was ultimately no Article III jurisdiction because one Plaintiff (President Trump in his personal capacity) allegedly controlled all Defendants. ECF106. The District Court concluded that these novel determinations were so obvious that any contrary view was literally sanctionable.

The District Court reported one of Plaintiffs' attorneys to the Florida bar, barred another from pro hac vice practice for a year, and then issued a gag order on all Parties—including Defendants, who had never even appeared:

> The Parties are prohibited from referring to the purported "settlement agreement," or using, offering, admitting, or citing any of its provisions in any judicial, administrative, regulatory, arbitration, or any other official proceeding as evidence of a "settlement" reached in this matter, Case No. 26-cv-20609-KMW (S.D. Fla. 2026).

ECF106 at 47.

The District Court criticized the Department of Justice for settling rather than raising arguments that other courts had rejected. ECF106 at 22-24. The District Court ordered a copy of the Order be sent to the bars of New York and the District of Columbia, where then-Acting Attorney General Todd Blanche and Associate Attorney General Stanley Woodward are barred, respectively. ECF106 at 53-54.

## ARGUMENT

This Court should immediately stay the District Court's Order pending appeal because Plaintiffs-Appellants are exceedingly likely to prevail on the merits. As their brief explains, they also satisfy all other relevant factors for a stay.

## I.	There Is No Improper Purpose in Suing and Then Later Settling.

One of the two fundamental premises of the District Court's Order was that Plaintiffs filed this suit with an "improper purpose" because the Complaint was a "vehicle to achieve a predetermined outcome." ECF106 at 43. But that makes zero sense, for the simple reason that a party need not file a lawsuit in order to obtain a full settlement with the federal government. Given this, if there had been some plan to collude (there wasn't), filing a complaint would be the last thing that Plaintiffs would do, because it would ensure public attention.

Nor can the District Court claim that it was somehow tricked into blessing or lending credibility to the settlement, for the simple reason that the Parties never asked the District Court to do *anything* regarding the merits or settlement. In fact, the District Court lost jurisdiction over this case months ago.

### A.	The Department of Justice Routinely Settles Cases Even Before Litigation Commences.

The government has broad authority to settle claims under the Federal Tort Claims Act, and it does so countless times a year, even absent the formal filing of a suit. Indeed, the FTCA expressly authorizes settlement absent litigation. *See* 28 U.S.C. §§ 2672, 2677. Further, the Attorney General has express authority to make "compromise settlements" of suits and even of "imminent litigation" against the United States. 28 U.S.C. § 2414; *see also* 26 U.S.C. § 7122 (tax matters).

The Attorney General may "exercise broad discretion in determining when, and on what terms, settlement would best serve the interests of the United States." *Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion*, 23 Op. O.L.C. 126, 135 (1999). And that broad settlement power extends to prospective claims that have not even been filed. *See* Memorandum for the Associate Attorney General, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Inslaw Claims and Attorney General's Settlement Authority* (Nov. 2, 1993).

The notion that Plaintiffs needed to formally file a lawsuit in order to obtain a settlement is thus simply wrong as a matter of law—and also logic. In reality, if the Parties here wanted to obtain a collusive settlement (they didn't), then that could have—and indeed, would have—occurred completely outside the purview of a pending lawsuit, and completely outside the specter of immediate public review. They could have done so either by submitting an administrative claim under the FTCA, or by simply threatening litigation. The fact that Plaintiffs nonetheless filed a public lawsuit and then Defendants promptly published the subsequent settlement agreement is a powerful indicator that the suit was not commenced for a collusive purpose. After all, collusive settlements hide exceedingly poorly in plain sight.

Relatedly, the District Court concluded that suing with the purpose of obtaining a settlement is also an "improper purpose." ECF106 at 39. That will come as a surprise to every civil litigator in the country. Nobody files suit intending to lose, and most civil cases settle, so most suits are filed with the intent of yielding a settlement. To be sure,

it could be an "improper purpose" to demonstrate "excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998) (overruled on other grounds). But the lawsuit here was the first ever filed by Plaintiffs on this issue, and nobody can dispute that they indeed did suffer significant harm from the acts of an individual who was convicted and sentenced to prison. Further, as explained below, in the prior cases where other plaintiffs sued over the same underlying conduct, the government's motions to dismiss were *denied.* There certainly can be no improper purpose in suing with the goal of obtaining a settlement in such a case.

**B.      The District Court Could Not Have Been "Tricked"—Because the Parties Never Asked the District Court to Do Anything Regarding the Merits or Settlement.**

Perhaps recognizing this illogic, the District Court surmised that Plaintiffs filed suit to cloak it in a "patina of legitimacy" from the court itself. ECF106 at 2. Of course, the court offered zero direct evidence of this, and for good reason: it is impossible for the court to have been tricked into participating in any supposed charade—or lending a patina—for the simple reason that the Parties *never asked the court to do anything* regarding the merits or settlement.

Plaintiffs filed a complaint and voluntarily dismissed it with prejudice before any responsive filing was due. As such, the Parties did not ask the District Court to take *any* action regarding the merits or settlement; and Plaintiffs' Rule 41 notice stripped the court of jurisdiction before it could have opined on any aspect of the case or settlement.

*See Estate of W. v. Smith*, 9 F.4th 1361, 1367-68 (11th Cir. 2021); *see also* Part III.B, *infra* (explaining that the District Court's offer to "review" the Settlement Agreement violated Article III of the Constitution). Rule 41 is so absolute that even the District Court's order purporting to close the case (ECF62) was technically a "nullity." *Estate of W.*, 9 F.4th at 1367-68.[1]

The District Court's theory seems to be that by fully resolving the case *before* the District Court could have taken any substantive action, the Parties somehow caused the District Court to get involved and lend "cover" to their private settlement. ECF106 at 43. Respectfully, that is incoherent.

## II.     Supreme Court Precedent Confirms There Was an Article III Case or Controversy.

The second core premise of the District Court's Order was that the suit was improper or collusive because there was no Article III adversity between the Parties. Of course, the notion that a complaint is sanctionable if the plaintiffs are ultimately found to lack standing is obviously wrong. *See* Part III.A, *infra*. In any event, the District Court's premise is incorrect: There *was* adversity here, both as a matter of blackletter law, and as a matter of the basic facts on the ground—even viewed from the warped lens of the District Court.

---

[1] The terms of the Settlement Agreement were public before the District Court issued its case-closing order, yet the District Court clearly saw nothing suspicious at that time.

### A. There Was Adversity Under Longstanding Supreme Court Precedent.

The District Court held that there could not be adversity in this suit as a matter of law because the President was suing the Executive Branch. Order 54-55. But the Supreme Court rejected that argument fifty years ago in *United States v. Nixon*, 418 U.S. 683 (1974), where President Nixon sought to contest a subpoena issued against him by the Special Prosecutor. The Court held that such a dispute was justiciable—even though the Special Prosecutor was "subordinate" to the President, and even though the Executive "has exclusive authority and absolute discretion to decide whether to prosecute a case"—because the Special Prosecutor was wielding his existing authority in a manner adverse to the President. *Id.* at 692-97.

The existence of adversity is even more obvious here, where the underlying dispute did not involve executive power but instead involved a tort committed against the President as a private citizen. As discussed more below, the clearest indicator that the Parties were genuinely adverse was that Plaintiffs did not get what the complaint demanded. The Complaint sought $10 billion, and the settlement provided them no money but rather an apology. Typically, the defining feature of a collusive lawsuit is that the plaintiff gets exactly what he initially demanded; by contrast, a defining feature of a case or controversy is when the defendant does not acquiesce to the plaintiff's demands. *Cf. United States v. Windsor*, 570 U.S. 744, 758 (2013) ("Windsor's ongoing claim for

funds that the United States refuses to pay thus establishes a controversy sufficient for Article III jurisdiction.").

Even though Plaintiffs raised *Nixon* below, the District Court ignored it entirely, instead insisting that one "need only look" to the fact that Donald J. Trump is President, and that the President controls the Executive Branch under our system of government. ECF106 at 54-55. That simplistic approach is irreconcilable with *Nixon*, where one equally "need only look" to the fact that Richard Nixon was the President, yet there was still adversity for Article III purposes.

**B.      The Undisputed Facts Confirm Adversity.**

The undisputed facts of this case demonstrate adversity under any definition. Once more, the clearest marker of adversity is that one side doesn't get what it initially demanded. And here, while Plaintiffs sought $10 billion in damages, it is undisputed that they received no monetary compensation, but rather an apology and a mutual release of claims. If the lawsuit was just a collusive, foregone conclusion, then Plaintiffs would have immediately received what they demanded. But they didn't. And it certainly would not have taken 109 days to reach a settlement.

Tellingly, even the District Court stumbled into recognizing this. After the court insisted for page after page that the President had "direct, unassailable control over" the Defendants, ECF106 at 6, the court later observed that then-Acting Attorney General Blanch had apparently issued a "unilateral repudiation" of the Anti-Weaponization Fund, ECF106 at 36. But if Defendants were under the "unassailable

control" of the President, then it makes no sense that Mr. Blanche could make any "unilateral" decision. The District Court again tried to have it both ways: at first, the court insisted Defendants must do whatever Plaintiffs say; but by the end, the court insisted Plaintiffs must do whatever Defendants say. That incoherence is a critical flaw given the District Court's foundational theory that the President dictated the outcome here.

For its part, the District Court relied on inconsequential or incorrect assertions. It spoke at length about how no attorney appeared for Defendants. ECF106 at 27-38. But the case was settled before Defendants ever needed to appear. The District Court also emphasized that Defendants did not move to dismiss the Complaint as the government had in other cases. ECF106 at 4-5. But those other motions were all *denied*, resulting in extensive discovery.[2] It is not the least bit unusual to settle a case early to avoid a repeat of prior losses on the same underlying facts.

The District Court next suggested Defendants should have moved to dismiss the Complaint as untimely. The District Court's approach would have violated this Court's precedent holding that a motion to dismiss "on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Tello v. Dean Witter Reynolds. Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (citing authorities). The Complaint included factual allegations demonstrating timeliness,

---

[2] *Safe Harbor Int'l LLC v. Booz Allen Hamilton, Inc.*, No. 25-CV-00139-LKG, 2026 WL 900051 (D. Md. Apr. 2, 2026); *Griffin v. IRS*, 730 F. Supp. 3d 1312 (S.D. Fla. 2024).

ECF1, ¶ 86, but the District Court instead improperly looked to materials outside the Complaint, ECF106 at 4-5. The District Court therefore would likely have committed reversible error if it had dismissed the Complaint as untimely. Yet somehow the court believed the Department's decision not to raise that argument—at a premature stage, no less—was evidence of improper behavior.

Grasping at straws to find evidence of the non-existent collusion, the District Court also stressed that certain Department of Justice attorneys have been affiliated with the President. ECF106 at 31-32, 36-37. But this is both overstated—the court insisted multiple times one of the Department lawyers was the "former White House Counsel," which is just false—and immaterial—in that attorneys regularly move between public and private service.

Finally, on the issue of undisputed facts, the District Court failed to give weight to the presence of numerous Plaintiffs in this case who are not the President. There surely was still Article III adversity as to those other Plaintiffs, and it is blackletter law that Article III requires "only one plaintiff" with adversity. *Bost v. Illinois State Bd. of Elections*, 607 U.S. 71, 76 n.3 (2026). The District Court, however, gave this a backhand, stating—in unexplained footnotes—that these other Plaintiffs' presence was "parenthetical" to the analysis. ECF106 at 22 n.9, 36 n.58. The District Court offered no basis, let alone a persuasive one, for that dispositive, erroneous conclusion.

### C. The District Court Could Not Reject the Complaint's Allegation That President Trump Was Suing in His Personal Capacity.

The District Court noted that the Complaint expressly stated that President Trump was bringing this suit in "his personal capacity." ECF106 at 2. And nobody disputes that the injuries he incurred were as a private citizen. But the District Court stated in a conclusory half-sentence that it "declines to adopt or accept" the use of personal capacity here. ECF106 at 2. That allowed the District Court to premise its Order on the view that the President must be seen as suing in his official capacity, which the District Court then concluded meant he was suing himself.

The District Court cited no precedent authorizing a court to "decline[]" to recognize the official/personal capacity distinction as expressly pleaded. ECF106 at 2. The Supreme Court has held that a court can make that determination for itself only where the complaint does not "clearly specify" whether a party is named "personally, [or] in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). The Complaint here "clearly specif[ied]" that President Trump was suing in his personal capacity. And lest there be any doubt, the Supreme Court has noted that the President of the United States can sue and be sued in his personal capacity. *See Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020).

The District Court implied that President Trump is suing in his official capacity because the Complaint labels him as "President" Trump. ECF106 at 2. But the title is

a matter of fact and respect: he is the President. This is no different than referring to a judge as "Judge" even when she is not actively performing judicial duties.

* * *

The District Court's legal and factual errors fatally undercut its theory that Defendants were obligated to give Plaintiffs whatever they wanted simply by virtue of the Article II chain of command.

## III.  In Any Event, Sanctions Are Unavailable.

Even if everything in the analysis above is wrong, the District Court's Order is still untenable for numerous independent reasons.

### A.  Even in the District Court's View, the Case Raised Novel Legal Questions About Article III.

"[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Patterson v. Lew*, 265 F. App'x 767, 768 (11th Cir. 2008) (cleaned up). For the court to exercise its sanctioning authority, there must be clear and convincing evidence of subjective bad faith. *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). This "inherent power must be exercised with restraint and discretion." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017).

When it comes to sanctioning parties or attorneys for their legal positions, this Court has held that "we prefer that an attorney feel free to exercise [his] judgment without fear of reprisals should his lawsuit miscarry. As we see it, Rule 11 is intended

14

to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990).

The District Court failed to comply with those binding standards. In fact, it unwittingly proved there is no sanctionable conduct here by characterizing the legal questions as novel and difficult. The District Court viewed this case as "sui generis," ECF106 at 2, and acknowledged that "[a]t first glance, the Complaint seemingly satisfies Article III," ECF106 at 17. The District Court then spent dozens of pages purporting to distinguish otherwise on-point caselaw (and ignoring other on-point caselaw like *Nixon*).

The District Court previously found the issue sufficiently complex that the court appointed three different sets of *amici* to opine on whether there was subject-matter jurisdiction. Even those cherry-picked *amici* concluded the Article III question was sufficiently difficult that "the adversity inquiry likely cannot be concluded at this time." ECF45 at 14. Yet the District Court later found the issue so obvious that anyone who disagreed—which would apparently include the court's own appointed *amici*—was deserving of sanctions.

Thus, even accepting that the District Court was right on the merits of the Article III analysis, sanctions cannot be imposed because the court was creating new legal theories on the fly.

**B.**    **Accepting the District Court's Offer to "Review" the Settlement Agreement Would Have Violated Article III.**

The District Court repeatedly criticized the Parties because they had not "provided" the Settlement Agreement "to this Court for review." ECF106 at 8; *see* ECF106 at 29 n.38. But doing so would have violated Article III of the Constitution, because the District Court would have been providing a prohibited advisory opinion.

For starters, the Parties were under absolutely no obligation to submit the Settlement Agreement to the District Court for review—either before the Plaintiffs dismissed their complaint, or anytime after. Only in rare circumstances is court approval required for a settlement. Most notably, a certified class action under Rule 23, which requires court approval because it will extinguish the rights of individuals not before the court; and certain settlements under the Fair Labor Standards Act, *see Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

But as for other settlements (like the one here), a district court can exercise jurisdiction over issues arising from the settlement agreement *only* if the district court "embod[ies] the settlement contract in its dismissal order" or where the court "retain[s] jurisdiction over the settlement contract, if the parties agree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994). In other words, courts lack all authority over settlements unless those agreements are already adopted by the court or expressly give power to the court.

The District Court never suggested that the Settlement Agreement here fell within the very narrow category of settlements that require court approval—and it doesn't. Accordingly, proffering the Agreement for the District Court's "review" would have yielded only the District Court's thoughts on a matter over which it lacked authority and jurisdiction. In other words, it would have yielded a classic advisory opinion, which is prohibited under Article III. *See Carney v. Adams*, 592 U.S. 53, 58 (2020).

The irony was apparently lost on the District Court that it was offering to violate Article III of the Constitution, while simultaneously and erroneously accusing the Parties of not satisfying Article III.

The District Court's approach was also internally inconsistent. Elsewhere in its Order, the court claimed that seeking "to obtain the opinion of the court, upon a question of law which a party desires to know for his own interest or for his own purposes, when there is no real and substantial controversy …, is an abuse which courts of justice have always reprehened [sic]." ECF106 at 14. In other words, the District Court insisted in one breath that the Parties should have let her opine on the Settlement Agreement, while stating in the very next breath that even attempting to involve the court in such a review would be sanctionable. "This 'heads I win, tails you lose' approach cannot be correct." *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 471 (2007).

## C. The District Court's Gag Order Is Unlawful.

The District Court's purported gag order is indefensible. Even though no counsel for Defendants ever appeared in the case—and even though the Settlement Agreement was reached entirely outside the District Court—the court purported to enjoin all "Parties" from "referring" to the agreement as a "'settlement' reached in this matter," or "using, offering, admitting, or citing any of its provisions" in any "official proceeding." ECF106 at 47.

The exact scope of this garbled restriction is unclear. But even in its narrowest conceivable form, it must immediately be stayed. For starters, the District Court does not have the Orwellian authority to gag how the Parties "refer" to historical facts. More fundamentally, the District Court lacks the authority to collaterally attack the settlement—by barring its general use in other matters over which the court has no jurisdiction—under the guise of sanctions proceedings. Again, the Parties never needed to put the settlement before the District Court, and they never did so. Under the precedent described above, the court emphatically lacked jurisdiction to address, criticize, review, or limit (even indirectly) the Settlement Agreement in any way.

## IV. The Appearance of Politically Based Timing of the District Court's Order Warrants Reassignment.

As Appellants' motion describes (at 9), the District Court's Order contains numerous unusual factual errors, typos, and erroneous citations, all suggesting a rush to

18

issue the Order. Surrounding circumstances give the strong appearance that the rushed issuance was done for an improper political motivation, which warrants reassignment.

The Order was issued just two days before the confirmation hearing of then-Acting Attorney General Todd Blanche. The Order repeatedly criticized the actions and ethics of the Department of Justice and Mr. Blanche in particular, and ultimately directed the clerk to send a copy of the Order to the New York Bar, where Mr. Blanche is barred.

That is significant because these criticisms were issued without *any* notice to Mr. Blanche or the Department. Quite the opposite. The District Court's order of May 29 indicated that only "Plaintiffs" needed to respond to the District Court's questions. ECF65 at 3. The District Court apparently went out of its way to direct that only one side respond, then again went out of its way to criticize the other side, ensuring there would be no possibility of a response before the court issued its Order.

That course of conduct appears to have been by design. The District Court's Order elsewhere expressly recognized that "[d]ue process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why." ECF106 at 44 n.62. Yet the court never provided the least bit of notice before making repeated, gratuitous, and false accusations against the Department and Mr. Blanche.

Given that the District Court was expressly aware of its obligation to give notice, yet chose not to do so right before a high-profile hearing involving that same attorney, it beggars belief that this was the product of mere oversight.

"Reassignment is appropriate where the trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public." *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989). The District Court's actions have rightfully already given rise to the view among reasonable members of the public that the District Court was acting in an improper political manner. *See id.* As the former Chief Counsel to the Senate Judiciary Committee has explained, the "timing [of the Order] is suspicious — it came out two days before Blanche's hearing. [The District Court] also took numerous swipes at Blanche without the Department of Justice ever having appeared in the case. Indeed, her prior order was expressly addressed only to plaintiffs, so she seems to have gone out of her way to attack Blanche here. More tellingly still, the opinion includes the kinds of errors that would be caught with apparently neglected proofreading. … In other words, it was a rush job, and the rush job got out just in time for the hearing. What a coincidence." Michael A. Fragoso, *Blanche, Cornyn, and the Weaponization Fund*, Nat'l Rev. (July 22, 2026) https://www.nationalreview.com/bench-memos/blanche-cornyn-and-the-weaponization-fund/.

Further, judicial ethics scholar Professor Rob Luther has questioned whether the District Court "engaged in judicial misconduct" by deliberately timing the order for political purposes, in violation of Canon 5 of the Judicial Code of Conduct, which "prohibits political activity." Rob Luther (@RobLutherLawyer), X (July 23, 2026, at 4:05 PM), https://x.com/RobLutherLawyer/status/2080383705940377654.

This Court need not conclude that the District Court's actions were improperly motivated, but rather only that reasonable members of the public would view them that way. That standard has certainly been satisfied. This Court should order reassignment. To be sure, no remaining proceedings are needed or appropriate in the District Court: the Order should be stayed and ultimately vacated, and the District Court lost jurisdiction months ago. The District Court is the only one insistent on trying to keep the lower-court proceedings going, on the flimsiest of bases. But for precisely that reason, this Court should order reassignment.

# CONCLUSION

This Court should administratively stay the District Court's Order and grant a stay pending appeal. This Court should also reassign this case in the District Court.

Respectfully submitted,

R. TRENT MCCOTTER
  *Acting Deputy Attorney General*

*/s/ R. Trent McCotter*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *202-514-2105*

*Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5160 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ R. Trent McCotter*
R. Trent McCotter
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-514-2105*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ R. Trent McCotter*
R. Trent McCotter
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-514-2105*