**No. 26-12692**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR.,
ERIC TRUMP, THE TRUMP ORGANIZATION, LLC.,

*Plaintiffs-Appellants,*

ALEJANDRO BRITO, DANIEL EPSTEIN,

*Interested Parties-Appellants,*

INTERNAL REVENUE SERVICE,
U.S. DEPARTMENT OF THE TREASURY,

*Defendants,*

THIRTY-FIVE FORMER FEDERAL JUDGES,

*Interested Parties-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of Florida,
Case No. 26-CV-20609 (Hon. Kathleen M. Williams)

---

# CORRECTED *AMICUS CURIAE* BRIEF OF THE OVERSIGHT PROJECT IN SUPPORT OF PLAINTIFFS-APPELLANTS

---

*(Counsel's Information on Inside Cover)*

Jeffrey Bossert Clark, Sr.
Vice President
THE OVERSIGHT PROJECT
211 N. Union Street
Alexandria, VA 22314
(202) 279-1396
jeff@itsyourgov.org

Abhishek Kambli
*Counsel of Record*

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
1325 Avenue of the Americas
Suite 2843
New York, NY 10019
(202) 908-7430
akambli@HoltzmanVogel.com

Mark Pinkert
Elizabeth Price Foley
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2333 Ponce De Leon Boulevard
Suite 600
Coral Gables, FL 33134
(305) 379-1601
mpinkert@HoltzmanVogel.com
efoley@HoltzmanVogel.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Amicus the Oversight Project certifies as follows: The Oversight Project has no parent entity and no entity has a greater than 10 percent ownership interest in The Oversight Project. The Oversight Project is a 501(c)(4) nonprofit organization dedicated to preserving American freedom by ensuring government is and remains responsible, accountable, and transparent.

Per Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, *amici* certify that listed persons and entities have an interest in the outcome of this case:

1) Aburos, Tal – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein
2) Biazzo, Corey J. – *Pro se* Amicus in the District Court
3) Bingham, Lauren C. – Counsel for Amicus in the District Court CREW
4) Bissell, Retired Chief Judge John W. – Appellee and Amicus in the District Court
5) Blanche, Todd – Attorney General, U.S. Department of Justice

6) Boisture, Pooja A. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

7) Bonta, Rob – Amicus, Attorney General of California, Lead Signatory for Twenty-Three State Attorneys General Amici

8) Bradley, Conor – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

9) Bridgman, Glenn – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

10) Brito, Alejandro – Appellant and Counsel for Plaintiffs in the District Court

11) Brito, PLLC – Counsel for Plaintiffs-Appellants

12) Brook, Davida – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

13) Brown, Retired Judge Geraldine Soat – Appellee and Amicus in the District Court

14) Cai, Angela – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

15) Carullo, Nick – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

16) Castillo, Retired Chief Judge Rubén – Appellee and Amicus in the District Court

17) Citizens for Responsibility and Ethics in Washington (CREW) – Amicus in the District Court

18) Clemon, Retired Chief Judge U.W. – Appellee and Amicus in the District Court

19) Common Cause – Amicus in the District Court

20) Corp, Ian Michael – Counsel for Plaintiffs-Appellants

21) Cox, Retired Judge Susan E. – Appellee and Amicus in the District Court

22) Debevoise & Plimpton LLP – Counsel for Amicus in the District Court

23) Democracy Defenders Action – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

24) Democracy Forward Foundation – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

25) Denlow, Retired Judge Morton – Appellee and Amicus in the District Court

26) DLA Piper LLP (US) – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

27) Dow, Randy R. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

28) Duncan, Retired Judge David K. – Appellee and Amicus in the District Court

29) Eisen, Norman L. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

30) Epstein & Co. LLC – Counsel for Plaintiffs-Appellants

31) Epstein, Daniel Z. – Appellant and Counsel for Plaintiffs in the District Court

32) Farchadi, Kayvan A. – Counsel for Amicus in the District Court CREW

33) Finnegan, Retired Chief Judge Sheila – Appellee and Amicus in the District Court

34) Fogel, Retired Judge Jeremy – Appellee and Amicus in the District Court

35) Francis IV, Retired Judge James C. – Appellee and Amicus in the District Court

36) Gay, Faith E. – Amicus in the District Court

37) Gelber Schachter & Greenberg, P.A. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

38) Gertner, Retired Judge Nancy – Appellee and Amicus in the District Court

39) Gleeson, John – Amicus in the District Court

40) Gold, Retired Judge Steven M. – Appellee and Amicus in the District Court

41) Goldgar, Retired Judge A. Benjamin – Appellee and Amicus in the District Court

42) Green, Nicholas R. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

43) Greenberg, Gerald E. – Counsel for Amici in the District Court, Former Government Officials & Public Interest Organizations

44) Grimm, Retired Judge Paul W. – Appellee and Amicus in the District Court

45) Haier, Aaron E. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

46) Halpern, Josh – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

47) Henderson, Retired Judge Thelton – Appellee and Amicus in the District Court

48) Henry, Retired Chief Judge Robert Harlan – Appellee and Amicus in the District Court

49) Hewitt, Jillian – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

50) Holwell, Retired Judge Richard J. – Appellee and Amicus in the District Court

51) Horton, Rachel A.H. – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

52) Hoshijima, Tsuki – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

53) Huvelle, Retired Judge Ellen Segal – Appellee and Amicus in the District Court

54) Internal Revenue Service – Defendant

55) Jasrasaria, Jyoti – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

56) JH Legal PLLC – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

57) Jonas, Stephen A. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

58) Jones III, Retired Judge John E. – Appellee and Amicus in the District Court

59) Joshi, Nandan – Counsel for Amicus in the District Court Public Citizen

60) Keneally, Kathryn – Amicus in the District Court

61) Khan, Ayesha – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

62) Kirn, Harald H. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

63) Klugh, Richard C. – Counsel for Plaintiffs-Appellants

64) Koskinen, John – Amicus in the District Court

65) Lett, Hon. Enjoliqué A. – U.S. Magistrate Judge

66) Liao, Cynthia – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

67) Luttig, Retired Judge Michael – Appellee and Amicus in the District Court

68) Lynn, Retired Judge Barbara M. G. – Appellee and Amicus in the District Court

69) Mann, Retired Judge Roanne L. – Appellee and Amicus in the District Court

70) Manne, Neal S. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

71) Matz, Retired Judge A. Howard – Appellee and Amicus in the District Court

72) Michel, Retired Chief Judge Paul – Appellee and Amicus in the District Court

73) Milelli, Rosario – Nonparty

74) Munger Tolles & Olson LLP – Counsel for Amicus in the District Court

75) Nelson, Justin A. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

76) Newman, Lisa – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

77) O'Malley, Retired Judge Kathleen – Appellee and Amicus in the District Court

78) O'Neil, David A. – Amicus in the District Court

79) Ogden, David W. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

80) Olson, Nina – Amicus in the District Court

81) Oprison, Christopher G. – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

82) Owsley, Retired Judge Brian – Appellee and Amicus in the District Court

83) Perryman, Skye L. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

84) Platkin LLP – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

85) Platkin, Matthew J. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

86) Pro, Retired Judge Philip M. – Appellee and Amicus in the District Court

87) Project On Government Oversight – Amicus in the District Court

88) Public Citizen – Amicus in the District Court

89) Ramanathan, Ravi – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner, and Amici in the District Court 93 Members of the U.S. House of Representatives

90) Rennie, Russell – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

91) Rivero Mestre LLP – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

92) Rivero, Andrés – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

93) Roberts, Retired Judge Victoria A. – Appellee and Amicus in the District Court

94) Rothenberg, Gilbert – Amicus in the District Court

95) Savage, Zach – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

96) Scheindlin, Retired Judge Shira A. – Appellee and Amicus in the District Court

97) Selendy Gay PLLC – Counsel for Amicus in the District Court

98) Selendy, Philippe Z. – Amicus in the District Court

99) Shackelford, Jr., Stephen – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

100) Sheehan, Daniel C. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

101) Shih, Daniel J. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

102) Smith, Retired Judge Fern M. – Appellee and Amicus in the District Court

103) Stephens III, Glenn – Requested Intervenor in District Court

104) Stoughton, Corey – Amicus in the District Court

105) Sus, Nikhel S. – Counsel for Amicus in the District Court CREW

106) Susman Godfrey L.L.P. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

107) Tenjido-Eljaiek, Daniela – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

108) The Trump Organization, LLC – Plaintiff-Appellant

109) Thurston, Robin F. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

110) Tinder, Retired Judge John D. – Appellee and Amicus in the District Court

111) Trump Jr., Donald J. – Plaintiff-Appellant

112) Trump, Eric – Plaintiff-Appellant

113) Trump, President Donald J. – Plaintiff-Appellant

114) Ungaro, Retired Judge Ursula – Appellee and Amicus in the District Court

115) United States Department of the Treasury – Defendant

116) Verrilli, Jr., Donald B. – Amicus in the District Court

117) Walsh, Daniel R. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

118) Ward, Retired Judge T. John – Appellee and Amicus in the District Court

119) Williams, Hon. Kathleen M. – U.S. District Judge

120) Wolf, Retired Judge Mark L. – Appellee and Amicus in the District Court

121) Woodward, Jr., Stanley E. – Associate Attorney General, U.S. Department of Justice

122) Yeakel, Retired Judge Lee – Appellee and Amicus in the District Court

Dated: August 13, 2026

*/s/ Abhishek Kambli*
Abhishek Kambli
*Counsel for Amici Curiae*

## Table of Contents


Certificate of Interested Persons and Corporate Disclosure Statement.....i

Table of Contents.....xiv

Table of Authorities.....xv

Interest of Amicus Curiae.....1

Statement of Issues.....1

Summary of Argument.....2

Argument.....3

I. The Order improperly reopened a case and imposed sanctions based on public reporting and speculation.....3

- A. The Court improperly transformed collateral sanctions authority into a merits-like reopening of case.....3
- B. The Court improperly relied on media reporting that cannot substitute for evidence.....5
- C. The Order says its findings rested on inference.....7

II. The Order's disciplinary referrals, rhetoric, and timing undermine the appearance of an apolitical judiciary.....9

- A. The Court issued a politically charged opinion by making unfounded disciplinary referrals.....9
- B. The Court risks the appearance of politicization through the timing and haste with which the Order was drafted..... 11

Conclusion.....13

Certificate of Compliance.....14

Certificate of Service.....14

## Table of Authorities

**Cases** **Page(s)**

*Absolute Activist Value Master Fund, Ltd. v. Devine*,
998 F.3d 1258 (11th Cir. 2021) .................... 4

*Carson v. Monsanto Co.*,
72 F.4th 1261 (11th Cir. 2023) .................... 5

*Chambers v. NASCO, Inc.*,
501 U.S. 32–51 (1991) .................... 7

*Greenlaw v. United States*,
554 U.S. 237 (2008) .................... 5

*In re Mroz*,
65 F.3d 1567 (11th Cir. 1995) .................... 10

*In re Ruffalo*,
390 U.S. 544 (1968) .................... 10

*In re Snyder*,
472 U.S. 634 (1985) .................... 10

*In re Sunshine Jr. Stores, Inc.*,
456 F.3d 1291 (11th Cir. 2006) .................... 7

*Kaplan v. DaimlerChrysler, A.G.*,
331 F.3d 1251 (11th Cir. 2003) .................... 7, 10

*Keepseagle v. Perdue*,
856 F.3d 1039 (D.C. Cir. 2017) .................... 11, 12

*M'Donough v. Dannery*,
3 U.S. 188 (1796) .................... 5

*Mills v. Comm'r, Ala. Dep't of Corr.*,
102 F.4th 1235–40 (11th Cir. 2024) .................... 2

*Trump v. IRS*,
No. 26-20609, 2026 U.S. Dist. LEXIS 154806 (S.D. Fla. July 13, 2026) ...3

*United States v. Nixon*,
418 U.S. 683 (1974) ........................................................................ 5

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) ........................................................................ 5

*United States v. Straub*,
508 F.3d 1003 (11th Cir. 2007) ....................................................... 4

**Statutes**

26 U.S.C. § 7431 ........................................................................ 2, 8

**Other**

Fed. R. Civ. P. 11 ........................................................................3, 4, 7, 10

Fed. R. Civ. P. 41 ........................................................................ 2, 4, 9

Fed. R. Evid. 201 ........................................................................ 6

Fed. R. Civ. P. 60 ........................................................................ 2, 3

## Interest of Amicus Curiae[1]

The Oversight Project is a nonpartisan, 501(c)(4) organization dedicated to combating political lawfare. Through advocacy and litigation, it defends the integrity of the judicial process against abuse.

The Oversight Project has significant interest here because the district court's order undermines due process and imposes severe sanctions through a procedurally irregular process that carries the appearance of political motivation. These concerns implicate not only the parties, but lawyers who may be called upon to advance novel or politically charged legal positions.

## Statement of Issues

Whether Plaintiffs are entitled to a stay of the sanctions order because it (1) exceeded the court's collateral authority by resolving merits questions after voluntary dismissal, (2) made findings based on speculation, extra-record materials, and press reports, (3) imposed career-altering sanctions without adequate notice or individualized findings, and (4) entered an unconstitutional prior restraint on speech and advocacy.

---

[1] *Amici* certify that no party or their counsel drafted or funded this brief in whole or in part. F.R.A.P. 29 (a)(4)(E).

## Summary of Argument

The district court's sanctions order, *Trump v. IRS,* No. 26-20609, 2026 U.S. Dist. LEXIS 154806 (S.D. Fla. July 13, 2026) ("Order") imperils the appearance of an apolitical judiciary. A court that issues sanctions driven by political animus, relying on newspaper clippings rather than sworn testimony and imposing potentially career-destroying consequences without procedural safeguards does not administer justice—it weaponizes it. If this order stands, it will permit federal judges to use collateral authority as a political bludgeon against disfavored parties and counsel.

Here, Plaintiffs sued the IRS alleging unauthorized disclosure of tax return information in violation of 26 U.S.C. § 7431. The harm to Plaintiffs was well-documented, there was a statutory cause of action for the suit, and there was appropriate adverseness. The parties settled and Plaintiffs voluntarily dismissed the action under Federal Rule of Civil Procedure 41(a).

Nonetheless, non-parties moved for relief from judgment. To obtain such relief, they were required to prove with clear and convincing evidence that the Plaintiffs had defrauded the court. *Mills v. Comm'r, Ala. Dep't of Corr.*, 102 F.4th 1235, 1239–40 (11th Cir. 2024). That bar was not met. Yet the Court continued its inquiry under the guise of collateral sanctions authority, circumventing the procedural protections of Rule 60(d)(3).

Rather looking for demonstrable wrongdoing, the Court acted as merits arbiter and then speculated its way to sanctions without a single witness, deposition, or piece of individualized evidence. Without sufficient notice or process, the Court branded the litigation collusive, accused counsel of bad faith, threatened professional licenses, imposed monetary sanctions, and entered a sweeping injunction forbidding reference to the Settlement Agreement. The order reads like a political communiqué—searching punish litigants, at the behest of non-parties with their own political views and no direct interest in this matter.

## Argument

### I. The Order improperly reopened a case and imposed sanctions based on public reporting and speculation.

#### A. The Court improperly transformed collateral sanctions authority into a merits-like reopening of the case.

The district court's Order is the product of a procedural shell game. Non-parties moved for relief from judgment without satisfying Rule 60(d)(3)'s requirement of clear and convincing evidence of fraud on the court. Rather than denying the motion—as was required—the Court took "no view as to whether the requirements of Rule 60(d)(3) have been satisfied." Order at *45 n.59. Instead, it invoked inherent authority and Rule 11 to achieve the movants' desired result through a back door. *Id.* The Court

sidestepped the more rigorous standard because the evidence could not satisfy it.

In reopening the case, the Court went beyond its jurisdiction. While a voluntary dismissal does not strip a court of all collateral sanctions authority, it does confine that authority to genuinely collateral matters—the court must "not seek a judgment on the merits of [the] action." *Absolute Activist Value Master Fund, Ltd. v. Devine*, 998 F.3d 1258, 1266 (11th Cir. 2021) (cleaned up). The Order crossed that line by using Rule 11 to decide the constitutional adverseness of a dismissed controversy and make sweeping findings of collusion and bad faith, admitting it would "inevitably decide" whether there was a case or controversy. Order at *13 (citation omitted). Thus, the Court did not merely resolve a collateral sanctions issue, it decided a threshold jurisdictional question after voluntary dismissal under Rule 41(a). *See United States v. Straub*, 508 F.3d 1003, 1008 (11th Cir. 2007) (Rule 11 sanctions appropriate because they "did not require an assessment of the legal merits of the complaint").

In doing that at the behest of non-parties, the court crossed the line from referee to advocate, violating the party-presentation doctrine. As the Supreme Court has explained, courts "should not[] sally forth each day looking for wrongs to right" and should "decide only questions presented by

the parties." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (citation omitted). Additionally, courts "may not alter a judgment to benefit a nonappealing party." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008); *see also M'Donough v. Dannery*, 3 U.S. 188, 198 (1796). That is what happened here.

**B. The Court improperly relied on media reporting that cannot substitute for evidence.**

The Court's unprecedented theory—that presidential supervision of the Executive Branch renders the President incapable of maintaining an adverse claim against a federal agency—finds no support in precedent. The Supreme Court recognized adversity in such circumstances in *United States v. Nixon*, 418 U.S. 683, 693 (1974), where an intra-executive dispute proceeded without any suggestion that the President's supervisory authority negated adverseness. The Supreme Court concluded that the "setting" of a dispute between the Special Prosecutor and the President assured "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Id.* at 697 (cleaned up).

The Eleventh Circuit has likewise instructed courts to determine whether both parties possess "a real interest in the legal positions they advance." *Carson v. Monsanto Co.*, 72 F.4th 1261, 1266 (11th Cir. 2023). The

district court cited no case—from any circuit—holding that executive supervision *per se* eliminates Article III adverseness. No such case exists. Just because Donald J. Trump is President, it does not mean he cannot sue in his individual capacity. He is a citizen just like any other public servant.

At a minimum, whether the President suing an agency in his personal capacity creates sufficient adverseness is a novel legal question. Yet the district court rested its findings of "collusion" solely on its (incorrect) interpretation of this novel question and sanctioned everyone involved for advocating a different view. This action reeks of political decision-making and is damaging to the legal profession at large.

Further, the court relied upon media that cannot substitute for competent evidence. The Order states took judicial notice, *sua sponte*, of public articles, other case dockets, and party statements to evaluate the "architecture" of the litigation. Order at *4 n.3. But judicial notice is reserved for facts "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Media reports—particularly from outlets with known editorial bias—fail this standard. The Court's selective reliance on such outlets compounds

the appearance of bias, suggesting that sources were chosen not for reliability but alignment. The Order cites a *New York Times* report about an IRS memorandum but acknowledged it "has yet to be published by the Government." *Id.* at *10 n.17. That is a departure from basic evidentiary norms.

### C. The Order says its findings rested on inference.

The Court sanctioned the parties based on admittedly non-record "inferences." Further, sanctions require notice, which may only be given by "the court or from the party seeking sanctions." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1307 (11th Cir. 2006). With the case reopened at the behest of non-parties, the Court failed to give proper notice. Moreover, *sua sponte* Rule 11 sanctions demand a "higher standard … akin to contempt," *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003), and inherent-power sanctions require bad faith established through evidence. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50–51 (1991).

Rooting sanctions in non-record "inference" satisfies neither standard, and the Order confesses its own inadequacy: It could "only surmise" that Mr. Epstein knew he would never appear to litigate the merits. Order at *36. "Surmise" is not a proper use of disciplinary discretion. The Court reasoned that because Mr. Epstein had advertised "his *pro hac vice* application was

forthcoming," yet "no such application was filed," the only inference was that he "was aware that he would never need to appear and litigate the merits of Plaintiffs' claims." *Id.* (cleaned up). To convert that ambiguous fact into proof of fraud is to sanction based on suspicion, not evidence.

The court further stated that it could only "reasonably infer" the Government failed to respond because its legal position would not withstand scrutiny. Order at *61. This is more baseless speculation. The court cannot simultaneously disclaim jurisdiction over the merits and then draw adverse inferences from how those merits *would have been* resolved. The government's decision not to respond could reflect any number of litigation choices—strategic calculation, resource allocation, the pendency of settlement discussions, or the assessment that responsive pleading was premature. The court selected the most sinister interpretation without evidence, without testimony, and without giving the government an opportunity to explain its litigation posture.

This is problematic because the underlying claims rested on a substantial statutory and factual foundation—a convicted felon stole Plaintiffs' tax information, the IRS admitted its failure to prevent the criminal conduct, and Congress created a private remedy for that injury. *See* 26 U.S.C. § 7431. The court never explained why settling a case that has a

plausible legal basis and real underlying harm constitutes sanctionable conduct. Settlements are the lifeblood of civil litigation and particularly of avoiding overtaxing the courts. To punish parties for resolving a case rather than litigating it to judgment inverts every principle of judicial economy and litigant autonomy that Rule 41 embodies.

## II. The Order's disciplinary referrals, rhetoric, and timing undermine the appearance of an apolitical judiciary.

### A. The Court issued a politically charged opinion by making unfounded disciplinary referrals.

The Order warns that performative litigation harms the rule of law because it "portrays judges as partisans." Order at *54. Yet that is the problem with the Order. By issuing politically charged sanctions through an abbreviated, inference-driven process, the Court engaged in the conduct it purported to condemn.

The Order chastises the parties for alleged bad-faith arguments and political collusion, yet it promotes similar concerns by making unfounded disciplinary referrals without adequate evidentiary support. The Order refers Alejandro Brito to the Florida Bar, restricts Daniel Epstein's *pro hac vice* admission, and transmits the Order to New York and D.C. disciplinary authorities regarding the bar memberships of Acting Attorney General Blanche and Associate Attorney General Woodward. Order at *54–55, 63.

The Court never ordered Mr. Brito or Mr. Epstein to show cause, never identified specific sanctionable conduct by either attorney, never advised them that their professional standing was at stake, and never gave them an opportunity to respond to the allegations before transmitting findings to disciplinary authorities. *See* Fed. R. Civ. P. 11(c)(3) (requiring a court to order a party "to show cause why conduct specifically described in the order" does not violate Rule 11(b)); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (due process requires "fair notice that [the] conduct may warrant sanctions and the reasons why"). All of this flatly violates *Kaplan*'s "higher standard." 331 F.3d at 1255.

In sum, the Court deprived these attorneys of the most elementary procedural protection—the right to be heard before being condemned. When a court transmits disputed, non-evidentiary findings to disciplinary bodies without these procedural safeguards, it converts judicial suspicion into professional jeopardy. *See In re Snyder*, 472 U.S. 634, 645 (1985) (attorney discipline must be grounded in fair procedures and reliable evidence); *In re Ruffalo*, 390 U.S. 544, 550 (1968) ("[One] is accordingly entitled to procedural due process, which includes fair notice of the charge.")

### B. The Court risks the appearance of politicization through the timing and haste with which the Order was drafted.

The timing of this Order warrants scrutiny. The Court entered it on July 13, 2026, and focused its discussion on the conduct of Acting Attorney General Blanche—even though he was not an original party to the case and has no proper role in proceedings concerning attorney misconduct by litigation counsel. Order at *33, 36, 39, 41–43. Notably, Blanche's Senate confirmation hearing began two days later. *The Nomination of the Hon. Todd Blanche to be Att'y Gen. of the United States: Hearing Before the S. Judiciary Comm.*, 119th Cong. (2026). The Order thus creates the obvious appearance that judicial discipline was deployed at a politically salient moment. Even if the timing were coincidental, this heightened the need for restraint, deliberation, and evidentiary rigor—none of which the Order reflects.

The Order's demonstrable factual errors amplify this concern, betraying hasty draftsmanship inconsistent with the gravity of sanctions that threaten attorneys' careers and livelihoods. In one instance, the Court discusses *Keepseagle v. Perdue*, 856 F.3d 1039, 1058 (D.C. Cir. 2017), to support its conclusion that the settlement mimics a "slush fund." Order at *36. The Court not only misidentifies the D.C. Circuit opinion as originating

from the D.C. District Court but also mistakenly attributes the dissent to Judge Rogers—who was not on the panel—when it was authored by Judge Brown. *Id*; *See Keepseagle*, 856 F.3d at 1040. A court that cannot accurately identify the circuit from which it draws authority, or correctly attribute a dissenting opinion, has not engaged in the careful deliberation that sanctions of this magnitude demand.

Errors of this kind inevitably occur, as courts are not infallible. But such errors here support the inference that the Order was drafted with urgency calculated to coincide with Todd Blanche's confirmation hearing. Whether the timing was deliberate, it leaves the public with the reasonable impression—a judicial appearance of impropriety—that the Court was engaging in the very type of lawfare it purports to condemn.

When a federal court rushes to take action clearly premised on a filing by non-parties to issue a sanctions on the eve of a Senate confirmation hearing, relies on newspaper articles rather than sworn testimony, brands settlement advocacy as fraud without individualized findings, misidentifies the courts and judges whose authority it invokes, imposes a sweeping prior restraint on future speech, and does all of this while disclaiming jurisdiction over the merits—the public is left with only one reasonable conclusion: the judge is a participant in the political controversy, not a neutral referee. That

perception infects every subsequent ruling from that court, invites reciprocal politicization by litigants on all sides, and erodes the foundational norm that courts decide cases on law and evidence, not politics.

The Order closes with a quotation: "Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence." Order at *63 (quoting John Adams, Argument in Defense of the Soldiers in the Boston Massacre Trials (Dec. 4, 1770)). *Amici* echo that sentiment. The appearance and essence of judicial impartiality must not be sacrificed to the shortsighted whims of the current political moment.

## CONCLUSION

For these reasons, the Court should grant the stay motion.

Dated: August 13, 2026

*/s/ Abhishek Kambli*
Abhishek Kambli
*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Rule 29 and 32, and the typeface and type-style requirements of Rule 32. The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Georgia. The brief contains 2,594 words, excluding the parts of the brief exempted.

*/s/ Abhishek Kambli*
Abhishek Kambli
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on August 13, 2026, I electronically filed the foregoing brief with the Clerk through CM/ECF, which will serve an electronic copy to all counsel of record.

*/s/ Abhishek Kambli*
Abhishek Kambli
*Counsel for Amici Curiae*