**No. 26-12692**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

Donald Trump, *et al.*,
*Plaintiffs-Appellants*,

Alejandro Brito, *et al.*,
*Interested Parties-Appellants*,

v.

Internal Revenue Service *et al.*,
*Defendants*,

35 Former Judges,
*Interested Parties-Appellants.*

On Appeal from an Order of the
United States District Court for the Southern District of Florida
Case No. 1:26-cv-20609, Hon. Kathleen M. Williams

# Former Government Officials and Public Interest Organizations' Opposition to Plaintiffs'-Appellants' Motion to Stay

TSUKI HOSHIJIMA
JYOTI JASRASARIA
POOJA A. BOISTURE
AYESHA KHAN
ROBIN F. THURSTON
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

*Counsel for Former Government Officials & Public Interest Organizations*

**CERTIFICATE OF INTERESTED PERSONS**

Counsel for Proposed Intervenors Former Government Officials & Public Interest Organizations hereby certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1 to 26.1-3:

1. Aburos, Tal, Plaintiffs' counsel
2. Bingham, Lauren Crowell, Counsel for CREW, Public Citizen
3. Bisignano, Frank J., CEO, IRS
4. Bissell, John W., amicus, Retired Judge
5. Blanche, Todd, U.S. Attorney General
6. Boisture, Pooja A., Counsel for Former Government Officials and Public Interest Organizations
7. Bradley, Conor, Counsel for Amicus 35 Former Judges
8. Bridgman, Glenn, Counsel for Amicus 35 Former Judges
9. Brito, Alejandro, Plaintiffs' counsel, Appellant
10. Brito, PLLC, Plaintiffs' counsel
11. Brook, Davida, Counsel for Amicus 35 Former Judges
12. Brown, Geraldine Soat, Amicus, Retired Judge
13. Cai, Angela, Counsel for Amicus 35 Former Judges

14. Carullo, Nick, Counsel for Amicus 35 Former Judges
15. Castillo, Rubén, Amicus, Retired Judge
16. Citizens for Responsibility and Ethics in Washington (CREW), Amicus
17. Clark, Jeffrey Bossert, Sr., Counsel for Oversight Project
18. Clemon, U.W., Amicus, Retired Judge
19. Common Cause, Amicus, Proposed Intervenor
20. Corp, Ian Michael, Plaintiffs' counsel
21. Cox, Susan E. Cox, Amicus, Retired Judge
22. Debevoise & Plimpton, LLP, Court-appointed amicus
23. Democracy Defenders Action, Counsel for Amicus 35 Former Judges
24. Democracy Forward Foundation, Counsel for Former Government Officials and Public Interest Organizations
25. Denlow, Morton, Amicus, Retired Judge
26. DLA Piper LLP, Plaintiffs' counsel
27. Duncan, David K., Amicus, Retired Judge
28. Eisen, Norman L., Democracy Defenders Action, Counsel for 35 Former Judges

29. Epstein & Co. LLC

30. Epstein, Daniel Z., Appellant

31. Farchadi, Kayvan, Counsel for CREW, Public Citizen

32. Finnegan, Sheila, Amicus, Retired Judge

33. Fogel, Jeremy, Amicus, Retired Judge

34. Foley, Elizabeth Price, Counsel for Oversight Project

35. Francis, James C. IV, Amicus, Retired Judge

36. Gay, Faith E., Court-appointed amicus

37. Gelber Schachter & Greenberg P.A., Counsel for Former Government Officials and Public Interest Organizations

38. Gertner, Nancy, Amicus, Retired Judge

39. Gleeson, John, Court-appointed amicus

40. Gold, Steven M., Amicus, Retired Judge

41. Goldgar, A. Benjamin, Amicus, Retired Judge

42. Greenberg, Gerald E., Counsel for Former Government Officials and Public Interest Organizations

43. Grimm, Paul W., Amicus, Retired Judge

44. Haier, Aaron E., Counsel for 35 Former Judges

45. Halpern, Joshua, Plaintiffs' counsel

46. Henderson, Thelton, Amicus, Retired Judge
47. Henry, Robert Harlan, Amicus, Retired Judge
48. Hewitt, Jillian, Counsel for 35 Former Judges
49. Holtzman Vogel Baran Torchinsky & Josefiak PLLC, Counsel for Oversight Project
50. Holwell, Richard J., Amicus, Retired Judge
51. Horton, Rachel, Plaintiffs' counsel
52. Hoshijima, Tsuki, Counsel for Former Government Officials and Public Interest Organizations
53. Huvelle, Ellen Segal, Amicus, Retired Judge
54. Internal Revenue Service, Defendant
55. Jasrasaria, Jyoti, Counsel for Former Government Officials and Public Interest Organizations
56. JH Legal PLLC, Plaintiffs' counsel
57. Jonas, Stephen A., Democracy Defenders Action, Counsel for 35 Former Judges
58. Jones, John E. III, Amicus, Retired Judge
59. Joshi, Nandan M., Counsel for CREW, Public Citizen
60. Kambli, Abhishek, Counsel for Oversight Project

61. Keneally, Kathryn, Amicus, Proposed Intervenor
62. Khan, Ayesha N., Counsel for Former Government Officials and Public Interest Organizations
63. Klugh, Richard Carroll, Jr., Plaintiffs' counsel
64. Koskinen, John, Amicus, Proposed Intervenor
65. Law Office of Richard C. Klugh, Plaintiffs' counsel
66. Lett, Enjolique A., Magistrate Judge
67. Luttig, Michael, Amicus, Retired Judge
68. Lynn, Barbara M. G., Amicus, Retired Judge
69. Mann, Roanne L., Amicus, Retired Judge
70. Manne, Neal S., Counsel for 35 Former Judges
71. Matz, A. Howard, Amicus, Retired Judge
72. McCotter, R. Trent, Defendants' counsel
73. Michel, Paul, Amicus, Retired Judge
74. Munger Tolles & Olson LLP, Court-appointed amicus
75. Nelson, Justin A., Counsel for 35 Former Judges
76. Ogden, David W., Counsel for 35 Former Judges
77. Olson, Nina, Amicus, Proposed Intervenor
78. O'Malley, Kathleen, Amicus, Retired Judge

79. O'Neil, David A., Court-appointed amicus
80. Oprison, Christopher George, Plaintiffs' counsel
81. Oversight Project, Proposed Amicus
82. Owsley, Brian, Amicus, Retired Judge
83. Perryman, Skye L., Counsel for Former Government Officials and Public Interest Organizations
84. Pinkert, Mark, Counsel for Oversight Project
85. Platkin LLP, Counsel for 35 Former Judges
86. Platkin, Matthew J., Counsel for 35 Former Judges
87. Pro, Philip M., Amicus, Retired Judge
88. Project On Government Oversight, Amicus, Proposed Intervenor
89. Public Citizen, Amicus
90. Ramanathan, Ravi, Counsel for 35 Former Judges
91. Rennie, Russell, Counsel for 35 Former Judges
92. Rivero Mestre LLP, Counsel for 35 Former Judges
93. Rivero, Andrés, Counsel for 35 Former Judges
94. Roberts, Victoria A., Amicus, Retired Judge
95. Rothenberg, Gilbert, Amicus, Proposed Intervenor

96. Savage, Zach, Counsel for 35 Former Judges

97. Scheindlin, Shira A., Amicus, Retired Judge

98. Selendy Gay PLLC, Court-appointed amicus

99. Selendy, Philippe Z., Court-appointed amicus

100. Shackelford, Stephen, Jr., Counsel for 35 Former Judges

101. Shih, Daniel J., Counsel for Amicus 35 Former Judges

102. Smith, Fern M., Amicus, Retired Judge

103. Stoughton, Corey, Court-appointed amicus

104. Sus, Nikhel S., Counsel for CREW, Public Citizen

105. Susman Godfrey, Counsel for 35 Former Judges

106. Tenjido-Eljaiek, Daniela, Counsel for 35 Former Judges

107. The Trump Organization, Plaintiff-Appellant

108. Thurston, Robin F., Counsel for Former Government Officials and Public Interest Organizations

109. Tinder, John D., Amicus, Retired Judge

110. Trump, Donald, Plaintiff-Appellant

111. Trump, Donald Jr.,Plaintiff-Appellant

112. Trump, Eric, Plaintiff-Appellant

113. U.S. Department of Justice

114. U.S. Department of Treasury, Defendant
115. Ungaro, Ursula, Amicus, Retired Judge
116. Verilli, Donald B., Jr., Court-appointed amicus
117. Walsh, Daniel R., Counsel for Former Government Officials and Public Interest Organizations
118. Ward, T. John, Amicus, Retired Judge
119. Williams, Kathleen M., U.S. District Judge
120. Wolf, Mark L., Amicus, Retired Judge
121. Woodward, Stanley E., Jr., Associate Attorney General, U.S. Department of Justice
122. Yeakel, Lee, Amicus, Retired Judge

The undersigned is not aware of any publicly traded company or corporation with an interest in the outcome of this case or appeal.

*/s/ Tsuki Hoshijima*

## TABLE OF CONTENTS

INTRODUCTION ........ 1
BACKGROUND ........ 2
LEGAL FRAMEWORK ........ 6
ARGUMENT ........ 7
I. Appellants are unlikely to succeed on the merits. ........ 7
A. The district court's sanctions were justified by the inherent collusion between the parties and the President's control of both sides. ........ 8
B. The district court gave adequate notice and a reasonable opportunity to be heard before issuing sanctions. ........ 17
C. The district court imposed appropriate sanctions. ........ 19
II. Appellants have not shown that they will suffer irreparable harm absent a stay. ........ 23
III. The balance of harms and the public interest weigh decidedly against a stay. ........ 25
IV. Defendants' judicial reassignment request fails. ........ 26
CONCLUSION ........ 27

## TABLE OF AUTHORITIES

### Cases

*Acheron Cap., Ltd. v. Mukamal as Tr. of Mut. Benefits Keep Pol'y Tr.*, 22 F.4th 979, 987 (11th Cir. 2022) ............................................ 7

*Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998) ................................16

*Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731 (1983).......................20

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .......................... 7

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ....................................13

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987).......................16, 17

*In re Woide*, 730 F. App'x 731 (11th Cir. 2018)....................................... 7

*Jenkins v. Anton*, 922 F.3d 1257 (11th Cir. 2019) ..................................26

*Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300 (11th Cir. 2021)............17

*Laird v. Tatum,* 408 U.S. 1 (1972).........................................................25

*Liteky v. United States*, 510 U.S. 540 (1994) .........................................27

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283 (11th Cir. 1990) ............................23

*Nken v. Holder*, 556 U.S. 418, 426 (2009)..........................................7, 23

*Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986)............................22

*Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017) ....................................................................................19

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277 (11th Cir. 2002) ............21

*Swain v. Junior*, 958 F.3d 1081 (11th Cir. 2020) ..................................23

*Trump v. Clinton*, 161 F.4th 671 (11th Cir. 2025).................................. 7

*United States v. Alvarez*, 567 U.S. 709 (2012) .......................................20

*United States v. Cunningham*, 161 F.3d 1343 (11th Cir. 1998) .............23

*United States v. ICC*, 337 U.S. 426 (1949).............................................10

*United States v. Nixon*, 418 U.S. 683 (1974).......................................9, 10

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015) ....................................21

*Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016) .........23

**Constitution**

Domestic Emoluments Clause, U.S. Const. art. II, § 1, cl. 7 ..................16

**Statutes**

26 U.S.C. § 7122.........................................................................................15

26 U.S.C. § 7217(a) .....................................................................................16

28 U.S.C. § 2414.........................................................................................15

**Rules**

Fed. R. App. P. 8(a)(2)(B)(ii) .....................................................................23

Fed. R. Civ. P. 11 ..............................................................16, 17, 18, 21

Fed. R. Evid. 403.........................................................................................20

**Other Authorities**

Executive Order 14215, 90 Fed. Reg. 10447, 10447 (Feb. 24, 2025) ......11

## INTRODUCTION

Former government officials John Koskinen, Kathryn Keneally, Nina Olson, Gilbert Rothenberg, and public-interest organizations Common Cause and Project On Government Oversight ("Intervenors") oppose Appellants' motion for a stay pending appeal. The district court appropriately sanctioned Appellants for filing this non-adverse lawsuit to justify a collusive settlement that would make $1.776 billion in taxpayer money available to the President's political allies and give him, his family, and their businesses wide-ranging protection from tax audits and other claims. That non-adverseness continues on appeal: after sitting out the entire case, Defendants finally appeared for the first time on appeal to *support* Appellants' stay position.

Appellants are unlikely to succeed on appeal. The unprecedented nature of this case does not insulate Appellants from sanctions. Rather, the district court correctly sanctioned Appellants for misusing the justice system in a way no President has done before. Appellants also have not shown irreparable harm that would justify extraordinary preliminary relief.

## BACKGROUND

In January 2026, the President, his sons, and his family business sued the Internal Revenue Service and the U.S. Department of the Treasury seeking "at least" $10 billion in damages. Dist.Ct.Dkt.1 at 26. They sought this extraordinary and unsubstantiated sum based on alleged unauthorized disclosures of tax return information and Privacy Act violations. *Id.* at 19–25.

Early in the case, Intervenors filed an amicus brief warning that, since President Trump controlled both sides of the case, it could lead to a collusive settlement that would be detrimental to the public interest and public fisc. Dist.Ct.Dkt.33 at 3. And that is precisely what happened. As the President acknowledged, the lawsuit would require him to "work out a settlement with [him]self." Dist.Ct.Dkt. 7-1 at 3 (citation omitted). And, as he boasted: "Essentially, the lawsuit's been won. I guess I won a lotta money…. [T]here's never been anything like it." *Id.*

Defendants never appeared to defend the case. Instead, as Defendants' answer deadline drew near, *Plaintiffs* moved for an extension of *Defendants'* deadlines "while the Parties engage in discussions designed to resolve this matter." Dist.Ct.Dkt.40 at 2.

Plaintiffs certified that they conferred with Defendants, but Defendants' counsel remained unnamed. Dist.Ct.Dkt.40 at 3.

In response, the district court ordered the parties to brief whether the court had jurisdiction. Dist.Ct.Dkt.41 at 4. The court explained that adverseness is essential to Article III jurisdiction, and it raised "questions over whether the Parties here are truly antagonistic to each other." Dist.Ct.Dkt.41 at 2-3 & n.2. The court also appointed other amici to address the jurisdictional question. Dist.Ct.Dkt.42.

Neither Plaintiffs nor Defendants ever filed the jurisdictional briefs that the court ordered. Not long after the court-appointed amici filed their brief identifying "significant Article III subject matter jurisdiction concerns," Dist.Ct.Dkt.45 at 1, and shortly before the parties' briefing deadlines, Plaintiffs filed a notice of voluntary dismissal, Dist.Ct.Dkt.52. Plaintiffs emphasized that the dismissal was self-executing and that "no judicial analysis is appropriate." Dist.Ct.Dkt.52 at 2.

Soon after, the Department of Justice (DOJ) announced a "settlement." Dist.Ct.Dkt.63 at 2. The government agreed to create the "Anti-Weaponization Fund" to compensate persons who claim that they were victims of "Lawfare and/or Weaponization." Dist.Ct.Dkt.63-1 at 2–

3 ("Agreement"). A separate order by then-Acting Attorney General Todd Blanche that day directed the transfer of $1.776 billion to the Fund. Dist.Ct.Dkt.63-3. The following day, Blanche signed another order that broadly immunized Plaintiffs and their affiliates from various forms of liability, including a release of tax liability and tax audits. Dist.Ct.Dkt.63-2.

Nonparty Thirty-Five Former Federal Judges moved under Federal Rule of Civil Procedure 60 to set aside the order closing the case so that the district court could inquire into whether it was deceived. Dist.Ct.Dkt.63. As the motion made clear, the former federal judges believed the settlement was the "product of collusion" between Plaintiffs and Defendants. *Id.* at 4. The district court ordered Plaintiffs to respond. Dist.Ct.Dkt.65 at 3. The court sua sponte raised the prospect of Rule 11 sanctions and specifically identified Rule 11's "improper purpose" prong. *Id.* at 1–2. Specifically, the court ordered Plaintiffs to address "the charges of collusion," the claim that the litigation "was only filed to provide the imprimatur of legality for an unlawful settlement," the adverseness of the parties, and the assertions of deception and fraud. *Id.* at 3.

After considering Plaintiffs' response, Dist.Ct.Dkt.89, the district court issued the sanctions order that is the subject of this appeal, Dist.Ct.Dkt.106. In its thoroughly considered 56-page opinion, the court concluded that the parties lacked the adverseness to invoke Article III jurisdiction because "one party controls this litigation." *Id.* at 17. It reached that conclusion based on detailed factual findings, including evidence of "actual control" of Defendants by the President. *Id.* at 17–27. The district court also made specific factual findings to support its conclusion that the case was brought for improper purposes and in bad faith. *Id.* at 27–38.

Based on those factual findings, the district court concluded that Rule 11 sanctions were warranted because the case was filed for an improper purpose, *id.* at 39–47, and because the court had inherent authority to impose sanctions, *id.* 47–54. The court ordered: (1) bar referrals for Blanche, Woodward, and Plaintiffs' counsel Alejandro Brito; (2) denial of future pro hac vice applications by Plaintiffs' counsel Daniel Epstein for one year; and (3) a prohibition against the parties' "referring to the purported 'settlement agreement,' or using, offering, admitting, or citing any of its provisions in any judicial, administrative, regulatory,

arbitration, or any other official proceeding as evidence of a 'settlement' reached in this matter." *Id.* at 46–47. It also invited all amici, including Intervenors, to file "a memorandum regarding any appropriate reimbursement." *Id.* at 53–54.

Over two weeks later, Plaintiffs filed an expedited motion for a stay pending appeal. Dist.Ct.Dkt.114. The district court invited court-appointed amici to respond and denied expedition, finding no showing of good cause. Dist.Ct.Dkt.115, 120. Without waiting for the district court's decision, Appellants sought a stay in this Court on August 12, 2026. Dkt.8. Later that same day, counsel for Defendants, the IRS and Treasury, appeared for the first time and filed a response *supporting* Plaintiffs' motion for a stay. Dkt.10.

## LEGAL FRAMEWORK

When considering a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426

(2009) (citation omitted). "A stay pending appeal is an extraordinary remedy…." *In re Woide*, 730 F. App'x 731, 737 (11th Cir. 2018) (cleaned up).

This Court reviews an award of sanctions under Rule 11 or a district court's inherent authority for abuse of discretion, and it reviews a finding of bad faith for clear error. *Trump v. Clinton*, 161 F.4th 671, 683 (11th Cir. 2025); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

## ARGUMENT

### I. Appellants are unlikely to succeed on the merits.

The district court issued a carefully reasoned, 56-page sanctions order after considering Appellants' arguments and hearing from amici. Even assuming that the order is final and appealable,[1] Appellants are unlikely to succeed on appeal because they never had a proper basis for

[1] A post-judgment order can be final and appealable when it "'disposes of all the issues raised in the motion that initially sparked the postjudgment proceedings,' and [when] the order is 'apparently the last order to be entered in the action.'" *Acheron Cap., Ltd. v. Mukamal as Tr. of Mut. Benefits Keep Pol'y Tr.*, 22 F.4th 979, 987 (11th Cir. 2022) (citation omitted). It is uncertain whether the sanctions order meets that standard because the district court's fee determination remains pending and the court reserved "the possibility of future relief" related to fraud on the Court. Dist.Ct.Dkt.38 n.59.

invoking the district court's jurisdiction; the district court made specific findings to support its sanctions rulings; and the district court ensured adequate process before imposing appropriate sanctions.

### A. The district court's sanctions were justified by the inherent collusion between the parties and the President's control of both sides.

Through a thorough and detailed factual analysis, the district court correctly determined that the parties—with President Trump in control of both sides of the "v"—used the guise of time-barred, unsubstantiated wrongful disclosure claims to obtain unrelated and unlawful benefits for the President, his family and businesses, and his political allies. That analysis sufficiently supported the court's sanctions order.

Appellants argue that the parties were adverse for Article III purposes because the President in his personal capacity has a distinct legal identity from the Defendant agencies. Although there is no precedent for these extraordinary circumstances, a simple application of the well-worn requirement of adverseness to the facts here shows a lack of jurisdiction given the President's control over the federal agencies he sued.

Although Appellants claim the President sued in his personal capacity, the President himself wielded his official title as President in the case caption and throughout the complaint. Dist.Ct.Dkt.1 at 1. And, in any event, adverseness does not turn on a surface-level inquiry of whether the President is suing in his personal or official capacity. Instead, *United States v. Nixon*, 418 U.S. 683 (1974), instructs that a court must probe beneath the terminology and parties' representations to determine whether adverseness exists in fact—just as the district court did. *Nixon* involved a sitting President's motion to quash a subpoena from the Watergate Special Prosecutor. *Id.* at 686–87. The Court explained that justiciability is not "a surface inquiry," but depends on whether the case raises "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Id.* at 693, 697 (citation omitted).

*Nixon* found adverseness based on the Special Prosecutor's independence. He had "unique authority and tenure," an express guarantee of independence in a regulation with the force of law, and protection from removal by the President absent congressional

leadership approval. *Id.* at 694–95 & n.8, 696. The Special Prosecutor's independence from the President meant that "[t]he independent Special Prosecutor with his asserted need for the subpoenaed material in the underlying criminal prosecution *is opposed by* the President with his steadfast assertion of privilege against disclosure of the material." *Id.* at 697 (emphasis added). The litigation history confirmed that adverseness, as the district court ruled in favor of the Special Prosecutor and against the President, causing the President to appeal. *Id.* at 686.

The Supreme Court undertook a similar inquiry in *United States v. ICC*, a case brought by the United States as a shipper to challenge a federal agency order about shipping costs. 337 U.S. 426, 428 (1949). The Court explained that it "must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented." *Id.* at 430. It found adverseness because the agency had independent statutory authorization to present a "full defense" of its order, and it in fact "availed [itself] of this statutory authorization" by "vigorously defend[ing]" its action "at every stage of the litigation." *Id.* at 432.

*Nixon* and *ICC* refute Appellants' position, notwithstanding Appellants' attempt to hold up *Nixon* as a favorable example of a President's suit against the government. Dkt.8 at 12. Both decisions relied on the government actor's legally guaranteed independence, which allowed and actually resulted in adversarial litigation. In contrast, Defendants lacked independence from the President. The Treasury Secretary and IRS Commissioner are removable at will, as is the Attorney General. Indeed, the President recently flexed his removal authority over the IRS Commissioner. Dist.Ct.Dkt.106 at 20. The President has also asserted a maximalist view of Article II authority in litigation. *See* Br. for Petitioners 2, *Trump v. Slaughter*, 146 S. Ct. 2283 (2026) (No. 25-332); *see also* Executive Order 14215, 90 Fed. Reg. 10447, 10447, 10449 (Feb. 24, 2025) (asserting Presidential "control of the entire executive branch," including over "positions advanced in litigation").

The district court relied on an array of other evidence to support its finding that the President controlled both sides of the litigation. The district court found that it was evidence of "President Trump's actual control in this litigation" that DOJ did not even enter an appearance to defend the lawsuit, despite having presented more robust defenses in

related cases by other plaintiffs.[2] Dist.Ct.Dkt.106 at 22–26. Indeed, in sharp contrast from *Nixon*, the Defendant agencies appeared for the first time in this litigation only to file a brief *supporting* the positions taken by the President and his co-Plaintiffs. Dkts. 9, 10. Other evidence that the President controlled both sides included: the irregularity and unlawfulness of the immunity order; Blanche's history as President Trump's personal criminal defense attorney and resulting conflict of interest; and Blanche's "apparent capacity to speak for both Plaintiffs and Defendants" in later purporting to repudiate the Anti-Weaponization Fund. Dist.Ct.Dkt.106 at 31–38.

The relief Plaintiffs obtained likewise underscores the pretextual nature of the lawsuit. If the case were truly about Trump suing as an aggrieved individual, the remedy would have been damages tied to the allegedly unlawful disclosure of his tax returns. Instead, the settlement created wholly unrelated and unprecedented benefits: a government-run

[2] Defendants argue that the government's motions to dismiss those related cases were not successful. Dkt.10 at 11. But the other cases Defendants cite were not time-barred. *Id.* And, here, Defendants did not even try to challenge the obviously unsubstantiated claim for $10 billion (which no other plaintiff had raised).

$1.776 billion fund for the President's political allies, and sweeping immunity from tax audits and liability.

Appellants do not engage with any of these specific factual findings. They merely assert, with no support, that "IRS and Treasury represented, through the [DOJ] as is the process, the United States' distinct interests." Dkt.8 at 13.

The inclusion of President Trump's sons and family business as plaintiffs cannot cure the problem of common control. The Plaintiffs "share the same attorney, the same parent company, and the same parent and have not espoused any different or distinct view" in the litigation. Dist.Ct.Dkt.106 at 22 n.29. Their nominal participation in the case did not compel the district court to find adverseness. Otherwise, the limitation on judicial exercise of power over collusive cases could easily be circumvented. Instead, the district court appropriately looked below the surface to examine the actual relationship between the parties. *Cf. Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (courts are not required to "exhibit a naiveté from which ordinary citizens are free" (citation omitted)).

Appellants cite Hunter Biden's suit to argue that adverseness can exist when a sitting president's family member sues the government. But that case undermines their position. DOJ (during President Biden's term) robustly defended that case by twice moving to dismiss, *Biden v. IRS*, No. 23-cv-02711 (D.D.C. Jan. 16, 2024), ECF 13; *id.* ECF 17 (Feb. 27, 2024). And in the criminal prosecution against Hunter Biden, Attorney General Garland appointed special counsel to further insulate DOJ from political interference.[3] Neither of those examples involves the control and collusion at play here.

Furthermore, nothing in the district court's reasoning encroaches on the rights of a president with a meritorious claim for unlawful disclosure of tax information under Section 7431. Dkt.8 at 15–16. The court found collusion because of how the President's litigation proceeded—via uncontested proceedings, settled by the very agencies that this President controls, and resulting in relief unrelated to the

[3] Press Release, Office of Pub. Affs., DOJ, Appointment of a Special Counsel (Aug. 11, 2023), https://perma.cc/2N75-Z2CV.

claims.[4] Defendants improperly conflate a president's rights to seek legal recourse in a vacuum with the district court's specific factual findings.

Finally, Appellants argue that they cannot be sanctioned for disagreement over an Article III question so unprecedented that it required appointment of amici and lengthy analysis by the district court to resolve. But Appellants are not immune from sanctions simply because they misused the justice system in a way that no President has ever done before. The care with which the district court examined the issue cannot

[4] Defendants allege that DOJ often settles, even when no lawsuit has been filed, citing 28 U.S.C. § 2414 and 26 U.S.C. § 7122. Dkt.10 at 5–6. But the AG's authority to settle claims under § 2414, including claims brought under the Federal Tort Claims Act, is limited to "imminent litigation or suits against the United States." The district court was properly concerned that the parties sought to transform their collusive settlement into one that had the legitimacy of "imminent litigation" to make settlement more palatable. Dist.Ct.Dkt.106 at 37–38. Indeed, assuming Defendants had the ability to settle "completely outside the specter of immediate public review," as they claim, Dkt.10 at 6, they offer no other reason for why they did not just do so. Nor does the settlement find legitimacy under 26 U.S.C. § 7122; the AG's authority to settle tax audits under that provision is limited to cases referred to him by the IRS. Assuming the IRS referred this case to the AG, the AG's settlement authority is limited to the tax disclosure issues Plaintiffs alleged. The resulting creation of the Anti-Weaponization Fund and the sweeping immunity for the President and his family and businesses were far outside the scope of that authority.

be held against the district court; any imposition of sanctions merits serious inquiry, and that inquiry does not make sanctions unwarranted.

In any event, the district court did not sanction Appellants for bringing novel claims. Rule 11 prohibits the filing of a pleading that is "being presented for any improper purpose," Fed. R. Civ. P. 11(b)(1), and the district court's separate inherent authority to impose sanctions is triggered by a finding of "bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). While it is true that Rule 11 is not "intended to chill innovative theories and vigorous advocacy that bring about vital and positive changes in the law," *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987) (en banc), that is not what Appellants did. Rather than vigorously advocating their legal positions, the parties entered a collusive settlement to avoid the deadline to present their jurisdictional arguments and prevent the district court from reaching the issue. Through that agreement, the President obtained vastly disproportionate relief that "[bore] no relationship to his claims": a $1.776 billion fund that would pay unidentified political allies and broad release of tax liability for himself, his sons, and his businesses in violation of the 26 U.S.C. § 7217(a), and the Domestic Emoluments Clause, U.S. Const. art. II, § 1, cl. 7.

Dist.Ct.Dkt.106 at 29–30, 34–35. As the district court found, the purpose of the case was not zealous advocacy but rather to "gild their efforts to gain unprecedented access to the public fisc with the patina of legitimacy." Dist.Ct.Dkt.106 at 2.

### B. The district court gave adequate notice and a reasonable opportunity to be heard before issuing sanctions.

The district court's procedures met both due process and Rule 11 requirements. "Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1311 (11th Cir. 2021) (citation omitted). Rule 11 requires "notice and a reasonable opportunity to respond," and for sanctions on the court's initiative, a show-cause order that "specifically describe[s]" the conduct at issue. Fed. R. Civ. P. 11(c)(1), (3). But Rule 11 does not require a hearing before imposing sanctions, and "Rule 11 itself constitutes a form of notice" about the potential sanctions for attorneys signing papers. *Donaldson*, 819 F.2d at 1560 & n.12.

The district court gave adequate notice in its show-cause order. The order expressly invoked Rule 11 and "specifically described" the conduct

at issue. Fed. R. Civ. P. 11(c)(3). The district court described the "grievous allegations that Plaintiffs voluntarily dismissed this litigation solely to avoid judicial scrutiny of a lawsuit that 'was collusive from the start' and was only filed to provide the imprimatur of legality for an unlawful settlement," and expressly directed briefing on "collusion," "deception by the Parties" and whether the district court was the "victim of a fraud." Dist.Ct.Dkt.65 at 3 (quoting Dist.Ct.Dkt.63 at 16). That was enough to put Appellants on notice of the consequences that might flow from a finding of improper conduct.

Appellants had a full and fair opportunity to respond, and they did so in a 20-page filing. Dist.Ct.Dkt.89. They take issue with the district court's reliance, in part, on judicially noticed documents and the alleged lack of individualized findings. But they do not dispute any specific facts in the district court's order; and as the district court noted, DOJ in related litigation has asked courts to rely on their unsworn out-of-court statements. Dist.Ct.Dkt.106 at 3 n.3. Besides, Appellants had the chance to submit factual evidence in response to the show-cause order. They provided no evidence of an arms-length settlement negotiation or that the parties were independent. That silence spoke volumes.

Nor, as Appellants claim, was the district court required to make individualized findings of subjective bad faith. As this Court made clear in *Purchasing Power, LLC v. Bluestem Brands, Inc.*, a court can use its inherent power to sanction conduct where there is direct evidence of bad faith, or where the conduct is "so egregious that it could only be committed in bad faith." 851 F.3d 1218, 1224–25 (11th Cir. 2017). Nowhere in that case does the Court require individualized findings of bad faith. The district court properly "examine[d] the wrongdoing in the context of the case," *id.* at 1225, before determining that the parties colluded "to manipulate the judicial process to pursue benefits unavailable in litigation." Dist.Ct.Dkt.106 at 49–52.

### C. The district court imposed appropriate sanctions.

Appellants challenge the court's sanction precluding Plaintiffs from referring to the Agreement in official proceedings as an unconstitutional prior restraint. Contrary to the Appellants' claim, the district court imposed a narrow restriction on representations related to the Agreement: it applies only to the IRS, Treasury, and Plaintiffs and their affiliates, and only to invocations of the Agreement in an "official proceeding" "as evidence of a 'settlement' reached in this matter."

Dist.Ct.Dkt.106 at 47. That cabined sanction is wholly consistent with the First Amendment and well within the Court's Rule 11 discretion.

Appellants cite no caselaw indicating that the right to present certain evidence in official proceedings is protected speech. Well-established doctrines and judicial practices regularly prevent litigants from presenting certain evidence or claims without implicating First Amendment concerns. *See, e.g.*, Fed. R. Evid. 403. Moreover, where litigants, like the Appellants, use the legal system improperly, the First Amendment does not bar accountability. *See, e.g.*, *United States v. Alvarez*, 567 U.S. 709, 720–21 (2012) (perjured statements "lack First Amendment protection" because they "undermine[] the function and province of the law and threaten[] the integrity of judgments that are the basis of the legal system"); *cf. Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("baseless litigation is not immunized by the First Amendment").

Even assuming protected speech was involved here, the district court's sanctions order is narrowly tailored to a compelling interest. There is a "compelling interest in preserving public confidence in the integrity of the judiciary." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444

(2015). The order furthers that interest by mitigating Plaintiffs' efforts "to gain the imprimatur of judicial legitimacy for a 'settlement' that had no viable basis in law or fact." Dist.Ct.Dkt.106 at 38; *see id.* at 48 (invoking Court's "authority to protect the integrity of judicial proceedings"). And it does so narrowly. It does not extend to speech outside official proceedings and does not even prevent Plaintiffs from relying on the Agreement's terms in official proceedings; it merely prohibits them from citing it in an official proceeding as evidence of a settlement countenanced in *this* case.

For similar reasons, the restriction falls within the district court's Rule 11 discretion. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 (11th Cir. 2002). Preventing Plaintiffs from claiming that the Agreement represents "a 'settlement' reached in this matter," Dist.Ct.Dkt.106 at 47, removes the primary incentive for bringing a collusive lawsuit: being able to paint a collusive agreement with a veneer of judicial legitimacy. The sanction thus properly "deter[s] repetition of the conduct or comparable conduct" under Rule 11(c)(4).

Plaintiffs' argument that the sanctions order violates their First Amendment right to petition the government likewise misapprehends

the order. The order does not intrude on their "access to courts and agencies," Dkt.8 at 18, nor preclude them from invoking the Agreement's terms "as a release, defense, compromise, satisfaction, or other legally operative fact," *id.* at 15. *See* Dist.Ct.Dkt.106 at 47 n.63 ("[W]hether a private agreement between the Parties . . . is valid and enforceable . . . is not before this Court."). And even if the district court's narrow sanction somehow did implicate the right to petition, that right may yield to a court's power to protect against litigant abuses. *See, e.g.*, *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986) (vexatious litigant may be "severely restricted as to what he may file and how he must behave in his applications for judicial relief" so long as it is not "completely foreclosed from *any* access to the court").

Notably, Appellants do not argue that they are likely to succeed in challenging the court's award of attorneys' fees, arguing only that the fee proceedings should be stayed because the fee issue is "inextricably intertwined" with the sanctions order. Dkt.8 at 23. As a result, Appellants have abandoned any argument about their likelihood of successfully challenging the Court's decision to award fees for purposes

of the stay. *United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998).

## II. <u>**Appellants have not shown that they will suffer irreparable harm absent a stay.**</u>

Appellants bear the burden of demonstrating that they will face irreparable harm absent a stay. *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020). But Appellants offered no evidence of their irreparable harm. Their failure to do so is dispositive.

As movants for extraordinary relief, Appellants must demonstrate that they would suffer not only a "possibility of irreparable injury"—which on its own is insufficient, *Nken*, 556 U.S. at 434 (citations omitted)—but that they will suffer "imminent" irreparable harm in the absence of a stay, *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1249 (11th Cir. 2016) (citation omitted); *see also* Fed. R. App. P. 8(a)(2)(B)(ii) (requiring affidavits or other sworn statements). "[C]onclusory allegation[s]" and "[c]onjecture about [the] possibility" of irreparable harm are inadequate. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1286 (11th Cir. 1990).

Appellants claim that a stay is necessary to prevent irreparable harm to Brito's and Epstein's "professional standing" from their

respective bar disciplinary referral and one-year pro hac vice ban. Dkt.8 at 20. Appellants offered no declarations in support of this assertion, and, in any event, they admit that a stay cannot prevent the "immediate and irreversible" harm from Brito's bar disciplinary referral sent weeks ago. Appellants argue now that a stay would "prevent the harm from compounding," but they offer neither reason nor evidence as to why that is so.[5] Appellants similarly fail to support their assertion that Epstein intends to seek pro hac vice admission in any cases in the next year or any evidence whatsoever of the alleged restriction on "counsel's practice now." Dkt.8 at 20. Neither Brito nor Epstein has demonstrated that he will face "imminent" irreparable harm.

Also lacking in support is Appellants' assertion that the order's restriction on referring to the settlement in official proceedings will cause them irreparable harm. Dkt.8 at 20. Appellants proffered no evidence to suggest that there are currently any administrative, regulatory, or other official proceedings that would require reference to the purported settlement "as evidence of a 'settlement' reached in this matter."

[5] If a bar association were to impose any discipline, that would be a third-party decision by that bar association subject to the association's discipline procedures.

Dist.Ct.Dkt.106 at 47. Absent any "specific present objective[] harm or threat of specific future harm," *Laird v. Tatum,* 408 U.S. 1, 14 (1972), Appellants claims of First Amendment irreparable injury must fail.

Finally, Appellants' delay in seeking relief undermines their request for a stay. The district court ruled on July 13, but Appellants waited eighteen days to file a stay motion in the district court, and then delayed an additional twelve days before filing the stay motion in this Court. This delay in seeking relief weighs against a finding of immediate, irreparable harm necessary to support a stay.

## III. The balance of harms and the public interest weigh decidedly against a stay.

Despite their insistence otherwise, Dkt.8 at 21, Appellants are unlikely to succeed on their Due Process and First Amendment claims and the public interest will not be harmed during appellate proceedings. *See supra* at 17–23. Far from "undermining the public's confidence in the judicial process," Dkt.8 at 23, the court's order confirms that no lawyer, including those representing the President, can abuse the judicial system by pursuing a lawsuit to provide cover for a collusive settlement without being subject to Rule 11 sanctions.

## IV. <u>Defendants' judicial reassignment request fails.</u>

Defendants, appearing for the first time on appeal, separately complain that they had no notice of the sanctions order and urge this Court to take the extraordinary step of reassigning the case, speculating that the order was politically motivated. Dkt.10 at 19–21. Blaming the district court for Defendants' own decision not to appear below, and then relying on that as proof that *the court* was "acting in an improper political manner," is confounding. As discussed above, *supra* at 17–18, the district court gave adequate notice prior to imposing sanctions and DOJ referenced its actual awareness of the *Trump v. IRS* litigation on June 2 and again on June 5, 2026, days after the court ordered briefing on potential sanctions. *See Floyd v. DOJ*, 1:26-cv-1399 (E.D. Va. June 5, 2026), Dkt. 62 at 27 n.10 (DOJ acknowledging the timeline of the voluntary dismissal); *see id.* Dkt. 93-2 (referencing this litigation at Blanche's June 2, 2026 congressional hearing).

Regardless, Appellants did not request reassignment in their stay motion or below, and the "civil plain error rule bars" review of Defendants' untimely request for reassignment. *Jenkins v. Anton*, 922 F.3d 1257, 1272 (11th Cir. 2019).

In any event, judicial rulings "are proper grounds for appeal, not for recusal," and "judicial rulings alone almost never constitute a valid basis" for reassignment. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Defendant's request for reassignment—supported only by speculation about the timing of the court's order—does not even attempt to demonstrate the necessary support for reassignment, *see id.*, much less demonstrate that "reasonable" members of the public would believe that the order was politically motivated.

## CONCLUSION

The Court should deny the motion for a stay pending appeal.

Respectfully submitted,

*/s/ Tsuki Hoshijima*

TSUKI HOSHIJIMA
JYOTI JASRASARIA
POOJA A. BOISTURE
AYESHA KHAN
ROBIN F. THURSTON
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2) because, excluding the parts of the document exempted by Rule 32(f), it contains 5,199 words. This document complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) because it was prepared in a proportionately spaced typeface using Microsoft Word in Century Schoolbook fourteen-point font.

*/s/ Tsuki Hoshijima*