No. 26-12692

IN THE

# United States Court of Appeals for the Eleventh Circuit

PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, THE TRUMP ORGANIZATION, LLC,
*Plaintiffs-Appellants*,

ALEJANDRO BRITO, DANIEL EPSTEIN,
*Interested Parties-Appellants*,

v.

INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE TREASURY,
*Defendants*,

THIRTY-FIVE FORMER FEDERAL JUDGES,
*Interested Parties-Appellees*.

On Appeal from the United States District Court
for the Southern District of Florida,
Case No. 1:26-cv-20609 (Hon. Kathleen M. Williams)

**BRIEF OF *AMICUS CURIAE* AMERICA FIRST LEGAL FOUNDATION SUPPORTING APPELLANTS' TIME-SENSITIVE MOTION FOR STAY OF SANCTIONS ORDER**

*(Counsel Information on Inside Cover)*

Gene P. Hamilton
Reed D. Rubinstein
Julie A. Strauss
Nicholas R. Barry
Crystal C. Clanton
Robert A. Crossin
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org
julie.strauss@aflegal.org
nicholas.barry@aflegal.org
crystal.clanton@aflegal.org
bobby.crossin@aflegal.org

*Counsel for Amicus Curiae*
*America First Legal Foundation*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

As required by Eleventh Circuit Rules 26.1-1, 28-1, and 29-2, I certify that in addition to the individuals listed in the Appellants' Time-Sensitive Motion for Stay (Dkt. 8), Defendants' Response (Dkt. 10), the *Amicus Curiae* Brief of the Oversight Project (Dkt. 13-2), and the Motion to Intervene (Dkt. 21-1), the following persons and entities have an interest in the outcome of this matter:

1. America First Legal Foundation, *Amicus Curiae*
2. Barry, Nicholas – Counsel for *Amicus Curiae* America First Legal Foundation
3. Clanton, Crystal – Counsel for *Amicus Curiae* America First Legal Foundation
4. Crossin, Robert – Counsel for *Amicus Curiae* America First Legal Foundation
5. Hamilton, Gene – Counsel for *Amicus Curiae* America First Legal Foundation
6. Rubinstein, Reed – Counsel for *Amicus Curiae* America First Legal Foundation
7. Strauss, Julie – Counsel for *Amicus Curiae* America First Legal Foundation

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1, *amicus curiae* America First Legal

Foundation declares that it has no parent corporation nor any shares that could be owned by a publicly held corporation.

Dated: August 19, 2026

*<u>/s/Gene P. Hamilton</u>*
Gene P. Hamilton

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** .................................. C-1

**TABLE OF CONTENTS** .................................................................... i

**TABLE OF CITATIONS** .................................................................... ii

**STATEMENT OF IDENTITY, INTEREST & AUTHORITY** ............ 1

**STATEMENT OF THE ISSUES** ........................................................ 2

**SUMMARY OF THE ARGUMENT** .................................................... 2

**ARGUMENT** ...................................................................................... 6

**I. Movants are likely to succeed on the merits.** .......................... 7

A. The district court failed to provide individualized notice and an opportunity to be heard before imposing Rule 11 sanctions. ........................................................................... 7

B. Rule 11 cannot supply the basis for any sanctions against Mr. Epstein. ........................................................................... 11

C. The district court's adversity theory is legally untenable. ..... 15

D. Even if the adversity theory were correct, sanctions are unavailable for advancing a novel legal position. ............................ 17

E. Suing with the intent to settle is not an "improper purpose" under Rule 11. .................................................................. 19

II. **This Court's rejection of the Sanctions Order should be swift and unequivocal.** ................................................................. 21

**CONCLUSION** .................................................................................. 23

**CERTIFICATE OF COMPLIANCE** ................................................ 25

**CERTIFICATE OF SERVICE** .......................................................... 26

## TABLE OF CITATIONS

**Pages(s)**

**Cases**

*Baker v. Alderman*,
158 F.3d 516 (11th Cir. 1998) .................................................. 17, 22

*Bost v. Illinois State Bd. of Elections*,
607 U.S. 71 (2026) .................................................................. 16

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*,
498 U.S. 533 (1991) ................................................................ 11

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .................................................................. 13

*Clinton v. Jones*,
520 U.S. 681 (1997) ................................................................ 16

*Danubis Grp. v. Landmark Am. Ins. Co.*,
685 F. App'x 792 (11th Cir. 2017) ............................................. 8

*Davis v. Carl*,
906 F.2d 533 (11th Cir. 1990) .................................................. 18, 19

*Donaldson v. Clark*,
819 F.2d 1551 (11th Cir. 1987) (en banc) ............................. 9, 21, 22

*Est. of West v. Smith*,
9 F.4th 1361 (11th Cir. 2021) ................................................... 21

*Glatter v. Mroz*,
65 F.3d 1567 (11th Cir. 1995) .................................................... 9

*Kaplan v. DaimlerChrysler, A.G.*,
331 F.3d 1251 (11th Cir. 2003) ................................................ 8, 9

*Laiscell v. Hartford Bd. of Educ.*,
No. 3:20-cv-1463(VLB), 2021 WL 2376360
(D. Conn. June 10, 2021) .......... 13

*Lewis v. Clarke*,
581 U.S. 155 (2017) .......... 16

*Mistretta v. United States*,
488 U.S. 361 (1989) .......... 22

Nken v. Holder,
556 U.S. 418 (2009) .......... 2

*Operating Pension Eng'rs Tr. v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988) .......... 21

*Pavelic & LeFlore v. Marvel Ent. Grp.*,
493 U.S. 120 (1989) .......... 12

*Peer v. Lewis*,
606 F.3d 1306 (11th Cir. 2010) .......... 17

*United States v. Nixon*,
418 U.S. 683 (1974) .......... 15

**<u>Statutes</u>**

26 U.S.C. § 7122 .......... 19

28 U.S.C. §§ 2672, 2677 .......... 19

**<u>Other Authorities</u>**

23 Op. O.L.C. 126 (1999). .......... 20

**<u>Rules</u>**

Fed. R. App. P. 29 (a)(2)–(3). .......... 2

FED. R. APP. P. 29(a)(4)(E). .......... 1

FED. R. CIV. P. 11 .......... 11, 14

FED. R. CIV. P. 11(a). .......... 13

FED. R. CIV. P. 11(b). .......... 11

FED. R. CIV. P. 11(c)(3). .......... 8

## STATEMENT OF IDENTITY, INTEREST & AUTHORITY[1]

America First Legal Foundation ("AFL") is a national nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution.

AFL has a strong interest in this case because it regularly litigates matters involving the meaning and application of the Due Process Clauses of the U.S. Constitution. AFL also has a strong interest in safeguarding the independence of the legal profession and the rule of law. To that end, AFL litigates and conducts oversight efforts to protect attorneys from partisan attacks, weaponized investigations, and unconstitutional sanctions that threaten their ability to represent clients free from governmental retaliation or interference. *See, e.g.*, Brief of Am. First Legal Found. as *Amicus Curiae* in Support of Respondent, *In re Clark*, No. 25-BG-0731 (D.C. Sept. 30, 2025), Disciplinary Dkt. No. 2021-D193. This case implicates those same fundamental principles and

[1] No party's counsel authored the brief in whole or in part, and no entity or person aside from *amicus*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* FED. R. APP. P. 29(a)(4)(E).

therefore falls squarely within AFL's institutional interests.[2] AFL is authorized to file this brief pursuant to the accompanying motion for leave under Fed. R. App. P. 29 (a)(2)–(3).

## STATEMENT OF THE ISSUES

The issue is whether Movants have established: (1) a likelihood of success on the merits of their appeal; (2) irreparable harm absent a stay; (3) that a stay will not substantially injure the other interested parties; and (4) that the public interest favors a stay. *See Nken v. Holder*, 556 U.S. 418, 425–26 (2009).

## SUMMARY OF THE ARGUMENT

This appeal arises from a suit filed by President Donald J. Trump, Donald J. Trump Jr., Eric Trump, and The Trump Organization, LLC (collectively, "Plaintiffs") against the Internal Revenue Service and the United States Department of the Treasury, alleging unauthorized disclosure of their confidential tax-return information. Dist. Ct. Dkt. 1.

From 2019 to 2020, Charles Littlejohn, a former IRS employee-contractor, deliberately obtained Plaintiffs' tax returns and disclosed

[2] AFL also discloses to the Court that Daniel Epstein, an Interested Party-Appellant, is a former Vice President of AFL.

them to media outlets. Plaintiffs later received IRS notices confirming that their confidential information had been illegally stolen and released. Littlejohn pleaded guilty and received the statutory maximum sentence. The sentencing court found that he targeted President Trump as part of a three-year scheme and intended to harm at least some of the taxpayers whose information he stole. The IRS admitted that it failed to prevent the criminal conduct and unlawful disclosure.

On January 29, 2024, Plaintiff President Donald J. Trump received a letter from the IRS officially notifying him of the violations of federal law stemming from Mr. Littlejohn's conduct. Dist. Ct. Dkt. 1. Other plaintiffs received similar notices later. *Id.*

Plaintiffs filed this action on January 29, 2026. *Id.* On April 17, the parties jointly sought additional time for Defendants to respond while negotiating a potential resolution. Dist. Ct. Dkt. 40. The district court nevertheless ordered briefing on whether an Article III case or controversy existed and appointed six *amici* to address that question. Dist. Ct. Dkt. 41, 43. Plaintiffs voluntarily dismissed the action with prejudice on May 18, and the district court then canceled the jurisdictional briefing and closed the case. Dist. Ct. Dkt. 52, 62.

Nine days later, thirty-five former federal judges moved under Federal Rule of Civil Procedure 60 to reopen the case, alleging fraud on the court. Dist. Ct. Dkt. 63. They sought vacatur of the dismissal or, alternatively, leave to appear as *amici*—but did not seek Rule 11 sanctions, professional discipline, monetary penalties, a bar referral, or injunctive relief. *Id.* The district court then directed Plaintiffs to address charges of collusion, whether the parties were truly adverse, whether the dismissal was premised on deception, and whether the case should be reopened because the court was the "victim of a fraud." Dist. Ct. Dkt. 65 at 3 ("May 29 Order"). Yet the court did not direct Defendants to respond, issue a Rule 11 show-cause order to counsel Alejandro Brito or Daniel Epstein, identify specific conduct by either attorney that might warrant sanctions, or provide notice that monetary sanctions or speech restrictions were under consideration.

On July 13, 2026, the district court issued a 56-page order imposing extraordinary sanctions. Dist. Ct. Dkt. 106 ("Sanctions Order"). The district court concluded that presidential supervision under Article II eliminated Article III adversity, rendering the action non-adversarial, collusive, and jurisdictionally improper. *Id.* at 37–38. It treated the filing

of the Complaint itself as evidence of collusion and bad faith. It imposed a sweeping gag order prohibiting the parties and their "affiliates" from referring to, using, offering, admitting, or citing the Settlement Agreement in any proceeding. *Id.* at 47, 52. The district court also referred Mr. Brito to the Florida Bar, barred Mr. Epstein from seeking *pro hac vice* admission in the Southern District of Florida for one year, and invited volunteer *amici* to seek fees. *Id.* at 46–47, 52–53.

Plaintiffs appealed on July 31 and moved for an expedited motion to stay the Sanctions Order and related proceedings. Dist. Ct. Dkt. 113, 114. Although Defendants indicated that they would not oppose a stay, Dist. Ct. Dkt. 114 at 21, the district court declined to enter one and instead solicited a response from the previously appointed *amici*, Dist. Ct. Dkt. 115. On August 12, Plaintiffs and their counsel ("Movants") filed a Time-Sensitive Motion for Stay of Sanctions Order in this Court. Dkt. 8.

The Sanctions Order cannot stand. First, the district court denied Movants the individualized notice and meaningful opportunity to be heard required by Rule 11 and due process before imposing sanctions. Second, Rule 11 cannot support sanctions against Mr. Epstein because

the district court did not take issue with any pleading, motion, or other paper that he signed, filed, submitted, or later advocated in court. Third, the court's theory that presidential supervision eliminated Article III adversity is legally untenable. And even if that novel theory were correct, Rule 11 does not authorize sanctions merely because counsel advances a good-faith legal position on a difficult and unprecedented question—particularly where the district court itself recognized the question as such. *See* Dist. Ct. Dkt. 106 at 53 n.69. Nor is there anything sanctionable about filing a well-founded lawsuit with the legitimate objective of reaching a settlement.

These errors independently warrant reversal. The district court imposed extraordinary sanctions without adequate notice, without individualized findings, and without a valid legal basis. This Court should therefore reject the Sanctions Order clearly and unequivocally.

## ARGUMENT

Movants are likely to succeed on the merits of their appeal for several independent reasons, and the district court's significant errors warrant swift and unequivocal relief.

## I. Movants are likely to succeed on the merits.

The district court's decision to impose sanctions should be reversed for at least five independent reasons. First, the sanctions violate due process because the district court failed to provide adequate notice and an opportunity to be heard before imposing them. Second, Rule 11 cannot support sanctions against Mr. Epstein because the district court did not take issue with any pleading, motion, or other paper that he signed, filed, submitted, or later advocated. Third, the district court's theory that Movants were insufficiently adverse is legally and factually unsound. Fourth, sanctions cannot be imposed merely for advancing a novel legal position. Finally, there is nothing improper about suing with an intent to settle.

### A. The district court failed to provide individualized notice and an opportunity to be heard before imposing Rule 11 sanctions.

The sanctions imposed are improper because the district court failed to provide the notice and opportunity to be heard required by Rule 11 and due process.

Rule 11 permits a court acting on its own initiative to impose sanctions only after it "order[s] an attorney, law firm, or party to show

cause why conduct specifically described in the order has not violated Rule 11(b)." FED. R. CIV. P. 11(c)(3). The May 29 Order did nothing of the sort. It directed "Plaintiffs" to address allegations of collusion, adverseness, deception, and possible fraud on the court. Dist. Ct. Dkt. 65 at 3. But it did not identify Mr. Epstein or Mr. Brito—Plaintiffs' *counsel*, not Plaintiffs themselves—as potential sanctions targets. Nor did it identify any specific conduct by either attorney as potentially sanctionable under Rule 11 or advise them that the court was considering the extraordinary sanctions ultimately imposed: a one-year prospective ban on seeking *pro hac vice* admission and a referral to the Florida Bar.

To be sure, the Eleventh Circuit applies a "flexible standard" to Rule 11's notice requirement and "in many cases substantial compliance may suffice." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1257 (11th Cir. 2003). This Court has found substantial compliance when, for example, an evidentiary-hearing order expressly warned that "should the evidence support a finding that any party, witness or counsel participated in any way in the perpetration of a fraud in this matter, the Court will consider the full measure of sanctions available." *Danubis Grp. v. Landmark Am. Ins. Co.*, 685 F. App'x 792, 801 (11th Cir. 2017).

But this Court has never approved notice so general that the person sanctioned cannot reasonably know that his own conduct is at issue. Even under the Eleventh Circuit's flexible standard, a court must provide sufficient notice of both who is subject to sanctions and what conduct may warrant them. *See Donaldson v. Clark*, 819 F.2d 1551, 1559–60 (11th Cir. 1987) (en banc) (noting that "the attorney" at issue must have "fair notice"). "Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why. . . . In addition, the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions." *Glatter v. Mroz*, 65 F.3d 1567, 1575–76 (11th Cir. 1995). Notice, therefore, must be meaningful, not merely a generalized notice that some conduct in the litigation might warrant sanctions.

This Court's decision in *Kaplan* is instructive. There, this Court held that sanctions were invalid because, although the district court's show-cause order identified one specific filing as a potential basis for sanctions, the court ultimately relied on that filing and several additional filings that the order did not identify. *Kaplan*, 331 F.3d at 1257. This Court held that the failure to identify all relevant filings in the show-

cause order required reversal. *Id.* If notice identifying one specific filing is insufficient to support sanctions based on additional filings, then generalized notice directing "Plaintiffs" to respond to allegations of collusion, deception, and possible fraud cannot support personal sanctions against individual attorneys whose conduct was never identified as potentially sanctionable.

None of the individuals ultimately sanctioned received individualized notice that they were potential targets of sanctions. The May 29 Order neither identified any of them as potential targets nor identified the particular conduct for which they might be sanctioned.

The district court therefore deprived the sanctioned individuals of a meaningful opportunity to defend themselves before sanctions were imposed. Rule 11(c)(3) and due process require notice sufficient to identify who may be sanctioned, what conduct is alleged to be sanctionable, and what sanctions the court is considering. Because the May 29 Order provided none of that individualized notice, the sanctions are ultra vires and must be reversed.

### B. Rule 11 cannot supply the basis for any sanctions against Mr. Epstein.

Rule 11 cannot support the sanctions imposed on Mr. Epstein because the district court did not take issue with any pleading, motion, or other paper that he personally signed, filed, submitted, or later advocated before the court.

Rule 11(b) is unmistakably clear. Its obligations attach to an attorney or unrepresented party who "sign[s], file[s], submit[s], or later advocate[s]" a pleading, motion, or other paper presented to the court. FED. R. CIV. P. 11(b). Those obligations arise from the act of presenting the paper and certifying that, among other things, it is submitted for a proper purpose, supported by existing law or a nonfrivolous argument for changing the law, and has evidentiary support after reasonable inquiry. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 542, 546–47 (1991) (explaining that Rule 11 duties attach to the party or attorney who "signs his or her name" to a paper submitted to a court). The Advisory Committee Notes make the point even more directly: "[t]he person signing, filing, submitting, or advocating a document has a *nondelegable* responsibility to the court, and in most situations is the person to be sanctioned for a violation." FED. R. CIV. P. 11 advisory

committee's note to 1993 amendment (emphasis added). The Supreme Court has likewise held that Rule 11 sanctions are properly imposed on "the individual signer," rather than on others associated with him. *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989).

The district court's Sanctions Order finds fault with two documents: the Complaint, *see* Dist. Ct. Dkt. 106 at 11–30, and the settlement agreement, *see* Dist. Ct. Dkt. 106 at 30–34.[3] Neither document provides a basis for imposing Rule 11 sanctions against Mr. Epstein.

All agree that Mr. Epstein did not sign the Complaint, file it, or submit it to the district court. He was not counsel of record, and the district court did not find that he later advocated the Complaint before the court. Indeed, the district court acknowledges that Mr. Brito signed the Complaint and that Mr. Epstein "could not" have signed it because he was not admitted to practice in the Southern District of Florida. Dist. Ct. Dkt. 106 at 30 n.41. Although Mr. Epstein's name appeared in the signature block alongside a notation that a forthcoming application for

[3] The Sanctions Order also briefly discusses the "Release Order" signed by then-Acting Attorney General Todd Blanche.

admission *pro hac vice* would be filed, that notation did not transform him into the attorney who signed or presented the Complaint.

The mere presence of Mr. Epstein's name in the signature block does not expand Rule 11 beyond its text. Rule 11(a) requires that a paper "must be signed by at least one attorney of record in the attorney's name." FED. R. CIV. P. 11(a). An attorney who has not been admitted to practice before a court—whether generally or *pro hac vice*—cannot serve as an "attorney of record" because he lacks authority to sign papers or file them in that forum. *See Laiscell v. Hartford Bd. of Educ.*, No. 3:20-cv-1463(VLB), 2021 WL 2376360, at *2 (D. Conn. June 10, 2021) (explaining that an attorney not admitted to a particular court cannot file a motion in that court on another's behalf). Mr. Epstein's lack of *pro hac vice* admission further confirms that he was not acting as counsel of record before the district court and could not have "presented" any document within the meaning of Rule 11(b). The court cannot impose Rule 11 sanctions on an attorney who never assumed the rule's certification obligations in the first place. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 53 (1991) (distinguishing Rule 11, which addresses "specific filing[s]," from the court's broader inherent powers).

The district court's reliance on Mr. Epstein's signature on the settlement agreement fares no better. Although Mr. Epstein signed that document, it was a private settlement agreement, not a paper filed with or submitted to the court. *See* Dist. Ct. Dkt. 106 at 6 (noting that, before dismissal, the only pleadings filed by any party were the Complaint, a Consent Motion, and the Notice of Voluntary Dismissal). The Advisory Committee Notes expressly confirm that Rule 11 "applies only to assertions contained in papers filed with or submitted to the court." FED. R. CIV. P. 11 advisory committee's note to 1993 amendment. Indeed, the district court itself recognized that the settlement agreement was "not before" it. Dist. Ct. Dkt. 106 at 47 n.63. Mr. Epstein's signature on a document that was never presented to the court cannot satisfy Rule 11's threshold requirement or supply the missing predicate for sanctions.[4]

The district court failed to connect Mr. Epstein's specific conduct to any sanctionable Rule 11 filing. It is not enough that he was involved in

---

[4] To be sure, Mr. Epstein's signature appears on the Notice of Voluntary Dismissal, beneath Mr. Brito's signature. *See* Dist. Ct. Dkt. 52. But the district court did not take issue with that document. Its theory was that the parties lacked adversity—not that they improperly dismissed the case. Indeed, the voluntary dismissal is entirely consistent with the court's theory: if the parties were not genuinely adverse, there would be nothing anomalous about their agreeing to end the litigation.

settlement negotiations or listed as intended counsel if the court never found that he personally made a Rule 11 certification. The Sanctions Order concededly could only "surmise" Mr. Epstein's motive, *id.* at 31, and imposed a one-year prohibition on *pro hac vice* admission based on conjecture rather than any finding that he personally signed, filed, submitted, or advocated a problematic paper in violation of Rule 11.

### C. The district court's adversity theory is legally untenable.

The district court's central substantive premise—that presidential supervision under Article II eliminates Article III adversity—is incorrect. The Supreme Court rejected this very argument over fifty years ago in *United States v. Nixon*, where the Court held that a dispute between the President and the Special Prosecutor was justiciable despite the Special Prosecutor being subordinate to the President. 418 U.S. 683, 693, 696–97 (1974). If adversity existed where the President sought to contest a subpoena issued by his own subordinate, it plainly exists where the President sues in his personal capacity to vindicate private statutory rights against an agency that admitted wrongdoing.

In a personal-capacity action, "the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 162–63

(2017). The Supreme Court has recognized that the Presidency remains distinct from "the individual who happens to be the President." *Clinton v. Jones*, 520 U.S. 681, 701 (1997). The district court cited no law supporting its extraordinary conclusion that the President loses his right to bring suit against the Federal Government in his personal capacity for cognizable injuries.

The theory is even more untenable as applied to the non-presidential plaintiffs. Donald Trump Jr., Eric Trump, and The Trump Organization are private parties who have never exercised any authority over the IRS or Treasury. Yet the district court dismissed their claims as merely "parenthetical" because of shared counsel, family ties, and a common litigation position. Dist. Ct. Dkt. 106 at 22 n.29. Article III does not extinguish private statutory rights through association with a President. And because Article III requires "only one plaintiff" with standing to maintain a case or controversy, *Bost v. Illinois State Bd. of Elections*, 607 U.S. 71, 76 n.3 (2026), the presence of these indisputably private plaintiffs independently established adversity.

### D. Even if the adversity theory were correct, sanctions are unavailable for advancing a novel legal position.

Even accepting the district court's creative adversity analysis arguendo, the Sanctions Order still cannot stand because it punishes Movants for advancing a bona fide legal position on a genuinely novel legal question. The Eleventh Circuit has long recognized that Rule 11 sanctions are reserved for claims that are "objectively frivolous." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). In other words, sanctions are appropriate only when a claim has "no reasonable chance of success" and "cannot be advanced as a reasonable argument to change existing law." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

The district court's own conduct belies any claim that the adversity question was so obvious as to be sanctionable. The district court characterized the issue as "*sui generis*," acknowledged that "[a]t first glance, the Complaint seemingly satisfies Article III," and devoted nearly thirty pages to resolving the question. Dist. Ct. Dkt. 106 at 2, 17, 9–38. The court also found it necessary to appoint three separate sets of *amici* to address whether subject-matter jurisdiction existed—and those court-appointed *amici* concluded that "the adversity inquiry likely cannot be concluded at this time." Dist. Ct. Dkt. 45 at 14. A legal question so

difficult that it required a district court judge to request extensive briefing, multiple *amici*, and dozens of pages of analysis cannot simultaneously be so "obvious and so insurmountable" that advancing a contrary view warrants career-altering sanctions. *See* Dist. Ct. Dkt. 106 at 38.

This Court has emphasized that it "prefer[s] that an attorney feel free to exercise [his] judgment without fear of reprisals should his lawsuit miscarry." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990). "Rule 11 is intended to deter claims with no factual or legal basis at all"; it does not authorize punishment merely because a lawyer advances a "creative" claim that ultimately proves unsuccessful. *Id.* To hold otherwise would chill precisely the type of good-faith advocacy that our adversarial system depends upon.

That principle forecloses sanctions here. Plaintiffs did not advance frivolous or baseless claims. They invoked a congressionally enacted statute, alleged concrete and genuine injuries, and supported their claims with legal arguments grounded in Supreme Court precedent. The viability of the claims could succeed, or ultimately fail on the merits, but their ultimate disposition is beside the point under *Davis*. At most,

Plaintiffs presented claims that the district court disagreed with—not claims "with no factual or legal basis at all." *Id.* Rule 11 does not permit a court to convert that disagreement into punishment. The sanctions, therefore, cannot stand.

### E. Suing with the intent to settle is not an "improper purpose" under Rule 11.

The district court's alternative basis for sanctions—that Plaintiffs filed suit for the "improper purpose" of achieving a "predetermined outcome," Dist. Ct. Dkt. 106 at 43—is equally flawed and rests on a mischaracterization of the facts.

Most civil cases settle. Filing suit with the expectation that litigation will produce a negotiated resolution is a normal part of civil litigation in America. This is patently obvious to any practicing lawyer in any jurisdiction across the country. Were it not so, roadside billboards in most major metropolitan areas would likely not feature as many advertisements for personal injury lawyers.

The Federal Government itself routinely settles claims, including claims that have never been formally filed. *See* 28 U.S.C. §§ 2672, 2677 (authorizing pre-litigation settlement under the Federal Tort Claims Act); 26 U.S.C. § 7122 (authorizing compromise of tax matters). The

Attorney General may "exercise broad discretion in determining when, and on what terms, settlement would best serve the interests of the United States." Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion, 23 Op. O.L.C. 126, 135 (1999). If the intent to settle were sanctionable, that discretion would be impossible to exercise.

The district court asserted that the parties sued to "gain the imprimatur of judicial legitimacy for a 'settlement' that had no viable basis in law or fact," Dist. Ct. Dkt. 106 at 38, and that the court was somehow tricked into lending a "patina of legitimacy" to the settlement, *id.* at 2, 43. But a court cannot be "tricked" into legitimizing something it was never asked to review, approve, or act upon.

The parties never asked the district court to do anything with respect to the settlement. Plaintiffs filed a complaint and voluntarily dismissed it with prejudice before any responsive filing was due. No consent decree was entered. No settlement was submitted to the court for approval. No order bound any party's future conduct or discretion.

Under Rule 41, the notice of dismissal automatically divested the court of jurisdiction the moment it was filed. *See Est. of West v. Smith*, 9

F.4th 1361, 1366–67 (11th Cir. 2021). The district court's theory that it was somehow tricked into lending a "patina of legitimacy" to the settlement, Dist. Ct. Dkt. 106 at 2, 43, is incoherent because the parties never sought anything from the court that could have provided such legitimacy.

Rule 11 targets "dilatory or abusive tactics" and "frivolous claims or defenses." *Donaldson*, 819 F.2d at 1556. It does not reach the ordinary litigation strategy of filing a well-founded claim, and then resolving it through settlement before any substantive proceedings occur.

## II. This Court's rejection of the Sanctions Order should be swift and unequivocal.

Beyond merely correcting the errors in this case, this Court should make clear that the sanctions imposed below have no place in our judicial system. Sanctions are an extraordinary remedy reserved for truly frivolous or abusive litigation. *Id.* ("Rule 11 sanctions are designed to 'discourage dilatory or abusive tactics'" and "'lessen[] frivolous claims or defenses.'" (citation omitted)); *Operating Pension Eng'rs Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988) ("Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."). They are not a mechanism for punishing litigants or counsel because their claims are politically

disfavored or because a judge disagrees with the viewpoints they advance. *Donaldson*, 819 F.2d at 1561 ("The rule should not be used to deter potentially controversial or unpopular suits."); *see also Baker*, 158 F.3d at 524 (requiring an objective frivolousness standard for evaluating conduct under Rule 11). Any ambiguity in this Court's disposition would risk encouraging similar abuses in future cases.

An unequivocal rejection of the sanctions is particularly important because judicial legitimacy depends upon the evenhanded administration of justice. *See Mistretta v. United States*, 488 U.S. 361, 407 (1989) ("The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship."). Courts must remain forums where parties can vindicate their legal rights without fear that political considerations will influence the outcome or that novel or controversial claims will be met with punitive measures rather than reasoned adjudication. *Id.*; *see also Baker*, 158 F.3d at 524 ("[T]he purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression."). If sanctions may be imposed based on ideology rather than law, the chilling effect will extend well beyond the

parties here, discouraging attorneys from zealously representing clients in matters of significant public importance.

This Court should leave no doubt that politically motivated sanctions imposed without a sound legal basis are incompatible with the rule of law. A clear repudiation of such conduct will reaffirm that the judiciary is governed by neutral legal principles, not political preferences, and will help ensure that sanctions remain what they are intended to be: a narrow tool for addressing genuine litigation misconduct, not a weapon for suppressing disfavored advocacy. And if any further proceedings are necessary, they should be assigned to a different district judge because the order's sweeping factual and political conclusions, coupled with its sanction of a non-appearing attorney, would reasonably undermine confidence in neutral reconsideration on remand.

## CONCLUSION

For the foregoing reasons, this Court should grant a stay.

Dated: August 19, 2026

Respectfully submitted,

*/s/Gene P. Hamilton*
Gene P. Hamilton
Reed D. Rubinstein
Julie A. Strauss
Nicholas R. Barry
Crystal C. Clanton

Robert A. Crossin
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org
julie.strauss@aflegal.org
nicholas.barry@aflegal.org
crystal.clanton@aflegal.org
bobby.crossin@aflegal.org

*Counsel for Amicus Curiae*
*America First Legal Foundation*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 29 and 32, and the typeface and type-style requirements of Rule 32. The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook. The brief contains 4,522 words, excluding parts of the brief exempted.

*/s/Gene P. Hamilton*
Gene P. Hamilton

## CERTIFICATE OF SERVICE

I certify that on August 19, 2026, I electronically filed the foregoing brief with the Clerk through CM/ECF, which will serve an electronic copy to all counsel of record.

*/s/Gene P. Hamilton*
Gene P. Hamilton