No. 26-12692

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

PRESIDENT DONALD J. TRUMP; DONALD J. TRUMP, JR.; ERIC TRUMP; and THE TRUMP ORGANIZATION, LLC,
*Plaintiffs-Appellants*,

ALEJANDRO BRITO and DANIEL EPSTEIN,
*Interested Parties-Appellants*,

v.

INTERNAL REVENUE SERVICE and U.S. DEPARTMENT OF THE TREASURY,
*Defendants-Appellees*,

THIRTY-FIVE FORMER FEDERAL JUDGES,
*Interested Parties-Appellees.*

---

On Appeal from the United States District Court for the Southern District of Florida, No. 1:26-cv-20609-KMW

---

**OPPOSITION OF THIRTY-FIVE FORMER FEDERAL JUDGES TO APPELLANTS' TIME-SENSITIVE MOTION FOR STAY**

---

Neal S. Manne
Justin A. Nelson
Stephen Shackelford, Jr.*
Davida P. Brook*
Daniel J. Shih
Glenn C. Bridgman*
**SUSMAN GODFREY L.L.P.**^
1000 Louisiana St, Suite 5100
Houston, TX 77002
(713) 653-9366
jnelson@susmangodfrey.com

Matthew J. Platkin
Angela Cai
**PLATKIN LLP**
1 Gateway Ctr. #1150
Newark, NJ 07102
(973) 561-1952
acai@platkinllp.com

Andrés Rivero
**RIVERO MESTRE LLP**
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
(305) 445-2500
arivero@riveromestre.com

Norman L. Eisen
David W. Ogden*
Stephen A. Jonas*
Carolina L. Porcile*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, D.C. 20003
(202) 594-9958
norman@democracydefenders.org

** Pro hac vice admission or regular admission forthcoming*

*^ Primary office listed. Counsel for Former Judges Nancy Gertner and Michael Luttig only*

*Counsel for Interested Parties-Appellees*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rules 26.1-1 through 26.1-3 and 27-1(a)(5), counsel for Interested Parties/Appellees certify that the Thirty-Five Former Federal Judges are natural persons and have no parent corporation and that no publicly traded company or corporation holds a 10% or more interest in any Interested Party/Appellee or have an interest in the outcome of this appeal. The following is a complete list of the trial judge, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. Aburos, Tal – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

2. America First Legal Foundation – Amicus in the Court of Appeals

3. Barry, Nicholas R. – Counsel for Amicus America First Legal Foundation in the Court of Appeals

4. Biazzo, Corey J. – Pro se Amicus in the District Court

5. Bingham, Lauren C. – Counsel for Amicus in the District Court CREW

6. Bissell, John W., Retired Chief Judge – Appellee and Movant/Amicus in the District Court

7. Blanche, Todd – Attorney General, U.S. Department of Justice

8. Boisture, Pooja A. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

9. Bonta, Rob – Amicus in the District Court, Attorney General of California, Lead Signatory for Twenty-Three State Attorneys General Amici

10. Bradley, Conor – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

11. Bridgman, Glenn – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

12. Brito, Alejandro – Appellant and Counsel for Plaintiffs in the District Court

13. Brito, PLLC – Counsel for Plaintiffs-Appellants

14. Brook, Davida – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

15. Brown, Geraldine Soat, Retired Judge – Appellee and Movant/Amicus in the District Court

16. Cai, Angela – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

17. Carullo, Nick – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

18. Castillo, Rubén, Retired Chief Judge – Appellee and Movant/Amicus in the District Court

19. Citizens for Responsibility and Ethics in Washington (CREW) – Amicus in the District Court

20. Clanton, Crystal C. – Counsel for Amicus America First Legal Foundation in the Court of Appeals

21. Clark, Sr., Jeffrey Bossert – Counsel for Amicus in Court of Appeals The Oversight Project

22. Clemon, U.W., Retired Chief Judge – Appellee and Movant/Amicus in the District Court

23. Common Cause – Amicus in the District Court

24. Corp, Ian Michael – Counsel for Plaintiffs-Appellants

25. Cox, Susan E., Retired Judge – Appellee and Movant/Amicus in the District Court

26. Crossin, Robert A. – Counsel for Amicus America First Legal Foundation in the Court of Appeals

27. Debevoise & Plimpton LLP – Counsel for Amicus in the District Court

28. Democracy Defenders Action – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

29. Democracy Forward Foundation – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

30. Denlow, Morton, Retired Judge – Appellee and Movant/Amicus in the District Court

31. DLA Piper LLP (US) – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

32. Dow, Randy R. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

33. Duncan, David K., Retired Judge – Appellee and Movant/Amicus in the District Court

34. Eisen, Norman L. – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

35. Epstein & Co. LLC – Counsel for Plaintiffs-Appellants

36. Epstein, Daniel Z. – Appellant and Counsel for Plaintiffs in the District Court

37. Farchadi, Kayvan A. – Counsel for Amicus in the District Court CREW

38. Finnegan, Sheila, Retired Chief Judge – Appellee and Movant/Amicus in the District Court

39. Fogel, Jeremy, Retired Judge – Appellee and Movant/Amicus in the District Court

40. Foley, Elizabeth Price – Counsel for Amicus in Court of Appeals The Oversight Project

41. Francis IV, James C., Retired Judge – Appellee and Movant/Amicus in the District Court

42. Gay, Faith E. – Amicus in the District Court

43. Gelber Schachter & Greenberg, P.A. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

44. Gertner, Nancy, Retired Judge – Appellee and Movant/Amicus in the District Court

45. Gleeson, John – Amicus in the District Court

46. Gold, Steven M., Retired Judge – Appellee and Movant/Amicus in the District Court

47. Goldgar, A. Benjamin, Retired Judge – Appellee and Movant/Amicus in the District Court

48. Green, Nicholas R. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

49. Greenberg, Gerald E. – Counsel for Amici in the District Court, Former Government Officials & Public Interest Organizations

50. Grimm, Paul W., Retired Judge – Appellee and Movant/Amicus in the District Court

51. Haier, Aaron E. – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

52. Halpern, Josh – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

53. Hamilton, Gene P. – Counsel for Amicus America First Legal Foundation in the Court of Appeals

54. Henderson, Thelton, Retired Judge – Appellee and Movant/Amicus in the District Court

55. Henry, Robert Harlan, Retired Chief Judge – Appellee and Movant/Amicus in the District Court

56. Hewitt, Jillian – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

57. Holtzman Vogel Baran Torchinsky & Josefiak PLLC – Counsel for Amicus in Court of Appeals The Oversight Project

58. Holwell, Richard J., Retired Judge – Appellee and Movant/Amicus in the District Court

59. Horton, Rachel A.H. – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

60. Hoshijima, Tsuki – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

61. Huvelle, Ellen Segal, Retired Judge – Appellee and Movant/Amicus in the District Court

62. Internal Revenue Service – Defendant

63. Jasrasaria, Jyoti – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

64. JH Legal PLLC – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

65. Jonas, Stephen A. – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

66. Jones III, John E., Retired Judge – Appellee and Movant/Amicus in the District Court

67. Joshi, Nandan – Counsel for Amicus in the District Court Public Citizen

68. Kambli, Abhishek – Counsel for Amicus in Court of Appeals The Oversight Project

69. Keneally, Kathryn – Amicus in the District Court

70. Khan, Ayesha – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

71. Kirn, Harald H. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

72. Klugh, Richard C. – Counsel for Plaintiffs-Appellants

73. Koskinen, John – Amicus in the District Court

74. Lett, Hon. Enjolique A. – U.S. Magistrate Judge

75. Liao, Cynthia – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

76. Luttig, Michael, Retired Judge – Appellee and Movant/Amicus in the District Court

77. Lynn, Barbara M. G., Retired Judge – Appellee and Movant/Amicus in the District Court

78. Mann, Roanne L., Retired Judge – Appellee and Movant/Amicus in the District Court

79. Manne, Neal S. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

80. Matz, A. Howard, Retired Judge – Appellee and Movant/Amicus in the District Court

81. McCotter, R. Trent – Counsel for Defendants

82. Michel, Paul, Retired Chief Judge – Appellee and Movant/Amicus in the District Court

83. Milelli, Rosario – Nonparty

84. Munger Tolles & Olson LLP – Counsel for Amicus in the District Court

85. Nelson, Justin A. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

86. Newman, Lisa – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

87. O'Malley, Kathleen, Retired Judge – Appellee and Movant/Amicus in the District Court

88. O'Neil, David A. – Amicus in the District Court

89. Ogden, David W. – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

90. Olson, Nina – Amicus in the District Court

91. Oprison, Christopher G. – Counsel for Plaintiffs-Appellants President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein

92. Owsley, Brian, Retired Judge – Appellee and Movant/Amicus in the District Court

93. Perryman, Skye L. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

94. Pinkert, Mark – Counsel for Amicus in Court of Appeals The Oversight Project

95. Platkin LLP – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

96. Platkin, Matthew J. – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

97. Porcile, Carolina – Counsel for Appellees Thirty-Five Former Federal Judges

98. Pro, Philip M., Retired Judge – Appellee and Movant/Amicus in the District Court

99. Project On Government Oversight – Amicus in the District Court

100. Public Citizen – Amicus in the District Court

101. Ramanathan, Ravi – Counsel for Appellees Thirty-Five Former Federal Judges and Amici in the District Court 93 Members of the U.S. House of Representatives

102. Rennie, Russell – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

103. Rivero Mestre LLP – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

104. Rivero, Andrés – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

105. Roberts, Victoria A., Retired Judge – Appellee and Movant/Amicus in the District Court

106. Rothenberg, Gilbert – Amicus in the District Court

107. Rubinstein, Reed D. – Counsel for Amicus America First Legal Foundation in the Court of Appeals

108. Savage, Zach – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

109. Scheindlin, Shira A., Retired Judge – Appellee and Movant/Amicus in the District Court

110. Selendy Gay PLLC – Counsel for Amicus in the District Court

111. Selendy, Philippe Z. – Amicus in the District Court

112. Shackelford, Jr., Stephen – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

113. Sheehan, Daniel C. – Counsel for Amici in the District Court Twenty-Three State Attorneys General

114. Shih, Daniel J. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

115. Smith, Fern M., Retired Judge – Appellee and Movant/Amicus in the District Court

116. Stephens III, Glenn – Requested Intervenor in District Court

117. Stoughton, Corey – Amicus in the District Court

118. Strauss, Julie A. – Counsel for Amicus America First Legal Foundation in the Court of Appeals

119. Sus, Nikhel S. – Counsel for Amicus in the District Court CREW

120. Susman Godfrey L.L.P. – Counsel for Appellees Retired Judges Michael Luttig and Nancy Gertner

121. Tenjido-Eljaiek, Daniela – Counsel for Appellees Thirty-Five Former Federal Judges, and Amici in the District Court 93 Members of the U.S. House of Representatives

122. The Oversight Project – Amicus in the Court of Appeals

123. The Trump Organization, LLC – Plaintiff-Appellant

124. Thurston, Robin F. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

125. Tinder, John D., Retired Judge – Appellee and Movant/Amicus in the District Court

126. Trump Jr., Donald J. – Plaintiff-Appellant

127. Trump, Eric – Plaintiff-Appellant

128. Trump, President Donald J. – Plaintiff-Appellant

129. Ungaro, Ursula, Retired Judge – Appellee and Movant/Amicus in the District Court

130. United States Department of the Treasury – Defendant

131. Verrilli, Jr., Donald B. – Amicus in the District Court

132. Walsh, Daniel R. – Counsel for Amici in the District Court Former Government Officials & Public Interest Organizations

133. Ward, T. John, Retired Judge – Appellee and Movant/Amicus in the District Court

134. Williams, Hon. Kathleen M. – U.S. District Judge

135. Wolf, Mark L., Retired Judge – Appellee and Movant/Amicus in the District Court

136. Woodward, Jr., Stanley E. – Associate Attorney General, U.S. Department of Justice

137. Yeakel, Lee, Retired Judge – Appellee and Movant/Amicus in the District Court

Dated: August 24, 2026 /s/ Angela Cai

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARD ........ 6

ARGUMENT ........ 6

- I. Appellants Failed To Comply With Fed. R. App. P. 8(a). ........ 6
- II. Appellants Show No Irreparable Harm. ........ 6
- III. Appellants Fail To Demonstrate A Likelihood Of Success On The Merits. ........ 8
  - A. Appellate Jurisdiction Is Lacking. ........ 8
  - B. The District Court Correctly Found The Lawsuit Was Collusive And Pursued In Bad Faith. ........ 10
  - C. Appellants' Procedural Objections Fail. ........ 14
  - D. The Order Did Not Violate The First Amendment. ........ 18
- IV. The Public Interest Disfavors A Stay. ........ 21

CONCLUSION ........ 23

APPENDIX: LIST OF MOVANTS / AMICI CURIAE IN THE DISTRICT COURT AS INTERESTED PARTIES-APPELLEES ........ 24

CERTIFICATE OF COMPLIANCE ........ 27

CERTIFICATE OF SERVICE ........ 28

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Adkins v. Christie*,
227 F. App'x 804 (11th Cir. 2007) ....................9

*Alabama v. U.S. Army Corp. of Eng'rs*,
424 F.3d 1117 (11th Cir. 2005) ....................9

*Anderson v. Davila*,
125 F.3d 148 (3d Cir. 1997) ....................7

*Barnes v. Dalton*,
158 F.3d 1212 (11th Cir. 1998) ....................21

*Bayless v. Martine*,
430 F.2d 873 (5th Cir. 1970) ....................6

*Bost v. Illinois State Bd. of Elections*,
607 U.S. 71 (2026)....................13

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
475 F.3d 524 (3d Cir. 2007) ....................9

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)....................17

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir. 2001) ....................16

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981)....................9

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................22

*Cook v. Am. S.S. Co.*,
134 F.3d 771 (6th Cir. 1998) ....................18

*Cordova v. Univ. Hosp. & Clinics, Inc.*,
92 F.4th 266 (5th Cir. 2024) ....................19

*Democratic Exec. Comm. of Fla. v. Lee*,
915 F.3d 1312 (11th Cir. 2019) ....................................................................6

*Devaney v. Cont'l Am. Ins. Co.*,
989 F.2d 1154 (11th Cir. 1993) ..................................................................15

*Donaldson v. Clark*,
819 F.2d 1551 (11th Cir. 1987) ..................................................................15

*Elrod v. Burns*,
427 U.S. 347 (1976)..........................................................................................7

*Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*,
57 F.3d 1215 (3d Cir. 1995) .........................................................................16

*Gallo v. U.S. Dist. Court for Dist. of Ariz.*,
349 F.3d 1169 (9th Cir. 2003) .......................................................................9

*Gentile v. State Bar of Nev.*,
501 U.S. 1030 (1991).....................................................................................20

*Griffin v. IRS*,
No. 22-cv-24023 (S.D. Fla. Nov. 27, 2023) ...................................................2

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
322 U.S. 238 (1944).......................................................................................22

*Hirschfeld v. Bd. of Elections in City of N.Y.*,
984 F.2d 35 (2d Cir. 1993) ..............................................................................6

*In re Asset Enhancement, Inc.*,
87 F.4th 1271 (11th Cir. 2023) ........................................................................8

*In re Gleason*,
492 F. App'x 86 (11th Cir. 2012) ..................................................................20

*Jaffe v. Sundowner Props., Inc.*,
808 F.2d 1425 (11th Cir. 1987) ......................................................................8

*Jensen v. Phillips Screw Co.*,
546 F.3d 59 (1st Cir. 2008)............................................................................18

*Johnson v. 27th Ave. Caraf, Inc.*,
9 F.4th 1300 (11th Cir. 2021) .................................................... 15, 16, 20

*Kaplan v. DaimlerChrysler, A.G.*,
331 F.3d 1251 (11th Cir. 2003) .....................................................................14

*Kem Mfg. Corp. v. Wilder*,
817 F.2d 1517 (11th Cir. 1987) .......................................................................3

*King v. Fleming*,
899 F.3d 1140 (10th Cir. 2018) .....................................................................19

*Kingsley Books, Inc. v. Brown*,
354 U.S. 436 (1957).........................................................................................19

*Kleiner v. First Nat'l Bank of Atlanta*,
751 F.2d 1193 (11th Cir. 1985) .....................................................................20

*Laird v. Tatum*,
408 U.S. 1 (1972)...............................................................................................7

*Mitchell v. Nobles*,
873 F.3d 869 (11th Cir. 2017) .......................................................................14

*Nken v. Holder*,
556 U.S. 418 (2009)................................................................................ 7, 10

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rels.*,
413 U.S. 376 (1973).........................................................................................19

*Procup v. Strickland*,
792 F.2d 1069 (11th Cir. 1986) .....................................................................20

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
851 F.3d 1218 (11th Cir. 2017) .....................................................................16

*Riccard v. Prudential Ins. Co. of Am.*,
307 F.3d 1277 (11th Cir. 2002) .....................................................................21

*Safe Harbor Int'l, LLC v. IRS*,
No. 25-cv-139 (D. Md. July 23, 2025) ...........................................................2

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) .......... 20

*Sentis Grp., Inc. v. Shell Oil Co.*,
559 F.3d 888 (8th Cir. 2009) .......... 18

*Thompson v. RelationServe Media, Inc.*,
610 F.3d 628 (11th Cir. 2010) .......... 10

*United States v. Gupta*,
572 F.3d 878 (11th Cir. 2009) .......... 21

*United States v. Nixon*,
418 U.S. 683 (1974) .......... 11

*United States v. Torkington*,
874 F.2d 1441 (11th Cir. 1989) .......... 21

*Wreal, LLC v. Amazon.com, Inc.*,
840 F.3d 1244 (11th Cir. 2016) .......... 6

*Zocaras v. Castro*,
465 F.3d 479 (11th Cir. 2006) .......... 22

**Statutes and Rules**

28 U.S.C. § 1291 .......... 8

28 U.S.C. § 1292(a)(1) .......... 8, 9

Fed. R. App. P. 8(a) .......... 6

Fed. R. App. P. 27(d)(2)(A) .......... 26

Fed. R. App. P. 32(a)(5) .......... 26

Fed. R. App. P. 32(a)(6) .......... 26

Fed. R. App. P. 32(f) .......... 26

Fed. R. Civ. P. 11 .......... passim

Fed. R. Civ. P. 11, Advisory Committee's Note to 1983 Amendment .......... 16

Fed. R. Civ. P. 37 ........ 15

Fed. R. Civ. P. 60 ........ 3

11th Cir. R. 32-4 ........ 26

**Constitutional Provisions**

U.S. Const. amend. I ........ passim

U.S. Const. art. II ........ 10

U.S. Const. art. III ........ 1, 10, 13, 20

## INTRODUCTION

This extraordinary case began with the President suing agencies he controls for $10 billion. The federal government then failed to mount any defense. After the District Court asked both "sides" and court-appointed *amici* to brief Article III jurisdiction, the parties instead entered a purported settlement creating a $1.776 billion fund whose decisionmakers were controlled by the President and whose proceeds would benefit his supporters, plus a remarkably broad release from liability for the President, his sons and family business. Under political pressure, the Department of Justice then purported to unilaterally withdraw the settlement.

Numerous indicia of collusion and bad faith led the District Court to correctly find that "this action was presented for an improper purpose—to gain the imprimatur of judicial legitimacy for a 'settlement' that had no viable basis in law or fact." Its sanctions under Federal Rule of Civil Procedure 11 and its inherent authority were proper both in process and substance. Appellants can neither succeed on the merits nor demonstrate irreparable harm. This Court should not issue a stay pending appeal.

## BACKGROUND

President Donald J. Trump, his sons, and the Trump Organization filed this unprecedented lawsuit against the Internal Revenue Service on January 29, 2026. Dkt.1.[1] They claimed $10 billion in damages because Charles Littlejohn, a

[1] "Dkt." references are to the District Court docket.

government contractor, leaked their tax return information. *Id.* at 26. Littlejohn pled guilty to the leaks—covering more than 400,000 taxpayers—in 2023. *See id.* at 7, 27.

Although the Government had previously opposed nearly identical claims, *see, e.g.*, *Safe Harbor Int'l, LLC v. IRS*, No. 25-cv-139, Dkt. 31, at 1 (D. Md. Jul. 23, 2025); *Griffin v. IRS*, No. 22-cv-24023, Dkt. 58, at 1-2 (S.D. Fla. Nov. 27, 2023), and despite the claims being time-barred, it never even appeared here. Dkt.106 at 22. Instead, Appellants, with the Government's consent, moved the District Court under its "inherent authority" to pause proceedings, saying the parties wished to engage in settlement discussions. Dkt.40 at 1, 2. The District Court *sua sponte* directed the parties and appointed *amici* to address subject matter jurisdiction. Dkt.41, 43. Appointed *amici* concluded, *inter alia*, that there was "reason to believe that the President is, in fact, exercising his control over the Defendants in this litigation." Dkt.45 at 11.

But the parties evaded responding. On May 18, two days before the deadline, Appellants filed a Rule 41(a) voluntary dismissal. Dkt.52. The District Court immediately entered an order dismissing the case. Dkt.62 at 2-3. On the same day, DOJ publicly announced a "settlement" of this lawsuit, agreeing to establish a $1.776 billion "Anti-Weaponization Fund" for recipients chosen by a commission

effectively controlled by the President. *See* Dkt.63 Ex.A. DOJ later announced that it had also agreed to release

> any and all claims ... whether presently known or unknown, that—as of the Effective Date of the Settlement Agreement—have been or could have been asserted by [the United States] against any of the Plaintiffs or related or affiliated individuals ... or parties ... by reason of, with respect to, in connection with, or which arise out of ... any matters currently pending or that could be pending ... before Defendants or other agencies or departments.

Dkt.63 Ex.B ¶C.

The following week, 35 Former Federal Judges filed a motion advancing concerns about "the parties' candor toward the Court and manipulation of the judicial system," and alerting the Court to its *sua sponte* powers to examine the circumstances of the settlement. Dkt.63 at 1. They moved to file as *amici* but also explained that in extraordinary circumstances, a non-party may move under Rule 60 "even when the non-party's interests are not directly affected by the judgment." *Id.* (quoting *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1521 (11th Cir. 1987)).

On May 29, the District Court ordered a response to these "grievous allegations," noting its sanctions powers under Rule 11. Dkt.65. While briefing was underway, DOJ unilaterally announced it would no longer proceed with the "Anti-Weaponization Fund," but neither revised the "settlement agreement" nor reversed the orders implementing it. Dkt.106 at 9, 35-36.

On July 13, the District Court ruled. Dkt.106 ("Order"). It concluded that "this action was presented for an improper purpose—to gain the imprimatur of judicial legitimacy for a 'settlement' that had no viable basis in law or fact." *Id.* at 38. The court found that there was never a case or controversy because President Trump controlled both sides of the litigation, and that the Government's conduct in this case was "wholly incompatible with" its duties to the public. *Id.* at 34-35. The Court concluded that the lawsuit "was brought to manipulate the judicial process to pursue benefits unavailable in litigation;" "expressly" found that "Plaintiffs acted in bad faith;" and concluded that the Government counsel's conduct was "equally untenable." *Id.* at 50-51.

The Court acted under its Rule 11 authority to refer Plaintiffs' counsel Alejandro Brito to the Florida Bar and ordered that all future applications for *pro hac vice* to the Southern District of Florida by Plaintiffs' counsel Daniel Z. Epstein be denied for one year or until further order of the Court. *Id.* at 30, 46-47. Further, the Court prohibited the parties from "referring to the purported 'settlement agreement,' or using, offering, admitting, or citing any of its provisions in any judicial, administrative, regulatory, arbitration, or any other official proceeding as evidence of a 'settlement' reached in this matter." *Id.* at 47.

Separately, under its inherent authority, the Court directed that the Order be mailed to the State Bar of New York and the District of Columbia Bar, where ethics

complaints were pending against then-Acting Attorney General Todd Blanche and Associate Attorney General Stanley Woodward, respectively. *Id.* at 53-54. Moreover, the Court found it would "assess[] monetary sanctions only against Plaintiffs and Plaintiffs' counsel," *id.* at 52, n.67, and permitted *amici* to "submit a memorandum regarding any appropriate reimbursement" and provided for any Plaintiffs to respond. *Id*. at 53. The Former Judges requested a nominal reimbursement of $1 to each of their four firms as pro bono counsel and *pro hac vice* expenses; other *amici* submitted for attorneys' fees. Dkt.111-12. Appellants opposed. Dkt.116.

In the meantime, on August 2, then-Acting Attorney General Blanche finally announced rescission of his May 18 Order establishing the Anti-Weaponization Fund.[2] Again, no revised settlement agreement was issued.

On July 31—18 days after the Order—Appellants filed a notice of appeal, Dkt.113, and an expedited motion for a stay before the District Court, Dkt.114. The Court requested a response from appointed *amici*, whose brief rejected Appellants' arguments and indicated that the Court could, but is not obligated to, make additional clarifying rulings. *Id.* at 21, 30-31, 39. Appellants leapfrogged the District Court to file the instant motion. CA11.ECF.8 ("Mot.").

---

[2] DOJ (Aug. 2, 2026), https://www.justice.gov/ag/media/1455261/dl?inline.

## LEGAL STANDARD

Stay applications require consideration of whether the movant "(1) … made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). "The first two factors are the most critical," and the movant "must show more than the mere possibility of success on the merits or of irreparable injury." *Id*.

## ARGUMENT

### I. Appellants Failed To Comply With Fed. R. App. P. 8(a).

This motion fails outright because Appellants failed to comply with Federal Rule of Appellate Procedure 8. *See, e.g.*, *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 38 (2d Cir. 1993). The District Court's decision on Appellants' motion to stay is pending, and nothing suggests that relief is "impracticable." Fed. R. App. P. 8(a)(2)(A); *see Bayless v. Martine*, 430 F.2d 873, 879 n.4 (5th Cir. 1970) (rejecting assumption that district court "would refuse injunctive relief pending an appeal").

### II. Appellants Show No Irreparable Harm.

Appellants' irreparable harm arguments are glaringly weak. Appellants must show "imminent" irreparable harm in the absence of a stay, *Wreal, LLC v.*

*Amazon.com, Inc*., 840 F.3d 1244, 1249 (11th Cir. 2016), not just a "possibility of irreparable injury," *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citations omitted). They cannot.

First, merely *raising* a First Amendment claim is insufficient. Appellants posit that the Order "suppresses protected speech and petitioning *now*," Mot.20, but fail to identify any impacted activity. By contrast, cases finding that the loss of First Amendment freedoms constitutes irreparable injury involve evidence that movants would actually suffer loss of their speech rights in the interim. *See, e.g.*, *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) (noting that in *Elrod v. Burns,* 427 U.S. 347, 374 (1976), "First Amendment injuries were 'both threatened and occurring at the time of respondents' motion'"). Here, Appellants identify no present or "specific future harm," *Laird v. Tatum,* 408 U.S. 1, 14 (1972), and no imminent legal proceedings during this appeal where they intend to use the purported settlement "as evidence of a 'settlement' reached in this matter," Dkt.106 at 47.

As to Alejandro Brito, the District Court Clerk has already sent the Order to the Florida Bar, Dkt.107, and Appellants marshal no evidence that a stay would prevent that body from acting. Their bare assertion that a "stay would suspend the force of [the District Court's] findings," Mot.20, has no support: the findings and supporting rationale are already before the Florida Bar. As to Daniel Epstein, Appellants identify no evidence that he plans to imminently apply for *pro hac vice*

admission; moreover, the bar can be lifted by "further order of" the District Court, Dkt.106 at 47, undermining irreparable harm.

Finally, Appellants identify no irreparable harm from the fee proceedings but still demand that "the stay should extend" to them anyway. Mot.23. Thus, Appellants cannot obtain a stay on any aspect of the Order.

## III. Appellants Fail To Demonstrate A Likelihood Of Success On The Merits.

Appellants lack a strong likelihood of success on the merits because (1) this Court lacks jurisdiction, (2) there is no basis to overturn the District Court's finding that the litigation was collusive and pursued in bad faith, (3) their due-process objections fail, and (4) their First Amendment objections fail, too.

### A. Appellate Jurisdiction Is Lacking.

This appeal likely fails at the threshold because the Order is not appealable under 28 U.S.C. §1291 or §1292(a)(1).

First, the Order is not a §1291 final judgment. Appellants agree that ongoing fee proceedings are "inextricably intertwined" with the Order, Mot.23, and that is precisely why this appeal is premature. *See In re Asset Enhancement, Inc.*, 87 F.4th 1271, 1280 (11th Cir. 2023); *Jaffe v. Sundowner Properties, Inc.*, 808 F.2d 1425, 1427 (11th Cir. 1987).

Second, portions of the Order directing the Clerk to send copies of the Order to state bars are not appealable at all. As this Court has recognized, "[a] referral

cannot be characterized as a sanction or a disciplinary measure"; it is merely a view that "conduct of the attorneys merits further examination by the disciplinary committee, which may or may not result in a sanction." *Adkins v. Christie*, 227 Fed. App'x 804, 806 (11th Cir. 2007); *but see Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 544 (3d Cir. 2007). And the ruling regarding Epstein's *pro hac vice* admissions is also unappealable, *see Gallo v. U.S. Dist. Court for Dist. of Arizona*, 349 F.3d 1169, 1176 (9th Cir. 2003), and in any event is non-final because it can be altered by "further order," Dkt.106 at 47.

Finally, the Order's limitation on the parties' use of the purported "settlement" is not an appealable interlocutory order under §1292(a)(1). It is not an injunction because it has no "direct or irreparable impact on the merits of the controversy." *Alabama v. U.S. Army Corp. of Eng'rs*, 424 F.3d 1117, 1128-29 (11th Cir. 2005). Nor does it have the "effect" of an injunction, a basis for appeal that courts construe "narrowly" to apply only "where an appeal will further the statutory purpose of permitting litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (cleaned up). As discussed above, Appellants identify no looming consequence of the Order's limitation on the parties using their agreements as evidence of an actual settlement in this matter that would merit a piecemeal appeal.

### B. The District Court Correctly Found The Lawsuit Was Collusive And Pursued In Bad Faith.

The District Court marshaled evidence that manifestly supported its findings of collusion and bad faith, and those findings are entitled to deference, *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 638 n.15 (11th Cir. 2010). Even on *de novo* review, Appellants could not come close to showing a strong likelihood of success in their effort to overturn those findings. *Nken*, 556 U.S. at 427.

Appellants attack a straw man, reducing the District Court's analysis to a single "predicate legal error" that "presidential supervision under Article II supposedly eliminated Article III adversity." Mot. 7–8. Not so. The District Court did not hold that any President is categorically barred from suing the Government. It appropriately treated the inquiry as fact-specific, "look[ing] beyond names and titles," consistent with controlling caselaw. Dkt.106 at 16 (citing cases). It concluded that *this* lawsuit was non-adversarial because the evidence demonstrated that *this* President exercised *actual* control over the Government's "defense" against *this* lawsuit. The Government here did not even begin to litigate the case in an adversarial manner. Dkt.106 at 27–29. The totality of the circumstances showed the parties' interests were "one and the same" and the lawsuit was pursued in bad faith. Dkt.106 at 27–28, 38. Appellants' (and the Government's) simplistic argument that there was adversity because the President "sued in his personal capacity" to "vindicate his personal rights," Mot.10-11; *see also* Resp., CA11.ECF.10. at 13-14, fails to "look[]

beyond names and titles" and ignores the many other facts the District Court cited in finding collusion and bad faith. Dkt.106 at 16-38; *see also* Dkt.127 at 5-13.

*United States v. Nixon*, 418 U.S. 683 (1974), actually supports the District Court's finding. There, the Government appointed a Special Prosecutor formally *insulated* from presidential control by regulation. *Id.* at 694–97. The Court found adversity *because* of that structural independence. *Id*. at 697. Here, it is undisputed that there is zero structural independence. The "settlement" occurred without the Government even appearing. Moreover, President Trump issued an Executive Order expressly requiring subordination of all agencies to his will. Dkt.106 at 21-22. Here, defendant agencies and DOJ fully complied by advancing *no defense*, then agreed to an unprecedented multibillion taxpayer-funded settlement completely disconnected from both the nature and magnitude of potential liability, plus an unprecedented sweeping release of tax and other claims entirely unconnected to the suit. *Id.* at 32-35. And within a week, President Trump rewarded now-Attorney General Blanche with a major promotion. *Id.* at 9.

Appellants have never tried to dispute these core facts. They have never tried to show that the Government's risk of potential liability in this lawsuit bore any relationship to the enormous benefits showered on the Trumps by this "settlement." Nor have the parties tried to justify the Government's decision to "agree" to such an unprecedented "settlement" without even appearing in the case, let alone pursuing

various complete defenses to liability that were indisputably available to it. The parties wave all this away as "ordinary litigation facts," Mot.14; Resp.5-7, not even trying to explain how such extraordinarily unusual behavior could be consistent with actual adverseness.

Even if reasonable minds could differ on the strength of the various defenses available to the Government (and those defenses were very strong), nobody could reasonably argue—and Appellants don't even try—that a truly adverse defendant facing this particular lawsuit (much less the Government) would immediately abandon *all* those defenses, instead giving up $1.776 billion in taxpayer funds and an unprecedentedly broad release far beyond the scope of the claims.[3] President Trump's express control provides the only rational explanation. And it is that control of both sides of the "v" by the same party that makes this a non-adversarial, collusive case pursued in bad faith, just as the District Court found.

Other unrebutted facts further support the District Court's findings, including (1) the clear conflicts of interest of those involved on both sides; (2) President Trump's decision to wait to file the lawsuit until after he had "once again occupied the White House" and could appoint his former personal lawyers to high positions

[3] Notably, Appellants do not reprise their preposterous assertion to the District Court that the Government could have chosen to settle this lawsuit on these terms on "the entirely rational conclusion that the cost of defense exceeds the cost of settlement." Dkt.89 at 20.

at DOJ; (3) Mr. Blanche's unilateral, after-the-fact repudiation of the "Anti-Weaponization Fund" before Congress, which "demonstrates that there was only one party whose interests were being represented throughout this case;"[4] and (4) President Trump's own admissions that "I'm suing myself" and "I'm supposed to work out a settlement with myself." Dkt.106 at 30, 35-37, 43 & n.61; *see* Dkt.41 at 3 n.3.

Finally, Plaintiffs argue that the inclusion of the President's sons and family business as co-plaintiffs created true adversity even if the President himself controlled the defense. Mot.8, 13. The Government goes even further, citing *Bost v. Illinois State Bd. of Elections*, 607 U.S. 71, 76 n.3 (2026), for the proposition that "it is blackletter law that Article III requires 'only one plaintiff' with adversity." Resp.12. But *Bost* actually says "only one plaintiff needs *standing* for a suit to proceed," *Bost*, 607 U.S. at 76 n.3; the case had nothing to do with potential lack of adverseness or collusion between parties. The parties cite no case, and we are aware of none, where a federal lawsuit controlled on both sides by the same party was allowed to proceed merely because a co-plaintiff did not have the same power. It

[4] The Government suggests that Mr. Blanche's unilateral repudiation of the Fund proves that President Trump did *not* control the defense. Resp.10-11. They miss the point: had this been a real settlement of a real case, *neither* side could have unilaterally repudiated a major provision of the settlement. The episode shows only that President Trump was willing to have Mr. Blanche "repudiate" that part of the settlement to serve his immediate political needs.

would be especially illogical here, where the other plaintiffs are all allied with and literally related to the plaintiff controlling the defense. *See also* Dkt. 127 at 9 (appointed *amici* noting the District Court "concluded that the additional plaintiffs were not sufficiently independent based, again, on the specific facts of the case").

### C. Appellants' Procedural Objections Fail.

The District Court afforded Appellants ample due process, expressly stating in its May 29 Order that it was contemplating sanctions given allegations of "serious misconduct … within the purview of Rule 11," citing authority about sanctions on both parties and attorneys, and ordering a response to the allegations. Dkt.65. Appellants filed a response and did not request an evidentiary hearing. Dkt.89. The District Court's July 13 ruling was based on the same issues in the May 29 Order. Dkt.106.

Rule 11 requires "notice and an opportunity to respond." *Mitchell v. Nobles*, 873 F.3d 869, 875 (11th Cir. 2017); *see also* Fed. R. Civ. P. 11(c)(3) (requiring process to "show cause why conduct specifically described in the order has not violated Rule 11(b)" prior to imposing *sua sponte* sanctions). "[F]ormal compliance" is not required; instead, this Court applies "a flexible standard" of "substantial compliance." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1257 (11th Cir. 2003). The May 29 Order amply met that standard, "provid[ing] notice regarding the

possibility of *future* sanctions and the reasons underlying that possibility." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1311 (11th Cir. 2021).

Appellants' cavil that Plaintiffs' *counsel* received inadequate notice, Mot.17, is meritless. Rule 11 plainly reaches both lawyers and parties, Fed. R. Civ. P. 11(b)-(c), and as this Court noted, "[t]he existence of Rule 11 itself constitutes a form of notice" to lawyers, *Donaldson v. Clark*, 819 F.2d 1551, 1560 (11th Cir. 1987); *see also Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1160 (11th Cir. 1993) (noting a Rule 37 motion that "names only a party, places both that party and its attorney on notice"). Moreover, the May 29 Order warned of attorney liability at least three times. Dkt.65 at 1-2. Finally, Appellants' response to the May 29 Order demonstrates *actual* notice, arguing there was "not a genuine concern about attorney misconduct." Dkt.89 at 6.

Appellants' assertion that the District Court did not identify "counsel's professional relationships, the damages demand, the Compensation Clause, or future use of the Settlement Agreement," Mot.17, is wrong. The May 29 Order highlighted the Settlement Agreement. Dkt.65 at 3. It required Appellants to address allegations of "collusion," "deception," lack of adversity, and "fraud" on the court—which encompasses defense counsel's relationship with the Plaintiffs, the outrageous damages demand, and the Compensation Clause. *Id.* And Appellants' objection that they should have received notice of the specific *form* of sanction, Mot.17, is

unfounded. They cite no authority requiring a court to pre-announce the specific sanctions it is contemplating. *See, e.g.*, *Johnson*, 9 F.4th at 1312-17 (affirming sanctions where the notice did not state which sanctions the court was considering). After all, Rule 11(c)(4) posits the range of consequences, including "nonmonetary directives." Fed. R. Civ. P. 11(c)(4); Advisory Committee's Note to 1983 amendment (listing "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities"). And because the May 29 Order put Appellants on notice of "fraud" and "collusion"—which cannot exist without intention and bad faith—there is little basis to argue that due process was lacking merely because the court did not expressly invoke its inherent authority powers. *See Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1220 (3d Cir. 1995) (rejecting a "label"-based approach to sanctions notice).

Moreover, contrary to Appellants' evidentiary objections, Mot.17-18, the District Court's conclusion that Appellants acted in bad faith was well-supported:

First, the "subjective bad-faith standard" for inherent-powers sanctions may not apply to Rule 11 at all. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223, n.4 (11th Cir. 2017). Second, a finding of bad faith does not require a "smoking gun;" a court may "draw[] inferences from the conduct before it." *Byrne*

*v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). The District Court did precisely that, tracking Mr. Epstein's representations about a forthcoming *pro hac vice* motion that was never filed and finding it aberrant in light of his prior timely filings. Dkt.106 at 30-31. The court concluded that the "only" plausible inference is that "Mr. Epstein was aware that he would never need to… litigate the merits" of this suit. *Id.* at 31. Appellants make much ado about the court's phrasing that it could "only surmise" Mr. Epstein's motives, Mot.17, but that semantic quibble hardly diminishes the court's inference from the actual evidence. Appellants also marshal no support for the notion that individualized findings are required for each entity sanctioned. Mot.18. That argument is also puzzling here given that Appellants advance no distinction between Mr. Brito and Mr. Epstein's roles: their names appear on both the complaint and the settlement. Dkt.106 at 30.

Finally, Appellants' objection to citations of public reports grasps at straws. Mot.17. For one, the District Court did not need to rely on these sources for its findings, expressly stating it "need only look to the uncontroverted facts" for "the inexorable conclusion" that there was never adversity between the parties. Dkt.106 at 54-55. This was plain from "[t]he nature of the suit itself and the conduct of the Parties and counsel from its filing." *Id.* at 55. For another, Appellants' arguments about the Federal Rules of Evidence fail because the rules do not "necessarily apply

to factfinding in the context of sanctions." *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 66 n.5 (1st Cir. 2008); *see also Cook v. Am. S.S. Co.*, 134 F.3d 771, 775 (6th Cir. 1998); *Sentis Grp. v. Shell Oil Co.*, 559 F.3d 888, 901 (8th Cir. 2009). Nor do Appellants question the reliability of the sources. And in any event, the citations are admissible because they are not presented for the truth of the matter asserted, are party admissions, or are government records upon which the court can take judicial notice.

**D. The Order Did Not Violate The First Amendment.**

Appellants' First Amendment objection to the Order depends on a wild overstatement of its scope and effect. The Order does *not* forbid "Plaintiffs, federal officials, and broad categories of associated persons from 'referring to' the Settlement Agreement" generally. Mot.18. To the contrary, its restrictions are limited to both forum ("in any judicial, administrative, regulatory, arbitration, or any other official proceeding") and specific use in that forum ("as evidence of a 'settlement' reached in this matter"). Dkt.106 at 47.[5] Properly understood, the ruling does not impact the parties *outside* official proceedings. *Id.* It is narrowly tailored to address the specific litigation misconduct the District Court identified.

---

[5] The text is unambiguous. But even if it weren't, Appellants' reading is also inconsistent with the District Court's concern about the parties' effort to clothe their deals with the false imprimatur of their collusive suit.

Nor is the Sanctions Order "a content-based prior restraint." Mot.19. *See Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 441 (1957) ("The phrase 'prior restraint' is not a self-wielding sword. Nor can it serve as a talismanic test."). The District Court imposed the sanction only *after* concluding that the lawsuit and purported settlement were collusive, and that the parties sought to use judicial proceedings with the improper purpose of giving "the imprimatur of judicial legitimacy" to their collusive settlement. Dkt.106 at 38. The Order is not "prior" because it follows that judicial determination, *see Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 390 (1973), and it is narrowly tailored to remove the imprimatur Appellants' litigation abuses sought to secure. Speech that seeks to mislead official tribunals and that is offered with an improper purpose is not protected by the First Amendment, as illustrated by Rule 11 itself. Fed. R. Civ. P. 11(b)(1)–(3). Courts have repeatedly rejected the idea that the First Amendment supplies a defense to Rule 11 violations. *See, e.g.*, *Cordova v. Univ. Hosp. & Clinics, Inc.*, 92 F.4th 266, 274 (5th Cir. 2024) ("[T]here is no First Amendment exception to a Rule 11 violation." (internal citations omitted)); *King v. Fleming*, 899 F.3d 1140, 1151 n.17 (10th Cir. 2018) ("[T]he First Amendment is in no way a defense to Rule 11 violations."). This Court has made clear that courts can exercise their inherent authority to uphold the integrity of the justice system through prefiling injunctions—

entirely barring a litigant from filing future suits absent prior permission—without offending the First Amendment. *See Johnson,* 9 F.4th at 1317-18.

Rule 11 and courts' inherent-power authority illustrate the compelling interest in preventing bad faith litigation "to protect the integrity of judicial proceedings." Dkt.106 at 48 (citing *Kleiner v. First Nat'l Bank of Atl.*, 751 F.2d 1193, 1209 (11th Cir. 1985)). "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986). Courts are defending an interest of the highest order when they prohibit or punish false or misleading claims. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985) ("In the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties."); *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991) ("It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed."); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984) (holding litigants' free-speech "rights may be subordinated to other interests" in court setting); *In re Gleason*, 492 F. App'x 86, 87 (11th Cir. 2012) (rejecting the proposition that "First Amendment rights supersede the rules that regulate attorney conduct"). Thus, the order is in furtherance of a compelling interest.

Finally, the Order is narrowly tailored to achieve that objective because it precisely addresses the abuse the District Court found had occurred: namely the effort to give the agreements the false "imprimatur" of a valid legal process. Dkt.106 at 38. It thus forbids no more than necessary to prevent Appellants from misleading other tribunals and capitalizing on the improper use of judicial process that occurred in this case. That satisfies whatever First Amendment scrutiny may apply. *See Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1298 (11th Cir. 2002) (upholding as appropriately tailored a sanction prohibiting future claims against defendant without leave); *Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir. 1998) ("Where, as here, the district court fashions a sanction which is a direct response to the harm that the bad faith conduct of the attorney causes, it is clearly acting within its discretion.").[6]

## IV. The Public Interest Disfavors A Stay.

The public has a fundamental interest in the District Court's ability to vindicate its own interest in the "preservation of the integrity of the judicial process."

---

[6] The Government is in no position to demand judge reassignment after non-appearance below. Nor is it proper to raise it in a response brief to a stay-pending-appeal motion. Moreover, the argument lacks substantive support. For example, the District Court began its inquiry on May 29, *before* Blanche's nomination as Attorney General on June 3. Dkt.65. Prior reassignment cases demanded far more for this "extraordinary relief," such as where a district court repeatedly failed to follow this Court's directives, *United States v. Gupta*, 572 F.3d 878, 891-2 (11th Cir. 2009), or after reversal, disparaged the law and proceeding itself, *United States v. Torkington*, 874 F.2d 1441, 1447 (11th Cir. 1989).

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). The District Court's decision is a powerful vindication of that interest. Defending the legal system against collusive litigation and self-dealing involving the most powerful tools of the federal government is of paramount importance, and the Order does this without infringing on any legitimate interest of Appellants. Appellants belabor the merits in arguing the public's interest, but a stay of the District Court's ruling prior to full briefing and merits adjudication would undermine the public's confidence in the justice system's ability to stop "parties from trampling upon the integrity of the Court." *Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006) (internal citations omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-6 (1991).

## CONCLUSION

This Court should deny the Motion.

August 24, 2026

Respectfully submitted,

/s/ Angela Cai

Neal S. Manne
Justin A. Nelson
Stephen Shackelford, Jr.*
Davida P. Brook*
Daniel J. Shih
Glenn C. Bridgman*
**SUSMAN GODFREY L.L.P.**^
1000 Louisiana St, Suite 5100
Houston, TX 77002
(713) 653-9366
jnelson@susmangodfrey.com

Matthew J. Platkin
Angela Cai
**PLATKIN LLP**
1 Gateway Ctr. #1150
Newark, NJ 07102
(973) 561-1952
acai@platkinllp.com

Andrés Rivero
**RIVERO MESTRE LLP**
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
(305) 445-2500
arivero@riveromestre.com

Norman L. Eisen
David W. Ogden*
Stephen A. Jonas*
Carolina L. Porcile*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, D.C. 20003
(202) 594-9958
norman@democracydefenders.org

* *Pro hac vice admission or regular admission forthcoming*

^ *Primary office listed. Counsel for Former Judges Nancy Gertner and Michael Luttig only*

*Counsel for Interested Parties-Appellees*

## APPENDIX: LIST OF MOVANTS / AMICI CURIAE IN THE DISTRICT COURT AS INTERESTED PARTIES-APPELLEES

Judge Michael Luttig, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (Ret.)

Judge Nancy Gertner, U.S. District Judge, District of Massachusetts (Ret.)

Chief Judge John W. Bissell, U.S. District Judge, District of New Jersey (Ret.)

Judge Geraldine Soat Brown, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Chief Judge Rubén Castillo, U.S. District Judge, Northern District of Illinois (Ret.)

Chief Judge U.W. Clemon, U.S. District Judge, Northern District of Alabama (Ret.)

Judge Susan E. Cox, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge Morton Denlow, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge David K. Duncan, U.S. Magistrate Judge, District of Arizona (Ret.)

Chief Judge Sheila Finnegan, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge Jeremy Fogel, U.S. District Judge, Northern District of California (Ret.)

Judge James C. Francis IV, U.S. Magistrate Judge, Southern District of New York (Ret.)

Judge Steven M. Gold, U.S. Magistrate Judge, Eastern District of New York (Ret.)

Judge A. Benjamin Goldgar, U.S. Bankruptcy Judge, Northern District of Illinois (Ret.)

Judge Paul W. Grimm, U.S. District Judge, District of Maryland (Ret.)

Chief Judge Robert Harlan Henry, U.S. Circuit Judge, U.S. Court of Appeals for the Tenth
Circuit (Ret.)

Judge Thelton Henderson, U.S. District Judge, Northern District of California (Ret.)

Judge Richard J. Holwell, U.S. District Judge, Southern District of New York (Ret.)

Judge Ellen Segal Huvelle, U.S. District Judge, District of Columbia (Ret.)

Judge John E. Jones III, U.S. District Judge, Middle District of Pennsylvania (Ret.)

Judge Barbara M. G. Lynn, U.S. District Judge, Northern District of Texas (Ret.)

Judge Roanne L. Mann, U.S. Magistrate Judge, Eastern District of New York (Ret.)
Judge A. Howard Matz, U.S. District Judge, Central District of California (Ret.)

Chief Judge Paul Michel, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)

Judge Kathleen O'Malley, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit
(Ret.)

Judge Brian Owsley, U.S. Magistrate Judge, Southern District of Texas (Ret.)

Judge Philip M. Pro, U.S. District Judge, District of Nevada (Ret.)

Judge Victoria A. Roberts, U.S. District Judge, Eastern District of Michigan (Ret.)

Judge Shira A. Scheindlin, U.S. District Judge, Southern District of New York (Ret.)

Judge Fern M. Smith, U.S. District Judge, Northern District of California (Ret.)

Judge John D. Tinder, U.S. Circuit Judge, U.S. Court of Appeals for the Seventh Circuit (Ret.)

Judge Ursula Ungaro, U.S. District Judge, Southern District of Florida (Ret.)

Judge T. John Ward, U.S. District Judge, Eastern District of Texas (Ret.)

Judge Mark L. Wolf, U.S. District Judge, District of Massachusetts (Ret.)

Judge Lee Yeakel, U.S. District Judge, Western District of Texas (Ret.)

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 5,199 words. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), and with 11th Cir. R. 32-4, because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: August 24, 2026 /s/ Angela Cai

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. All counsel of record are registered CM/ECF users and will be served by that system.

Dated: August 24, 2026 /s/ Angela Cai