In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 26-12692

---

PRESIDENT DONALD J. TRUMP,
DONALD J. TRUMP, JR.,
ERIC TRUMP,
THE TRUMP ORGANIZATION, LLC.,

*Plaintiffs-Appellants,*

ALEJANDRO BRITO,
DANIEL EPSTEIN,

*Interested Parties-Appellants,*

*versus*

INTERNAL REVENUE SERVICE,

*Defendant-Appellee,*

U.S. DEPARTMENT OF THE TREASURY,

*Defendant,*

THIRTY-FIVE FORMER FEDERAL JUDGES,

*Interested Parties-Appellees.*

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:26-cv-20609-KMW

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

BY THE COURT:

The appellants, some of whom were the plaintiffs below, move for an order staying aspects of the district court's post-judgment sanctions order pending appeal. After review of the record and the parties' briefing, we deny the motion.[1]

## I

On January 29, 2026, President Donald J. Trump (in his personal capacity), Donald J. Trump, Jr., Eric Trump, and the Trump Organization, LLC, filed a complaint against the Internal Revenue Service and the United States Department of the Treasury, alleging that a former IRS employee illegally gained access to and disclosed their tax returns. The plaintiffs brought claims for violations of 26 U.S.C. § 6103 and 26 U.S.C. § 7431(a)(1) and of 5 U.S.C. § 552a(e)(10), and sought, among other relief, damages of "at least $10,000,000,000.00." D.E. 1 at 26.

Shortly thereafter, two sets of non-parties filed motions for leave to file briefs as *amicus curiae*, in which they raised concerns

[1] The motions by Oversight Project and America First Legal Foundation to file *amicus curiae* briefs on the stay motion are denied. The motion of John Koskinent et al. to intervene is carried with the case.

about collusion, justiciability under Article III's case or controversy requirement, separation of powers, ethics, and the Domestic Emoluments Clause, U.S. Const. art. II, § 1, cl. 7. When the plaintiffs failed to file anything in response, the district court granted both motions.

The plaintiffs then filed a motion for a 90-day extension as to all proceedings. In response, the district court stayed the defendants' obligation to respond to the complaint and set a briefing schedule "to address the question of the Court's subject matter jurisdiction." D.E. 41 at 1. The court appointed three law firms as *amici curiae* to assist it in assessing subject-matter jurisdiction. Four days after the court-appointed *amici* submitted their brief, the plaintiffs—through attorneys Alejandro Brito and Daniel Epstein—filed a notice of voluntary dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). In light of the self-executing nature of that dismissal, the court closed the case on the same day.

**A**

Subsequently, 35 former federal judges (the "former judges") filed a motion for relief from judgment and asked the district court to set aside the notice and order of dismissal and reopen the case. In their motion, the former judges informed the court of a settlement between the parties that had been announced by the Department of Justice. Under the terms of the settlement, the plaintiffs secured a $1.776 billion settlement fund from the Treasury, to be paid to non-parties to the litigation, and a release by the government of "any and all claims" it may or could have against

the plaintiffs, as well as President Trump's family and businesses, through May 18, 2026, the date of the alleged settlement. The former judges asserted that the settlement was "a product of collusion and [wa]s itself a fraud on the [c]ourt."

In its order directing the plaintiffs to respond, the district court notified the plaintiffs of its authority to investigate misconduct as a collateral issue under Rule 11 and noted that it might impose sanctions for filing a lawsuit for an improper purpose, e.g., "for the sole purpose of forcing a settlement." In response, the plaintiffs contested the court's power to issue monetary sanctions and argued that there was no Rule 11 violation or fraud on the court because the litigation was not collusive. They did not, however, submit any affidavits, declarations, or other evidence seeking to rebut the adversity, collusion, and improper purpose concerns. Nor did they request an evidentiary hearing.

**B**

On July 13, 2026, the district court entered an order finding that the parties in the lawsuit were not adverse and imposing nonmonetary sanctions on the parties and two of the plaintiffs' attorneys, Mr. Brito and Mr. Epstein. *See* D.E. 106 at 17, 46–47.

First, the district court concluded that President Trump controlled the defendants as a matter of constitutional structure. President Trump's position as the chief of the Executive Branch, the court said, vested him with all federal executive power, including the ability to remove some subordinate officers—whose own exercise of authority is an exercise of the President's power—at will.

For example, the court noted, executive officers in the Treasury and the IRS wield their authority subject to his supervision and control and are removable by him.

Second, the district court determined that—as the Secretary of the Treasury Department—Scott Bessent is subject to President Trump's direct supervisory control as an appointed member of his cabinet. And, in his role as Secretary, the court said, Mr. Bessent is President Trump's "alter ego." The court also observed that the Commissioner of the IRS is, by statute, appointed and removable by the President.

Third, the district court explained that, by executive order, President Trump had asserted his supervision and control of the entire Executive Branch, including specifically control over its litigation activities. That executive order provides that his opinions on questions of law are "controlling on all employees in the conduct of their duties." *Id.* at 22 (citing Ensuring Accountability for All Agencies, E.O. 14215 (Feb. 18, 2025)). The executive order states that President Trump "provide[s] authoritative interpretations of law for the executive branch." E.O. 14215 at § 7. As a result, the court found it "[un]surprising[ ]" that, unlike in other similar cases, no attorney for the defendants ever appeared or challenged the action. *See* D.E. 106 at 23.

"Considering the brief chronology, the silent docket, and [the] [d]efendants' deviation from basic litigation strategies pursued in similar cases," the court concluded that the "[d]efendants chose not to 'advance an interpretation of the law as the position

of the United States that contravenes' President Trump's opinion regarding this lawsuit[.]" *Id.* at 25–26. This was due, the court said, to President Trump's control over the defendants' conduct. *See id.*

Fourth, the district court found that the resolution of the lawsuit further indicated that the parties' interests were "one and the same," demonstrating lack of adversity and improper motive: "[T]he extraordinary award fashioned by the [p]arties for claims that were never litigated, and have yet to be defined, on behalf of unidentified third parties whose future remedies bear no relationship to the claims in this case, indicates that real adverse interests were never before the [c]ourt." *Id.* at 27–29.

After providing further reasons, the district court concluded that the fact that the parties were not adverse and the lawsuit collusive and jurisdictionally improper was "so obvious and so insurmountable" that it led the court to conclude that the plaintiffs filed the lawsuit for the improper purpose of justifying and legitimating "a 'settlement' that had no viable basis in law or fact." *Id.* at 38.

Turning to the matter of sanctions, the district court considered whether the plaintiffs' complaint was filed "in bad faith for an improper purpose." *Id.* at 40 (quoting *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001)). Applying Rule 11's fact-bound, objective "reasonableness under the circumstances" standard, the court found that the circumstantial evidence—the parties' abnormal litigation conduct and the circumstances surrounding the litigation and settlement—demonstrated that the plaintiffs "acted in bad faith and for an improper purpose by 'collusively filing a lawsuit with

claims subject to multiple dispositive defenses solely to provide cover for a collusive settlement.'" *Id.* at 43 (quoting D.E. 94 at 12).

As a result, the district court imposed non-monetary sanctions under Rule 11: (1) the court referred Mr. Brito to the Florida Bar for consideration of whether disciplinary action was appropriate; the court ordered any *pro hac vice* application by Mr. Epstein in the Southern District of Florida be denied for a year or until further order of the court; and (3) the court prohibited the parties—and any "agents, representatives, officers, . . . or any other person acting in concert with . . . or under the . . control" of them—from "referring to the purported 'settlement agreement,' or using, offering, admitting, or citing any of its provisions in any judicial, administrative, regulatory, arbitration, or any other official proceeding as evidence of a 'settlement' reached in this matter." *Id.* at 47.

The district court also determined that the parties' conduct satisfied the subjective bad-faith showing necessary to trigger inherent authority sanctions. It found that the plaintiffs knew or should have known that their claims were time-barred and sought damages in an amount unsupported by facts or law, that the defendants abdicated their responsibility to defend the interests of the United States, and that the parties used the litigation to confer legitimacy on a settlement entered in a dubious ethical context—all of which supported a finding of bad faith. It declined, however, to order monetary sanctions, instead giving the parties time to file memoranda regarding attorneys' fees.

The attorneys' fee proceedings are still ongoing. And the district court has not yet ruled on the former judges' request to reopen the case and set aside the dismissal.

**C**

After the district court issued its sanctions order, the plaintiffs moved to stay it. While that motion was pending, the plaintiffs appealed the sanctions order. Then, in this Court, they filed an emergency motion to stay the district court's order.

The district court subsequently denied the motion for a stay of the non-monetary sanctions. *See* D.E. 130. In doing so, it explained that the prohibition on referring to the settlement agreement only "prevents the [p]arties from referring to the 'settlement agreement' as evidence of a 'settlement' reached" in this case. *See id.* at 14 (emphasis omitted).[2]

The parties (whom we refer to as the "appellants") have appealed the district court's order imposing non-monetary sanctions. They have also moved for a stay of those sanctions.

**II**

"A stay is not a matter of right" but "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quotation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

---

[2] We discuss this explanation in more detail later.

In evaluating a request for a stay pending appeal, we consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are the "most critical." *Id.* at 434. But if the movant fails to make a strong showing of success on the merits, we need not consider the other stay factors. *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Because we conclude that the plaintiffs failed to establish a substantial likelihood of success on the merits, we will not address the three other prerequisites of preliminary injunctive relief.").

For the reasons which follow, we deny the appellants' motion for a stay.[3]

**III**

To satisfy the first factor, the appellants must "ma[k]e a strong showing that [they are] likely to succeed" in demonstrating that the district court abused its discretion. *See Nken*, 556 U.S. at 434 (quotation omitted). *See also Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941 (11th Cir. 2022) ("We review a district court's imposition of Rule 11 sanctions for abuse of discretion.") (citation omitted). The abuse of discretion standard is "limited and deferential."

[3] As a stay panel, our decision on this motion does not of course bind the merits panel, and we carry all jurisdictional issues with the case.

*BLOM Bank SAL v. Honickman*, 605 U.S. 204, 216 (2025) (internal quotation marks and citation omitted). A district court commits an abuse of discretion when it "applie[s] the wrong legal standard or base[s] its ruling on a clearly erroneous assessment of the evidence." *Gulisano*, 34 F.4th 935 at 941 (citation omitted).

**A**

We first consider whether the appellants have made a strong showing that they are likely to establish that we have appellate jurisdiction to review the district court's sanctions order. "[I]n evaluating the likelihood-of-success question for the purpose of ruling on a request for interim relief, courts may consider both the likelihood that they have jurisdiction and the likelihood that the claim will succeed on the merits." *Mullin v. Doe*, 146 S. Ct. 2121, 2137 (2026) (plurality opinion). This initial focus makes sense because if a court lacks jurisdiction the likelihood of success is nil. *See, e.g., Ex Parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause.").

"It is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). According to seven of our sister circuits, this burden applies to those invoking appellate jurisdiction. *See, e.g., In re Search Warrants Issued Feb. 18, 2022*, 111 F.4th 316, 319 (4th Cir. 2024) ("[T]he party asserting appellate jurisdiction bears the burden of proving its existence."); *Jok v. City of Burlington*, 96 F.4th 291, 294 n.2 (2d Cir.

2024) (agreeing with this principle and citing cases to the same effect from the First, Fifth, Eighth, Ninth, and Tenth Circuits). *Accord* Am. Jur. 2d Appellate Review § 74 (August 2026 update) ("An appellant bears the burden to establish appellate jurisdiction.").

There are several possible sources of appellate jurisdiction here. First, a court may have jurisdiction under 28 U.S.C. § 1291 to hear appeals from "final decisions" of the district court. Second, a court may have jurisdiction to review a limited class of orders subject to the so-called "collateral order doctrine." Third, a court may have jurisdiction under 28 U.S.C. § 1292(a)(1) to hear appeals from "interlocutory orders . . . granting . . . injunctions."

**1**

The appellants have not made a strong showing that they will succeed in establishing that we have appellate jurisdiction under § 1291. The sanctions order arises in a post-judgment posture because the case was dismissed based upon the plaintiffs' Rule 41(a)(1)(A)(i) voluntary dismissal and has not yet been reopened. We treat post-judgment proceedings as "free-standing litigation," so "an order is deemed final if it disposes of all the issues raised in the motion that initially sparked the post[-]judgment proceedings." *Mayer v. Wall Street Equity Grp.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (internal quotation marks and citations omitted). In other words, "[t]hough post[-]judgment decisions necessarily follow a final judgment, such orders are themselves subject to the test of finality." *Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co., Inc.*, 768 F.3d 1320, 1325 (11th Cir. 2014) (internal quotation marks and

citation omitted). *See also Acheron Cap., Ltd. v. Mukamal*, 22 F.4th 979, 987 (11th Cir. 2022) (explaining that "a post[-]judgment order is an appealable final decision if the order 'finally dispose[s] of the question . . . raised by the post-judgment motion,' 'and there are no pending proceedings raising related questions'") (quoting 15B Wright & Miller, Fed. Prac. & Proc. § 3916 (rev. 2d ed. 2021)).

A "final decision" is a "decision that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (citation and quotation marks omitted). The sanctions order that the appellants seek to stay is not a final decision under § 1291 because there is more substantive work for the district court to do in the post-judgment proceedings initiated by the former judges' motion. The court has not yet ruled on the former judges' request to reopen the case and has not yet decided the issue of attorney's fees under its inherent powers. Indeed, the court stated that the order "should not be understood as a final determination regarding any fraud perpetrated on the court and does not foreclose the possibility of future relief under [Rule 60]." D.E. 106 at 38 n.59. The order therefore is not final. *See Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1291 (11th Cir. 2025) ("If an order . . . contemplates further substantive proceedings, it is not final."); *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 n.1 (11th Cir. 2000) ("Because the magistrate judge has not yet reduced the sanctions order to a specific sum, the order is not final and the court lacks jurisdiction over [the sanctioned attorney's] appeal."). This appeal is likely premature insofar as § 1291 is concerned.

The appellants must therefore make a strong showing that the challenged portions of the district court's sanctions order are otherwise immediately appealable. The appellants contend that the referral of Mr. Brito to the Florida Bar and the *pro hac vice* suspension of Mr. Epstein are immediately appealable under the collateral-order doctrine, and that the speech-related sanction is appealable under 28 U.S.C. § 1292(a)(1) because it is an injunction within the meaning of that provision.

**2**

We may have jurisdiction under the collateral-order doctrine if the order (1) "conclusively determine[s] the disputed question"; (2) "resolve[s] an important issue completely separate from the merits of the action"; and (3) is "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (citing *Abney v. United States,* 431 U.S. 651, 658, (1977)). The collateral order doctrine "does not justify an ad hoc balancing of the arguments for and against immediate appeal on a case-by-case basis," and focuses instead on "the entire category of cases [at issue]." *SmileDirectClub, LLC v. Battle*, 4 F.4th 1274, 1278, 1282 (11th Cir. 2021) (en banc) (internal quotation marks and citations omitted).

With respect to Mr. Brito's referral, we have said that "[a] mere reprimand and referral to the state bar disciplinary committee is not a contempt adjudication," or a "coercive sanction," and therefore is not appealable. *See, e.g., United States v. McCorkle*, 321 F.3d 1292, 1298–99 (11th Cir. 2003) (dismissing attorney's appeal

from referral to state bar "for lack of an appealable order"). Without making any definitive pronouncements on the matter, our decision in *McCorkle* would seem to make it difficult for the appellants to make a strong showing that we have appellate jurisdiction at this time to review Mr. Brito's referral.

Assuming that *McCorkle* is not an impediment on the first and second collateral order prongs, Mr. Brito has not made a strong showing that his referral satisfies the third prong. The Supreme Court has said that an appeal of a collateral order is permissible only when the "denial of immediate review would render impossible any review whatsoever of an individual's claims." *United States v. Ryan*, 402 U.S. 530, 533 (1971). And in *United States v. MacDonald*, 435 U.S. 850, 860 (1978), the Court described the prong as requiring "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." It seems to us that the order here is subject to effective review on appeal from a final judgment. As the Tenth Circuit has explained, "there is no reason why any alleged damage to [the attorneys'] reputation[s] cannot be effectively reviewed on appeal from the final decision." *United States v. Dickstein*, 971 F.2d 446, 451 (10th Cir. 1992). Plus, "[o]ur Circuit and others recognize the right of an attorney to appeal even when the client does not, if the attorney is independently aggrieved so as to be the real party in interest." *In re BellSouth Corp.*, 334 F.3d 941, 955 n.6 (11th Cir. 2003) (citing *Lipscomb v. Wise*, 643 F.2d 319, 320 (5th Cir. 1981)). So there isn't a scenario in which an attorney wouldn't be able to appeal sanctions against him at the appropriate time.

As for Mr. Epstein's *pro hac vice* suspension, the Supreme Court has held that an order imposing sanctions on counsel pursuant to a Federal Rule is not a final decision under § 1291 and is not immediately appealable under the collateral order doctrine, notwithstanding the "hardship that a sanctions order may sometimes impose on an attorney." *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 200, 203 (1999). *See also Flanagan v. United States*, 465 U.S. 259, 260 (1984) (holding a district court's pre-trial disqualification of defense counsel in a criminal case is not immediately appealable). The *pro hac vice* suspension of Mr. Epstein is a sanction imposed by the district court pursuant to Rule 11. Given *Cunningham*, the appellants have not made a strong showing that we have appellate jurisdiction to review that suspension under the collateral order doctrine.

Because of our significant doubts about appellate jurisdiction, we deny the appellants' motion for a stay with respect to the individual sanctions against Messrs. Brito and Epstein. That leaves the speech-related prohibition, to which we now turn.

### *3*

Our jurisdiction under § 1292(a)(1) "extends not only to those orders that explicitly grant injunctions but also to those orders that have 'the practical effect of granting [an] injunction[].'" *Northfield Ins. Co. v. North Brook Indus., Inc.*, 176 F.4th 1268, 1272 (11th Cir. 2026) (quoting *Abbott v. Perez*, 585 U.S. 579, 594 (2018)). *See also Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1471

(11th Cir. 1985). The former "fit[ ] squarely within the plain language of § 1292(a)(1)." *Cable Holdings*, 764 F.2d at 1471. As for the latter, "[t]o meet this exception, an appellant must show that the district court order might have a serious, perhaps irreparable consequence and that the order may be effectually challenged only by immediate appeal[;] . . . [§] 1292(a)(1) appealability . . . does not arise simply because an order has an injunction-like effect." *Feldspar Trucking Co., Inc. v. Greater Atl. Shippers Ass'n*, 849 F.2d 1389, 1391 (11th Cir. 1988) (quotations and citations omitted). *See also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 288 (1988).

The sanctions order did not explicitly grant injunctive relief sought by either party. Even assuming that the order does not qualify for appeal under § 1292(a)(1) as an actual injunction—a matter we need not address—the order likely meets the standard set out in *Carson*. *See Georgia v. Heinze*, 171 F.4th 1335, 1341 (11th Cir. 2026).

The speech-related sanction prevents the parties (i.e., the appellants) from "referring to the . . . 'settlement agreement,' or using, offering, admitting, or citing any of its provisions in any judicial, administrative, . . . or . . . other official proceeding as evidence of a 'settlement' reached in this matter." D.E. 106 at 47. The appellants have made a strong showing that this sanction is likely appealable.

First, the sanction has the necessary "practical effect of granting an injunction." *North Brook*, 176 F.4th at 1272 (quoting

*Abbott*, 585 U.S. at 594). There is a "clear and understandable directive" to refrain from certain conduct that is "enforceable through contempt proceedings." *Id.* (quoting *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1358 (11th Cir. 2008)). Moreover, the former judges sought reopening in order to ensure that the "settlement" reached between the parties would not be recognized as having legal effect or effect under 31 C.F.R. § 256.1(a)(1). *See* D.E. 63 at 17–18. The sanction prohibiting the parties from referring to or using the settlement in any official proceeding appears to award at least some of that relief.

Second, although we have explained that "[i]f relief may be obtained upon review after [final judgment], the parties are not considered to have suffered irreparable consequences," *Administrative Management Services, Ltd., Inc. v. Royal American Managers, Inc.*, 854 F.2d 1272, 1279 (11th Cir. 1988), the speech-related sanction is in effect now. Therefore, the appellants' only avenue to challenge the *current* prohibition on their speech-related activity is by immediate appeal, even if they might, after final judgment, also be able to seek review of the order impacting their speech at a later date.

We therefore address in Part IV whether the appellants have established a strong likelihood of success as to the speech-related sanction.

**B**

If, as we think it likely is, the speech-related sanction is appealable under § 1292(a)(1), the general rule is that the scope of our jurisdiction "is limited to matters directly related to the [ruling]

o[n] injunctive relief." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997). We adhere to that rule here because the appellants have not made a strong showing that pendent appellate jurisdiction should apply to the sanctions imposed on Messrs. Brito and Epstein. *See In re Bayshore Trucks Sales, Inc.*, 471 F.3d 1233, 1260 (11th Cir. 2006).

"[T]he Supreme Court has signaled that pendent appellate jurisdiction should be present only under rare circumstances." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379 (11th Cir. 2009) (citations omitted). An "expansive exercise of such jurisdiction would undermine the statutory scheme governing interlocutory appeals." *Id.* at 1379–80 (citations omitted). Even when the predicates for exercising such jurisdiction are met, "the exercise of pendent appellate jurisdiction is discretionary, and we have not been shy about declining to indulge in it." *Jackson v. City of Atl.*, 97 F.4th 1343, 1354 (11th Cir. 2024). In light of the rare circumstances in which pendent appellate jurisdiction is properly exercised, and our discretion to decline to do so *even when* those circumstances are met, we cannot say that the appellants have made the necessary strong showing that the merits panel will do so here, and we see even less of a reason for us to exercise such discretionary jurisdiction as a stay panel.

This conclusion also applies to the appellants' request that we exercise pendent appellate jurisdiction over (and stay) the ongoing fee proceedings in the district court. *See Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1360 (Fed. Cir. 2012) ("[T]he circuits . . . are in general agreement that an unquantified award of attorney

fees does not usually warrant the exercise of pendent jurisdiction."). *Cf. Jaffe v. Sundowner Props., Inc.*, 808 F.2d 1425, 1427 (11th Cir. 1987) ("Since the award of attorney's fees is . . . a part of the sanction, the amount of the award must be determined before there can be a complete review."). We see no reason to exercise pendent appellate jurisdiction over the ongoing fee proceedings before an order definitively resolving the matter.

**IV**

The appellants mount two main attacks on the district court's speech-related sanction. First, they argue that the court lacked a sufficient basis to find that the lawsuit and the settlement were collusive and that Messrs. Brito and Epstein acted in bad faith. Second, they contend that the sanction is a broad and impermissible gag order which constitutes a prior restraint and violates the First Amendment. We conclude that the appellants have not made a strong showing that they will succeed on either of these grounds.

**A**

Findings of collusion and bad faith are factual ones subject to the clear error standard of review. *See Faught v. Am. Home Shield Co.*, 668 F.3d 1233, 1244 (11th Cir. 2011) (collusion); *Trump v. Clinton*, 161 F.4th 671, 689 (11th Cir. 2025) (bad faith). A finding of fact is not clearly erroneous if it is "plausible in light of the full record—even if another is equally or more so[.]" *Cooper v. Harris*, 581 U.S. 285, 293 (2017) (internal quotation marks and citation omitted).

The appellants did not submit or offer any evidence to explain their litigation conduct or demonstrate that the lawsuit and

the settlement were not collusive. Given the record before us, the appellants have not made a strong showing that the district court committed clear error in its collusion and bad faith findings. *See generally United States v. Johnson*, 319 U.S. 302, 304–05 (1943) (per curiam); *Lord v. Veazie*, 49 U.S. 251, 254-56 (1850).

**B**

The speech-related sanction is not, as the appellants say, a prior restraint. It was entered by the district court after the parties were allowed to respond to the motion of the former judges and was based on findings of collusion and bad faith. *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 390 (1973) ("The special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment.").

Although the appellants maintain that the speech-related sanction sweeps broadly and acts as an unconstitutional gag order which prevents them from referring to the settlement agreement at all times and under all circumstances, the district court, in denying the stay motion, explained that the prohibition is in fact narrower. The court emphasized that its injunction "is not a categorical restriction prohibiting any reference to any agreement of the Parties," but rather affects only "how the Parties refer to the 'settlement agreement'[.]" D.E. 130 at 6. In particular, the court observed, the injunction is limited in two respects. First, the court emphasized, "the provision narrowly prevents the [p]arties from

referring to the 'settlement agreement' **as evidence of** a 'settlement' reached **in the matter brought before this Court**." *Id.* at 14 (emphasis in original). And second—and perhaps more to the point, given the plaintiffs' particular objection—the court clarified that "the limitation only applies to official proceedings such as judicial, administrative, regulatory, or arbitration" proceedings. *See id.*

We generally give district courts wide discretion in interpreting their own orders. *See e.g., Stansell v. Revolutionary Armed Forces of Colom.*, 120 F.4th 754, 766 (11th Cir. 2024) ("[W]hen an issuing judge interprets alleged ambiguities in his or her own order, we accord substantial deference to that interpretation.") (quotation omitted). Given this deference, the appellants have not persuaded us to construe the sanction more broadly and have not made a strong showing that they will prevail on their First Amendment challenges. They do not cite any authorities suggesting that a speech-related prohibition imposed as a penalty for conduct determined to be sanctionable violates the First Amendment. Indeed, in judicial proceedings, "whatever right to 'free speech' an attorney has is extremely circumscribed.'" *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991). *See also id.* at 1072–73 (explaining that "the speech of *those participating before the courts* c[an] be limited" and that "although litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise in this setting") (quotation omitted).

**V**

The appellants' motion for a stay is denied.

**STAY DENIED.**