**No. 26-12692**

# United States Court of Appeals for the Eleventh Circuit

PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP, JR., ERIC TRUMP,
THE TRUMP ORGANIZATION, LLC,
PLAINTIFFS-APPELLANTS-CROSS APPELLEES,

ALEJANDRO BRITO, DANIEL EPSTEIN,
INTERESTED PARTIES-APPELLANTS-CROSS APPELLEES,
*v.*
INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE TREASURY,
DEFENDANTS-APPELLEES-CROSS APPELLANTS,

THIRTY-FIVE FORMER FEDERAL JUDGES,
INTERESTED PARTIES-APPELLEES.

*APPEAL FROM THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, NO. 1:26-cv-20609, HON. KATHLEEN M. WILLIAMS, PRESIDING*

## BRIEF OF AMERICA FIRST LEGAL FOUNDATION AS *AMICUS CURIAE* SUPPORTING APPELLANTS AND REVERSAL

Gene P. Hamilton
Reed D. Rubinstein
Julie A. Strauss
Nicholas R. Barry
Crystal C. Clanton
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003

Christopher Mills
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

Counsel for *Amicus Curiae*

OCTOBER 5, 2026

# CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

*Donald Trump, et al. v. Internal Revenue Service*, No. 26-12692:

The undersigned counsel of record certifies that the following listed persons and entities, in addition to those listed in prior filings, have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

1. Mills, Christopher (counsel for *amicus*) of Spero Law LLC.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1, *amicus curiae* America First Legal Foundation declares that it has no parent corporation nor any shares that could be owned by a publicly held corporation.

*s/ Christopher Mills*
Christopher Mills

Counsel for *Amicus Curiae*

October 5, 2026

# TABLE OF CONTENTS

**Page**

Certificate of Interested Parties and Corporate Disclosure Statement ....................... i

Table of Citations ....................................................................................... ii

Interest of *Amicus Curiae* ................................................................................1

Statement of the Issues ....................................................................................2

Summary of the Argument ...............................................................................2

Argument ...........................................................................................................4

I. The district court's sanctions order flouts Rule 11 .........................................4

A. The district court failed to provide the required notice and an opportunity to be heard before imposing Rule 11 sanctions. .....................4

B. Rule 11 cannot supply the basis for any sanctions against Mr. Epstein. ......................................................................................13

II. The district court failed to identify any sanctionable legal theory. ...............16

A. The district court's adversity theory is legally untenable. .......................16

B. Even if the adversity theory were correct, sanctions are unavailable for advancing a novel legal position ...................................................18

C. Seeking a settlement of genuinely asserted statutory claims is a proper purpose. ......................................................................................20

III. The district court's order threatens the rule of law. .....................................21

Conclusion .......................................................................................................24

## TABLE OF CITATIONS

**Page(s)**

**CASES**

*Ariz. Republican Party v. Richer*, 547 P.3d 356 (Ariz. 2024) ................................22

*Baker v. Alderman*, 158 F.3d 516 (11th Cir. 1998) ...............................................18

*Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2026)...........................................17

*Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002 (11th Cir. 1992)...............................9

*Burns v. Lawther*, 53 F.3d 1237 (11th Cir. 1995) (per curiam)..............................10

*Clinton v. Jones*, 520 U.S. 681 (1997)....................................................................17

*Danubis Grp., LLC v. Landmark Am. Ins. Co.*,
685 F. App'x 792 (11th Cir. 2017)........................................................................11

*Davis v. Carl*, 906 F.2d 533 (11th Cir. 1990)............................................. 3, 19, 23

**Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) (en banc)....... 3, 6, 21, 22, 23

*Est. of West v. Smith*, 9 F.4th 1361 (11th Cir. 2021) .............................................21

*Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*,
2026 WL 1498257 (6th Cir. May 28, 2026) .......................................................20

*Hollingsworth v. Perry*, 558 U.S. 183 (2010) (per curiam)........................... 2, 8, 22

*In re Mroz*, 65 F.3d 1567 (11th Cir. 1995) ..........................................................8

*In re Sanford L. Firm*, 106 F.4th 706 (8th Cir. 2024)...............................................8

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951) ....................22

**Kaplan v. DaimlerChrysler, A.G.*,
331 F.3d 1251 (11th Cir. 2003)............................................ 5, 8, 9, 10, 11, 12, 23

*Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025) ..................................................7, 22

*Lake v. Gates*, 148 F.4th 1110 (9th Cir. 2025) .....................................................23

*Lewis v. Clarke*, 581 U.S. 155 (2017)....................................................................17

*Martens v. Thomann*, 273 F.3d 159 (2d Cir. 2001) ..................................................5

*Mistretta v. United States*, 488 U.S. 361 (1989).....................................................23

*Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989) ................................10

*Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010) .......... 18

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277 (11th Cir. 2002) .......... 10, 11, 16

*Sargeant v. Hall*, 951 F.3d 1280 (11th Cir. 2020) .......... 10

*Thacker v. Tenn. Valley Auth.*, 587 U.S. 218 (2019) .......... 10

*Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010) .......... 20

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir. 1990) (en banc) .......... 23

*Trump v. Internal Revenue Serv.*,
2026 WL 1506030 (S.D. Fla. May 29, 2026) .......... 6, 7

*Trump v. Internal Revenue Serv.*,
2026 WL 2725767 (S.D. Fla. Sept. 14, 2026) .......... 6, 8, 12

*Trump v. Internal Revenue Serv.*,
836 F. Supp. 3d 1225 (S.D. Fla. 2026) .......... 3, 14, 15, 17, 18, 19, 20, 21

*United States v. Caraballo-Martinez*, 866 F.3d 1233 (11th Cir. 2017) .......... 9

*United States v. Nixon*, 418 U.S. 683 (1974) .......... 16

**STATUTES**

26 U.S.C. § 7122 .......... 20

28 U.S.C. § 2072 .......... 10

28 U.S.C. § 2672 .......... 20

**RULES**

Fed. R. Civ. P. 1 .......... 10

Fed. R. Civ. P. 8 .......... 7

Fed. R. Civ. P. 11 .......... 2, 3, 4, 6, 13, 14, 15

S.D. Fla. Rules Governing the Admission, Practice, Peer Review, &
Discipline of Att'ys 4(a) .......... 14

**OTHER AUTHORITIES**

5A Wright & Miller's Federal Practice & Procedure (4th ed. 2026) .......... 5, 6, 7, 13

Authority of the United States to Enter Settlements Limiting the Future Exercise of
Executive Branch Discretion, 23 Op. O.L.C. 126 (1999) .......... 20

Brief of Am. First Legal Found. as *Amicus Curiae* in Support of Respondent, *In re Clark*, No. 25-BG-0731 (D.C. Oct. 1, 2025), Disciplinary Dkt. No. 2021-D193 ....................................................................1

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ................. 14, 15

*Asterisks denote citations upon which this brief primarily relies.

## INTEREST OF *AMICUS CURIAE*

America First Legal Foundation ("AFL") is a national nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution.

AFL has a strong interest in this case because it regularly litigates matters involving the meaning and application of the Due Process Clauses of the U.S. Constitution. AFL also has a strong interest in safeguarding the independence of the legal profession and the rule of law. To that end, AFL litigates and conducts oversight efforts to protect attorneys from partisan attacks, weaponized investigations, and unconstitutional sanctions that threaten their ability to represent clients free from governmental retaliation or interference. *See, e.g.*, Brief of Am. First Legal Found. as *Amicus Curiae* in Support of Respondent, *In re Clark*, No. 25-BG-0731 (D.C. Oct. 1, 2025), Disciplinary Dkt. No. 2021-D193. This case implicates those same fundamental principles and therefore falls squarely within AFL's institutional interests. Daniel Epstein, an Interested Party-Appellant-Cross Appellee, is a former Vice President of AFL.[1]

---

[1] All parties have consented to this brief's filing. Though this Court's docket lists "Thirty-Five Former Federal Judges" as an "Interested Party-Appellee," the district court treated them as *amici*, not as a party, and no intervention order was entered; nonetheless, AFL has obtained their consent to this brief. No party's counsel authored, and no party, party's counsel, or other person—other than *amicus curiae*, its members, or its counsel—contributed money for this brief.

## STATEMENT OF THE ISSUES

Whether the district court's sanctions order should be reversed.

## SUMMARY OF THE ARGUMENT

The district court sanctioned Plaintiffs' lawyers under Rule 11 without following Rule 11's procedural prerequisites. It never ordered either lawyer to show cause. It sanctioned Mr. Epstein without finding that he presented any offending paper to the court. And it rested the sanctions on a novel Article III theory. Each error requires reversal. "Courts enforce the requirement of procedural regularity on others, and must follow those requirements themselves." *Hollingsworth v. Perry*, 558 U.S. 183, 184 (2010) (per curiam).

**I.** Rule 11 permits court-initiated sanctions only after the court "order[s] an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). No such order issued. The court directed only "Plaintiffs" to respond to the merits of an *amicus* motion to reopen the case—a motion that did not mention Rule 11 or sanctions. The court's order described no attorney's conduct and gave no warning of a Florida Bar referral or a *pro hac vice* ban. The district court thus failed to provide adequate notice and an opportunity to be heard under both Rule 11 and due process.

Rule 11 also cannot reach Mr. Epstein. It binds an attorney who "sign[s], fil[es], submit[s], or later advocat[es]" a paper presented to the court. Fed. R. Civ. P.

11(b). Mr. Epstein, who was not admitted to appear in this case, did not take these actions with respect to either document on which the district court's Rule 11 analysis turned. He did not sign the complaint. And the settlement agreement was never presented to the court. So Rule 11 could not support sanctions against him.

**II.** The sanctions also fail as a matter of substantive legal doctrine. The court's premise—that presidential supervision eliminates Article III adversity when the President sues in his personal capacity—is wrong. At a minimum, a jurisdictional question that the district court itself called "unprecedented" cannot be so "obvious and so insurmountable" that taking the other side warrants sanctions. *Trump v. Internal Revenue Serv.*, 836 F. Supp. 3d 1225, 1253, 1261 n.69 (S.D. Fla. 2026). Rule 11 "is intended to deter claims with *no* factual or legal basis at all." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990).

**III.** The sanctions order undermines the rule of law. The district court enforced Rule 11 against counsel while setting aside the protections Rule 11 guarantees them. It also disregarded this Court's instruction that Rule 11 "should not be used to deter potentially controversial or unpopular suits." *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987) (en banc). Rule 11 bound the district court no less than the lawyers before it. This Court should reverse.

## ARGUMENT

### I. The district court's sanctions order flouts Rule 11.

The district court sanctioned Plaintiffs' counsel without the show-cause order and opportunity to respond that Rule 11(c)(3)—along with due process—requires. And it sanctioned Mr. Epstein even though he presented no offending paper to the court. Each error independently requires reversal.

#### A. The district court failed to provide the required notice and an opportunity to be heard before imposing Rule 11 sanctions.

Rule 11 and due process both require notice and an adequate opportunity to respond. The district court provided neither.

Rule 11 permits a court acting on its own initiative to impose sanctions only after it "order[s] an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). The court must provide both "notice and a reasonable opportunity to respond." *Id.* 11(c)(1). Because "[c]ourt-initiated sanctions" lack the safe-harbor provision of Rule 11(c)(2)—which gives the party a chance to cure any misconduct alleged by the other side—Rule 11 includes several "compensating protections": "The initiating court must employ (1) a 'show-cause' order to provide notice and an opportunity to be heard; and (2) a higher standard ('akin to contempt') than in the case of party-initiated sanctions." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th

Cir. 2003) (citation modified). "Sua sponte Rule 11 sanctions, then, must be reviewed with 'particular stringency.'" *Id.*

As commentators have emphasized, "it is important that the due process rights of those facing sanctions by the court be taken seriously." 5A Wright & Miller's Federal Practice & Procedure § 1337.3 (4th ed. 2026). "A district judge considering sua sponte sanctions must issue an order specifically describing the conduct allegedly in violation of the rule and requiring the party subject to sanctions to show cause why he or she has not violated Rule 11." *Id.* § 1337. After this specific notice, "the party obviously must be afforded a chance to respond." *Id.* § 1337.3. "A failure to comply with these formal requirements, even when actual notice has been received by the party or attorney accused of sanctionable behavior, is considered an abuse of discretion warranting reversal of court-initiated sanctions." *Id.* And "*pro hac vice counsel* are entitled to the same notice and opportunity to be heard as are admitted counsel prior to being sanctioned." *Martens v. Thomann*, 273 F.3d 159, 177 n.11 (2d Cir. 2001); *see id.* at 178–79.

Here, the district court provided neither adequate notice of potential Rule 11 sanctions nor a proper opportunity to respond. Starting with notice, the district court indisputably did not "issue an order specifically describing the conduct allegedly in violation of the rule and requiring the party subject to sanctions to show cause why he or she has not violated Rule 11." 5A Wright & Miller's Federal Practice &

Procedure § 1337. When the court later denied a stay, it tried to excuse the missing order on the ground that "[t]he Movants were on notice that sanctions were being contemplated when the Court explicitly stated that Rule 11 empowered the Court to determine 'whether an attorney has abused the judicial process.'" *Trump v. Internal Revenue Serv.*, 2026 WL 2725767, at *4 (S.D. Fla. Sept. 14, 2026) (quoting *Trump v. Internal Revenue Serv.*, 2026 WL 1506030, at *1 (S.D. Fla. May 29, 2026)).

Though that prior order discussed Rule 11 in general terms, it cannot fairly be read as any sort of "order" to "an attorney" "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). That is so for at least five reasons.

*First*, the order did not require any "attorney" to do anything; it ordered only "Plaintiffs [to] file a response." *Trump*, 2026 WL 1506030, at *2.

*Second*, it did not "specifically describe[]" any "conduct" of any particular attorney that could give rise to Rule 11 sanctions. As this Court has explained, "the potential target of sanctions must have notice that sanctions are contemplated and of what his or her alleged deficiency is, and have a reasonable opportunity to contest and explain." *Donaldson*, 819 F.2d at 1561 n.13. Yet the pre-sanctions order referred to the Plaintiffs' complaint only by repeating arguments by third-party *amici*, for example: "the non-party movants assert that Plaintiffs' claims were 'clearly untimely' and therefore untenable." *Trump*, 2026 WL 1506030, at *2. This third-party

assertion about the merits of the *parties'* claims says nothing about "specific[]" "conduct" of particular attorneys. And merely filing a claim that others call time-barred cannot violate Rule 11—especially when the complaint alleged timely claims and the limitations defense is waivable. Fed. R. Civ. P. 8(c)(1); *see Lake v. Gates*, 130 F.4th 1064, 1071 (9th Cir. 2025) (Bumatay, J., dissenting) ("[A]sserting an *unpersuasive* claim is different from asserting a *sanctionable* one.").

*Third*, the court's order did not "requir[e] the party subject to sanctions to show cause why he or she has not violated Rule 11." 5A Wright & Miller's Federal Practice & Procedure § 1337. Rather, it ordered "that Plaintiffs shall file a response to the [third-party *amici*] Motion," "detailing their position on the matters set forth in the Motion, including (1) the charges of collusion and whether the Parties are truly adverse; (2) the assertion that the dismissal in this case was premised on deception by the Parties; and (3) the question of whether the case should be reopened because the Court was the 'victim of a fraud.'" *Trump*, 2026 WL 1506030, at *2. In other words, the *Plaintiffs*—not their counsel—were ordered to file a *merits* response—not a sanctions response. The *only* argument ordered in the response was the Plaintiffs' "position on the matters set forth in the Motion." *Id.* And that motion does not even contain the terms "Rule 11" or "sanction." *See* D. Ct. Dkt. 63. An order to brief the merits of a motion that never mentioned Rule 11 is neither adequate notice nor a show-cause order.

*Fourth*, the court's order did not advise anyone that the court was considering the extraordinary sanctions ultimately imposed: a one-year ban on seeking *pro hac vice* admission, and a referral to the Florida Bar. That is perhaps unsurprising, given that the order's focus was on the merits of a motion that had nothing to do with Rule 11. But it means that adequate notice was lacking. *See In re Sanford L. Firm*, 106 F.4th 706, 717 (8th Cir. 2024) ("The party must know the nature of a potential sanction in order to respond in a cogent way." (citation modified)).

*Fifth*, "because of the lack of notice, the attorneys' opportunity to be heard was less than meaningful." *Id.*[2]

"If courts are to require that others follow regular procedures, courts must do so as well." *Hollingsworth*, 558 U.S. at 199. Yet the district court tried to justify its disregard of Rule 11(c)(3) on the ground that "the Eleventh Circuit applies a 'flexible standard.'" *Trump*, 2026 WL 2725767, at *4 (quoting dicta in *Kaplan*, 331 F.3d at 1257). But Rule 11(c)(3) textually requires an order to "an attorney . . . to show cause why conduct specifically described in the order has not violated Rule 11(b)."

[2] The same defects would doom any attempt to recast the court's Rule 11 sanctions as sanctions under its inherent authority. "Invocation of a court's inherent power requires a finding of bad faith," and "[d]ue process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). "In addition, the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions." *Id.* at 1575–76. That did not happen here.

No amount of flexibility can transform the order here into anything resembling a Rule 11(c)(3) show-cause order.

*Kaplan*'s suggestion that "substantial compliance [with Rule 11] may suffice" was narrow dicta—and dubious to boot. 331 F.3d at 1257. As an initial matter, the district court overread *Kaplan*'s reference to "substantial compliance," which referred only to "whether a written show cause order was required" rather than "oral" "notice." *Id.* And this reference was nonbinding dicta anyway: the Court had decided to reverse the Rule 11 order on other grounds, so it declined to decide "whether a written show cause order was required." *See United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) ("[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before us.").

The "substantial compliance" suggestion is also dubious dicta, at least to the extent it reaches beyond the written/oral notice issue. As this Court has admonished, courts "*must not* circumvent the Federal Rules of Civil Procedure by implementing local rules or 'procedures' which do not afford parties rights that they are accorded under the Federal Rules." *Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1008 (11th Cir. 1992). *Kaplan* acknowledged that courts' "formal compliance with Rule [11(c)(3)] is the ideal." 331 F.3d at 1257.

But the Federal Rules of Civil Procedure are not aspirational standards. They "*govern* the procedure in all civil actions and proceedings in the United States district

courts." Fed. R. Civ. P. 1 (emphasis added); *see* 28 U.S.C. § 2072(a). "The Federal Rules of Civil Procedure, like any statutory scheme, should be given their plain meaning." *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995) (per curiam); *see Sargeant v. Hall*, 951 F.3d 1280, 1283 (11th Cir. 2020). And Rule 11(c)(3) has a plain meaning: it requires a show-cause order to an attorney with conduct "specifically described."

That the results might be "inconvenient, costly, and inefficient" is no reason to disregard the plain meaning of this legal requirement. *Thacker v. Tenn. Valley Auth.*, 587 U.S. 218, 224 (2019). Because Rule 11's terms are "unambiguous, judicial inquiry is complete." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989).

Even accepting *Kaplan*'s gloss and extending it beyond its context of an oral show-cause order, that decision also explained that "[s]ua sponte Rule 11 sanctions . . . must be reviewed with particular stringency." 331 F.3d at 1255 (citation modified). And alongside its later reference to a "flexible standard," it cited a footnote in an earlier decision explaining that "due process" requires "that the sanctionee have fair notice of the possible imposition of sanctions and an opportunity to respond orally or in writing." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 n.14 (11th Cir. 2002). *Kaplan* appears to conflate due process requirements—the issue in *Riccard*'s footnote—with what Rule 11(c) textually requires. Either way, Plaintiffs'

counsel here did *not* receive "fair notice of the possible imposition of sanctions and an opportunity to respond orally or in writing." *Id.*

So even under an atextual "flexible" reading of Rule 11(c)(3), the sanctions order was deficient. *Compare Riccard*, 307 F.3d at 1294 n.14 (emphasizing that "the court also gave [the subject] notice and a hearing prior to the imposition of the particular sanctions of the injunction and monetary levy"). Unpublished decisions of this Court have found substantial compliance when, for example, an evidentiary-hearing order expressly warned that "should the evidence support a finding that any party, witness or counsel participated in any way in the perpetration of a fraud in this matter, the Court will consider the full measure of sanctions available." *Danubis Grp., LLC v. Landmark Am. Ins. Co.*, 685 F. App'x 792, 801 (11th Cir. 2017). As far as *amicus* is aware, this Court has not approved notice so general that the person sanctioned cannot reasonably know that his own conduct is at issue. At a minimum, a court must provide sufficient notice of who is subject to sanctions and what conduct may warrant them.

*Kaplan* itself underscores the point. There, the Court held that sanctions were invalid because, although the district court's oral show-cause notice identified one specific filing as a potential basis for sanctions, the court ultimately relied on that filing and several additional filings that the notice did not identify. *Kaplan*, 331 F.3d at 1257. This Court held that this "material variance between the court's oral Rule

11(c)(1)(B) notice (localizing the court's complaint to [one] motion) and the sanction imposed" "alone" required reversal. *Id.* If notice identifying one specific filing is insufficient to support sanctions based on other filings, then generalized notice directing "Plaintiffs" to respond to merits arguments unrelated to Rule 11 or sanctions cannot support personal sanctions against individual attorneys whose conduct was not identified as potentially sanctionable.

Last, the district court later noted that Plaintiffs' "own response to the Court's inquiry as to the issues raised by the Thirty-Five Former Federal Judges—all of which inform the basis of the Court's sanctions—invoked a Rule 11 discussion." *Trump*, 2026 WL 2725767, at *4. But this post hoc justification fails for many reasons. First, the response was the Plaintiffs'—but the court sanctioned the Plaintiffs' *counsel*. Second, "the issues raised by the Thirty-Five Former Federal Judges" did not include Rule 11 or sanctions. Third, that Plaintiffs included a short discussion of Rule 11 does not remedy the court's failure to comply with Rule 11(c)(3). Plaintiffs' discussion *emphasized* that the Former Federal Judges "did not move under Rule 11"—and that "[n]o show-cause order was issued" for sua sponte sanctions. D. Ct. Dkt. 89, at 13. In all events, "[a] failure to comply with [Rule 11's] formal requirements, even when actual notice has been received by the party or attorney accused of sanctionable behavior, is considered an abuse of discretion warranting reversal of

court-initiated sanctions." 5A Wright & Miller's Federal Practice & Procedure § 1337.3.

In sum, none of the attorneys ultimately sanctioned received individualized notice that they were potential targets of sanctions. The district court's order neither identified any of them as potential targets nor identified the particular conduct for which they might be sanctioned. The district court therefore deprived the sanctioned individuals of notice and a meaningful opportunity to defend themselves before sanctions were imposed. The sanctions exceeded the court's authority and must be reversed.

### B. Rule 11 cannot supply the basis for any sanctions against Mr. Epstein.

Independently, Rule 11 cannot support the sanctions imposed on Mr. Epstein. The district court never found that any pleading, motion, or other paper that he personally signed, filed, submitted, or later advocated before the court violated Rule 11. Rule 11(b)'s obligations attach to an attorney or unrepresented party who "sign[s], fil[es], submit[s], or later advocat[es]" a pleading, motion, or other paper presented to the court. Fed. R. Civ. P. 11(b). The Advisory Committee Notes emphasize that "[t]he person signing, filing, submitting, or advocating a document has a *nondelegable* responsibility to the court, and in most situations is the person to be sanctioned

for a violation." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (emphasis added).[3]

The district court's Rule 11 analysis turned on two documents, the complaint and the settlement agreement. Neither document provides a basis for imposing Rule 11 sanctions against Mr. Epstein.[4]

Mr. Epstein did not sign the complaint, file it, or submit it to the district court. He was not counsel of record, and the district court did not find that he later advocated the complaint before the court. The district court acknowledged that Mr. Brito signed the complaint and that Mr. Epstein "could not" have signed it because he was not admitted to practice in the Southern District of Florida. *Trump*, 836 F. Supp. 3d at 1248 n.41. Indeed, because he was not admitted to practice before that court—either generally or *pro hac vice*—he did not even *appear* before the court. *See* S.D. Fla. Rules Governing the Admission, Practice, Peer Review, & Discipline of Att'ys 4(a) ("Only members of this Court's bar may appear as attorneys before the Court, except when the Court permits an appearance pro hac vice."). Mr. Epstein's name was listed in the signature block, with a note that his *pro hac vice* application was

[3] Rule 11 sanctions can extend to an attorney "responsible for the violation," Fed. R. Civ. P. 11(c)(1), but the district court conducted no "additional inquiry" necessary to apply that provision to Mr. Epstein. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

[4] The sanctions order briefly discusses the "Release Order" signed by then-Acting Attorney General Todd Blanche.

forthcoming. But that notation did not transform him into the attorney who "sign[ed], fil[ed], submit[ted], or later advocat[ed]" the complaint. Fed. R. Civ. P. 11(b).

The district court's reliance on Mr. Epstein's signature on the settlement agreement fares no better. That agreement was a private settlement, not "a pleading, written motion, or other paper" "present[ed] to the court." Fed. R. Civ. P. 11(b); *see Trump*, 836 F. Supp. 3d at 1235 (noting that, before dismissal, the only pleadings filed by any party were the complaint, a consent motion, and the notice of voluntary dismissal). The Advisory Committee Notes confirm that Rule 11 "applies only to assertions contained in papers filed with or submitted to the court." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Mr. Epstein's signature on a document that was never presented to the court could not trigger Rule 11.

Thus, the district court failed to connect Mr. Epstein's specific conduct to any sanctionable Rule 11 filing. Negotiating a settlement and being listed as intended counsel are not enough when the court never found that he personally made a Rule 11 certification. Yet the district court imposed a one-year prohibition on *pro hac vice* admission based on conjecture rather than any finding that he personally signed, filed, submitted, or advocated a problematic paper in violation of Rule 11. *See Trump*, 836 F. Supp. 3d at 1249 ("surmis[ing]" Mr. Epstein's subjective beliefs). This Court should reverse the sanctions order.

## II. The district court failed to identify any sanctionable legal theory.

Beyond the sanctions order's procedural defects, the district court's adversity theory is wrong—and even if it were right, novel positions on unsettled legal questions are not sanctionable. And suing with the intent to potentially settle would not be an "improper purpose" under Rule 11. Under the akin-to-contempt standard applicable to sua sponte sanctions, conduct amounting to a "willful disregard of the authority of the court" must be shown "by clear and convincing evidence." *Riccard*, 307 F.3d at 1296. No such showing is possible here.

### A. The district court's adversity theory is legally untenable.

The district court's central substantive premise—that presidential supervision under Article II eliminates Article III adversity—is incorrect. At a minimum, the question is not so obvious that pressing an alternative view is sanctionable.

In *United States v. Nixon*, the Supreme Court held that a dispute between the President and the Special Prosecutor was justiciable even though the Special Prosecutor was the President's subordinate. 418 U.S. 683, 693, 696–97 (1974). If adversity existed where the President sought to contest a subpoena issued by his own subordinate, it reasonably exists where the President sues in his personal capacity to vindicate private statutory rights against an agency that admitted wrongdoing. This is especially so where three private plaintiffs sued alongside him.

The district court cited no authority holding that a President's supervisory power, together with a defendant's choice to settle, defeats adversity in a personal-capacity suit. The court glossed over the personal-capacity nature of this action. But in such an action, "the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 162–63 (2017). The Supreme Court has recognized that the Presidency remains distinct from "the individual who happens to be the President." *Clinton v. Jones*, 520 U.S. 681, 701 (1997). No precedent supports the extraordinary conclusion that the President loses his right to bring suit against the federal government in his personal capacity for cognizable injuries.

The district court's theory is even more untenable as applied to the non-presidential plaintiffs. Donald Trump Jr., Eric Trump, and The Trump Organization are private parties who have never exercised any authority over the IRS or Treasury. Yet the district court brushed aside their claims as merely "parenthetical" because of shared counsel, family ties, and a common litigation position. *Trump*, 836 F. Supp. 3d at 1244 n.29. Article III does not extinguish private statutory rights through association with a President. And because Article III requires "only one plaintiff" with standing to maintain a case or controversy, *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 76 n.3 (2026), the presence of these indisputably private plaintiffs independently established adversity.

### B. Even if the adversity theory were correct, sanctions are unavailable for advancing a novel legal position.

Even accepting the district court's unprecedented adversity analysis, the sanctions order still cannot stand because it punishes Plaintiffs' counsel for advancing a bona fide legal position on a genuinely novel legal question. This Court has long recognized that Rule 11 sanctions are reserved for claims that are "objectively frivolous." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). Sanctions are appropriate only when a claim has "no reasonable chance of success" and "cannot be advanced as a reasonable argument to change existing law." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

The district court's own analysis belies any claim that the adversity question was so obvious as to be sanctionable. The district court characterized the case as "*sui generis*"; acknowledged that "[a]t first glance, the Complaint seemingly satisfies Article III"; and devoted many pages to resolving the question. *Trump*, 836 F. Supp. 3d at 1233, 1238–53. The court also found it necessary to appoint multiple *amici* to address what it called "the unprecedented jurisdictional questions presented by this case." *Id.* at 1261 n.69. Those court-appointed *amici* concluded that at least part of "the adversity inquiry likely cannot be concluded at this time." D. Ct. Dkt. 45, at 14. A legal question so difficult that it required a district court judge to request extensive briefing, appoint multiple *amici*, and write dozens of pages of analysis cannot be so

"obvious and so insurmountable" that advancing a contrary view warrants career-altering sanctions. *Trump*, 836 F. Supp. 3d at 1253.

This Court has emphasized that it "prefer[s] that an attorney feel free to exercise [his] judgment without fear of reprisals should his lawsuit miscarry." *Davis*, 906 F.2d at 538. "Rule 11 is intended to deter claims with *no* factual or legal basis at all"; it does not authorize punishment merely because a lawyer advances a "creative" claim that ultimately proves unsuccessful. *Id.* As explained below, to hold otherwise would chill precisely the type of good-faith advocacy that our adversarial system depends upon.

That principle forecloses sanctions here. Plaintiffs did not advance frivolous or baseless claims. They invoked a congressionally enacted statute, alleged concrete and genuine injuries, and supported their claims with legal arguments grounded in Supreme Court precedent. The ultimate success of the claims is not the question under Rule 11 and this Court's precedents. At most, Plaintiffs presented claims that the district court disagreed with—not claims "with no factual or legal basis at all." *Id.* (emphasis omitted). Rule 11 does not permit a court to convert that disagreement into punishment.

### C. Seeking a settlement of genuinely asserted statutory claims is a proper purpose.

The district court's finding that Plaintiffs sued to achieve a "predetermined outcome" is equally flawed and rests on a mischaracterization of the facts. *Trump*, 836 F. Supp. 3d at 1255.

"[M]ost civil cases settle." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 695 (11th Cir. 2010) (Tjoflat, J., concurring in part and dissenting in part). Filing suit with the expectation that litigation will produce a negotiated resolution is a normal part of civil litigation in America. *See Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*, 2026 WL 1498257, at *4 (6th Cir. May 28, 2026) ("Settlement is an ordinary and expected form of success in litigation."). Were it otherwise, billboard companies in major metropolitan areas might go out of business.

The federal government itself routinely settles claims, including claims that have never been formally filed. *See* 28 U.S.C. § 2672 (authorizing pre-litigation settlement under the Federal Tort Claims Act); 26 U.S.C. § 7122 (authorizing compromise of tax matters). The Attorney General may "exercise broad discretion in determining when, and on what terms, settlement would best serve the interests of the United States." Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion, 23 Op. O.L.C. 126, 135 (1999). If the intent to settle were sanctionable, that discretion would be impossible to exercise.

The district court asserted that the parties sued to "gain the imprimatur of judicial legitimacy for a 'settlement' that had no viable basis in law or fact," so the court was somehow tricked into lending a "patina of legitimacy" to the settlement. *Trump*, 836 F. Supp. 3d at 1233, 1253. But a court cannot be tricked into legitimizing something it was never asked to review, approve, or act upon. The parties never asked the district court to do anything with respect to the settlement. Plaintiffs filed a complaint and voluntarily dismissed it with prejudice before any responsive filing was due. Under Rule 41, the notice of dismissal automatically divested the court of jurisdiction the moment it was filed. *See Est. of West v. Smith*, 9 F.4th 1361, 1366–67 (11th Cir. 2021). No consent decree was entered. No settlement was submitted to the court for approval. No order bound any party's future conduct or discretion on the merits of the claims.

Rule 11 targets "dilatory or abusive tactics" and "frivolous claims or defenses." *Donaldson*, 819 F.2d at 1556. It does not reach the ordinary litigation strategy of filing a well-founded claim, then resolving it through settlement before any substantive proceedings occur.

## III. The district court's order threatens the rule of law.

Though the district court (and the *amici* below) invoked rule-of-law concerns to justify sanctioning Plaintiffs' counsel, its order undermines the rule of law. *See, e.g.*, *Trump*, 836 F. Supp. 3d at 1246 & n.34, 1257, 1261 n.69, 1262. "[B]y

sanctioning parties and their lawyers for bringing debatable, long-shot complaints, courts risk chilling legal advocacy and citizens raising 'questions' under the guise of defending the rule of law"; "[e]ven if done inadvertently and with the best of intentions, such sanctions present a real and present danger to the rule of law." *Lake*, 130 F.4th at 1077 (Bumatay, J., dissenting) (quoting *Ariz. Republican Party v. Richer*, 547 P.3d 356, 370 (Ariz. 2024)).

First, the district court's disregard of Rule 11's procedures suggests a departure from neutral principles. Procedural rules "spell[] much of the difference between rule by law and rule by whim or caprice." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 179 (1951) (Douglas, J., concurring). And "insisting that courts comply with the law" "vindicate[s] . . . the law's own insistence on neutrality and fidelity to principle." *Hollingsworth*, 558 U.S. at 196. By ignoring Rule 11(c)(3)'s procedural protections—then doubling down by claiming that those protections can be bent out of existence—the sanctions order gives the appearance of treating certain litigants (and their counsel) with disfavor.

Second, the district court's approach will have significant *in terrorem* effects, discouraging vigorous advocacy on behalf of potentially controversial clients. This Court has made clear that Rule 11 "should not be used to deter potentially controversial or unpopular suits." *Donaldson*, 819 F.2d at 1561. And "[t]he Advisory Committee Note specifies that the rule 'is not intended to chill an attorney's enthusiasm

or creativity in pursuing factual or legal theories.'" *Id.* Rather, Rule 11 sanctions are an extraordinary remedy reserved for truly frivolous or abusive litigation—something "akin-to-contempt." *Kaplan*, 331 F.3d at 1256; *see Davis*, 906 F.2d at 538. They are not a mechanism for punishing litigants or counsel because their claims are controversial or because a judge disagrees with the viewpoints they advance. Using Rule 11 sanctions in this manner will discourage vigorous advocacy, deter attorneys from representing controversial clients, and deprive the courts of cutting-edge arguments. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363–64 (9th Cir. 1990) (en banc) (emphasizing that "[w]ere vigorous advocacy to be chilled by the excessive use of sanctions, wrongs would go uncompensated" as "[a]ttorneys, because of fear of sanctions, might turn down cases on behalf of individuals seeking to have the courts recognize new rights" or refuse cases that "are not likely to produce large damage awards" necessary to offset "the risk of unjustified awards of sanctions").

"The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship." *Mistretta v. United States*, 488 U.S. 361, 407 (1989). "Article III judges are to adjudicate cases without fear or favor, remaining scrupulously neutral toward all litigants—especially in politically charged cases where the public is watching." *Lake v. Gates*, 148 F.4th 1110, 1112–13 (9th Cir. 2025) (VanDyke, J., dissenting from denial of rehearing en banc). The district

court's departure from ordinary procedures and aggressive use of sanctions against a complaint with significant legal merit undermines that legitimacy. It raises the specter of motivated decisionmaking incompatible with the rule of law. This Court should reject the sanctions imposed below and thereby reaffirm that the judiciary is governed by neutral legal principles. That will help ensure that sanctions remain what they are intended to be: a narrow tool for addressing genuine litigation misconduct, not a weapon for suppressing disfavored advocacy.

## CONCLUSION

The Court should reverse.

Respectfully submitted,

*s/ Christopher Mills*

Christopher Mills
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

Gene P. Hamilton
Reed D. Rubinstein
Julie A. Strauss
Nicholas R. Barry
Crystal C. Clanton
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003

Counsel for *Amicus Curiae*

OCTOBER 5, 2026

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 5,634 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

3. This document has been scanned for viruses and is virus-free.

Dated: October 5, 2026

*s/ Christopher Mills*
Christopher Mills

## CERTIFICATE OF SERVICE

I, Christopher Mills, an attorney, certify that on this day the foregoing Brief was served electronically on all parties via CM/ECF.

Dated: October 5, 2026

*s/ Christopher Mills*
Christopher Mills