NO. 26-12692

IN THE

# United States Court of Appeals for the Eleventh Circuit

PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, THE TRUMP ORGANIZATION, LLC,

*Plaintiffs-Appellants, Cross-Appellees*,

ALEJANDRO BRITO, DANIEL EPSTEIN,

*Interested Parties-Appellants, Cross-Appellees*,

v.

INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE TREASURY,

*Defendants-Appellees, Cross-Appellants*,

THIRTY-FIVE FORMER FEDERAL JUDGES,

*Interested Parties-Appellees.*

On Appeal from the United States District Court for the Southern District of Florida, Case No. 1:26-CV-20609, District Judge Kathleen M. Williams

**APPELLANT DANIEL EPSTEIN'S TIME-SENSITIVE MOTION TO EXPEDITE CONSIDERATION AND DISPOSITION OF THE APPEAL**

*(Counsel's Information on Inside Cover)*

Christopher G. Oprison
Tal Aburos
DLA PIPER LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
(305) 423-8522
chris.oprison@dlapiper.com
tal.aburos@dlapiper.com

Rachel A.H. Horton
DLA PIPER LLP (US)
1650 Market Street
Suite 5000
Philadelphia, PA 19103
(215) 656-3300
rachel.horton@dlapiper.com

Josh Halpern
JH Legal PLLC
1100 H Street NW, Suite 840
Washington, DC 20005
(610) 405-5531
jhalpern@jhlegalpllc.com

*Counsel for Appellant Daniel Epstein*

*President Donald J. Trump v. Internal Revenue Service*
No. 26-12692

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rules 26.1 and 28(a)(1) of the Federal Rules of Appellate Procedure and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, counsel for Appellant hereby certify on behalf of Appellant that the Certificate of Interested Persons filed on October 19, 2026, remains correct.

*/s/ Christopher G. Oprison*
Christopher G. Oprison

October 21, 2026

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .......... C-1

TABLE OF CITATIONS .......... iii

INTRODUCTION .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 8

I. Good Cause Exists Because Delay Threatens Concrete Professional Consequences and Meaningful Appellate Review. .......... 8

II. The Requested Relief Is Narrow and Will Not Prejudice Any Party. .......... 12

CONCLUSION .......... 13

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Acheron Cap., Ltd. v. Mukamal*,
No. 22-12216 (11th Cir. July 29, 2022).....11

*In re Gonzalez*,
No. 12-MC-60047, 2012 WL 12895515 (S.D. Fla. Jan. 23, 2012).....11

*Kirkland v. Nat'l Mortg. Network, Inc.*,
884 F.2d 1367 (11th Cir. 1989).....9

*Kleiner v. First Nat'l Bank of Atlanta*,
751 F.2d 1193 (11th Cir. 1985).....11

*Schlumberger Techs., Inc. v. Wiley*,
113 F.3d 1553 (11th Cir. 1997).....9

*TransUnion Risk & Alt. Data Sols., Inc. v. MacLachlan*,
No. 15-10985 (11th Cir. Apr. 2, 2015).....11

**Statute**

28 U.S.C. § 1657(a).....8

**Rule**

11th Cir. R. 27-1, I.O.P. 3.....8

# INTRODUCTION

The wrongful Sanctions Order is no longer only a cloud over Mr. Epstein's professional reputation. It is now causing concrete, real-world, deeply damaging consequences: it is the asserted basis for a formal effort to place Mr. Epstein on administrative leave from his position as Interim Dean of the Florida International University ("FIU") College of Law while this appeal remains pending. On October 13, 2026, FIU's Faculty Senate improperly adopted a statement urging the University administration to place Mr. Epstein on administrative leave during the pendency of this appeal. If implemented, that action would wrongly strip Mr. Epstein of the authority and responsibilities of the deanship, while the unlawful Sanctions Order precipitating that action remains under appellate review. These circumstances did not exist when the appeal was filed or when this Court considered Appellants' request for a stay.

The significance is straightforward: the duration of appellate review now has a concrete impact on its own. If Mr. Epstein is placed on leave while his challenge to the Sanctions Order remains unresolved, he will be unable to actively serve as Interim Dean and exercise the responsibilities and authority of that position before this Court has an opportunity to determine whether the sanction was lawfully imposed. It was not. The lost period in that leadership role, and the attendant professional and institutional harm, cannot be restored by a later favorable decision.

At the same time, the one-year *pro hac vice* restriction continues to run, creating the separate risk that it will substantially or entirely run its course before this Court has an opportunity to review it on the merits.

Mr. Epstein now seeks narrow relief. He does not ask this Court to stay the Sanctions Order or to direct FIU, a nonparty, to take or refrain from any action. He asks only for prompt appellate review before the consequences wrongly flowing from that Order overtake the appellate process itself. Specifically, he asks that this Court promptly consider and resolve this appeal once briefing is complete. The circumstances creating that need materialized only recently, and expedition can be accomplished without unnecessarily disrupting the existing briefing schedule. Good cause therefore exists for expedition.

## BACKGROUND

### A. The Improper *Sua Sponte* Sanctions Order.

Plaintiffs sued the Internal Revenue Service and the Department of the Treasury (together, the "Government") under 26 U.S.C. § 7431 for the unauthorized disclosure of their confidential tax return information. Doc.1.[1] On May 18, 2026, Plaintiffs voluntarily dismissed the case with prejudice. Doc.52. That day, the district court cancelled the remaining briefing deadlines and closed the case.

[1] Appeal.Doc.# refers to this Court's docket entries, and the black footer page numbers are cited. Doc.# refers to district court docket entries, with page references to the blue header generated by the filing system.

Doc.62. Nine days later, thirty-five non-party former federal judges ("Former Judges") moved under Rule 60 to improperly reopen the case, falsely alleging fraud on the court. Doc.63. They requested no professional sanctions. *Id.* at 14-18. On May 29, 2026, the district court directed Plaintiffs alone to brief questions of adversity and alleged collusion; it did not order Mr. Epstein to show cause, identify any conduct by him as potentially sanctionable, or give notice that professional sanctions were under consideration. Doc.65 at 3.

On July 13, 2026, the district court issued its erroneous 56-page order, *sua sponte* sanctioning Plaintiffs and their counsel, Mr. Daniel Epstein and Mr. Alejandro Brito (collectively "Attorneys"). Doc.106 ("Sanctions Order"). The Sanctions Order rested on the mistaken premise that President Trump's supervision of the Executive Branch made Plaintiffs and Defendants "one, a fully realized unitary interest," erroneously rendering the lawsuit "non-adversarial, collusive, and jurisdictionally improper." *Id.* at 37-38. The district court called that issue "unprecedented," appointed six *amici* to brief it, and devoted nearly thirty pages to resolving it—yet still erroneously declared that its conclusion was "so obvious and so insurmountable" that advancing a different view warranted career-altering punishment for the Attorneys. *Id.* at 9-38, 52 n.68, 53 n.69.

The district court then wrongly treated ordinary litigation conduct—including settlement, unpressed defenses, and counsel's professional ties and admission

status—as evidence of collusion and improper motive, none of which existed. *Id.* at 24-38. The district court identified no pre-filing agreement (there was none), and none of the judicially noticed or extrarecord materials on which it improperly relied established who entered such an agreement, what it required, or how any Plaintiff or Attorney participated in it (because none existed). *See id.*

Based on that improper record, the district court wrongly and unconstitutionally forbade the President, the Government, and broad categories of associated persons from referring to the Settlement Agreement in official proceedings, wrongly referred Mr. Brito to The Florida Bar, and, relevant here, improperly barred Mr. Epstein from seeking *pro hac vice* admission in the Southern District of Florida for one year. *Id.* at 46-47. Notably, no Party or *amicus* group requested the sanctions imposed, and no sanctions proceeding was ever lawfully commenced.

As to Mr. Epstein, the district court improperly imposed that punishment even though his name appeared on the Complaint only with a notation that a *pro hac vice* application was forthcoming. *Id.* at 30 & n.41. The district court wrongfully inferred from Mr. Epstein's *pro hac vice* applications in unrelated matters that he somehow knew that he would never need to litigate this case before the district court (which was not true), while shockingly conceding that it could "only surmise" his motive. *Id.* at 30-31 & n.42. Yet, the district court never ordered Mr. Epstein to show cause,

never identified a professional rule he violated, and never gave him a hearing before imposing a draconian, wrongful District-wide practice prohibition. Appeal.Doc.67 at 55-57; *see also* Declaration of Daniel Z. Epstein ("Epstein Decl."), attached hereto, ¶¶ 6, 11-12. That was error on error. It was also factually wrong. Mr. Epstein attests that there was no pre-filing agreement or collusive arrangement concerning the filing or disposition of the underlying action; that he fully expected to litigate the merits of this case; and that him not filing the contemplated *pro hac vice* application was an administrative oversight. Epstein Decl. ¶¶ 8-10.

**B. The Appeal and Stay Proceedings.**

Appellants noticed this appeal on July 31, 2026, and immediately sought expedited relief in the district court, stating (among other things) that if the appeal took twelve months, the *pro hac vice* ban would "run its full course" before this Court could review it. Doc.113; Doc.114 at 18. Although Defendants did not oppose a stay, the district court declined to expedite its consideration and instead solicited a response from the court-appointed *amici*. Doc.115; Doc.120. With the stay motion still pending below, Appellants moved for a stay in this Court on August 12. Appeal.Doc.8 ("Stay Motion").

On September 14, the district court denied a stay, erroneously reasoning that Appellants had presented no "evidence to substantiate" any "actual and imminent harm" to Mr. Epstein, because the restriction applied only to future *pro hac vice*

applications. Doc.130 at 16-17. Two weeks later, on September 28, Appellants filed their opening merits brief. Appeal.Doc.67. The following day, this Court denied the Stay Motion. Appeal.Doc.68.

Merits briefing remains ongoing while the one-year restriction continues to run. The Former Judges have needlessly moved to extend their principal-brief deadline to December 7, 2026, Appeal.Doc.79, which would place the case nearly five months into Mr. Epstein's one-year restriction before principal briefing is complete. Appellants opposed that extension on October 19, emphasizing the need for prompt resolution of the appeal. Appeal.Doc.83 at 1-2, 6-7.

**C. The Faculty Senate's Call for Administrative Leave.**

Mr. Epstein serves as Interim Dean of FIU College of Law, located in the very District from which he was sanctioned. Epstein Decl. ¶ 13. On October 13, 2026, two weeks after this Court denied the Stay Motion, FIU's Faculty Senate called for Mr. Epstein to be placed on administrative leave "pending the outcome of his appeal" and to return as Interim Dean "[o]nly if he is cleared of the findings of professional misconduct." *Id.* ¶¶ 14-16 & Ex. B at 1. That action expressly rests on the unlawful Sanctions Order: supporting materials relied on the district court's erroneous findings of "bad faith," "improper purpose," and "manipulat[ion] [of] the judicial process," and asserted resulting harm to the law school's reputation and operations. *Id.* ¶¶ 17-18 & Exs. A at 1, C at 1-2 ¶¶ 2-3, 8.

The damaging consequences Appellants warned about have now materialized. The improper Sanctions Order no longer affects only Mr. Epstein's ability to appear *pro hac vice*. It is now being wrongly invoked to challenge his fitness to lead a law school in the very District that sanctioned him. The erroneous Sanctions Order is the stated basis for a call to remove him from active leadership pending this appeal; Mr. Epstein has been unfairly and publicly characterized as the "poster boy for ethical corruption"; and the anticipated process for his permanent appointment as Dean, previously expected to proceed by the end of the Fall 2026 semester, has been postponed. *Id.* ¶¶ 13-23 & Ex. E at 3.

Appellants warned of precisely this harm, explaining that the unlawful Sanctions Order threatened "significant, unfounded public attacks on [Mr. Epstein's] reputation and professional standing that cannot be fully remedied through a later appellate victory." Doc.114 at 18. The district court wrongly rejected that concern because the record then contained no evidence of "actual and imminent harm" or reputational injury, and it incorrectly viewed the sanction as "narrowly tailored" because it governed only future *pro hac vice* applications and would affect "three matters, at most." Doc.130 at 15-17. Those premises no longer hold.

This Court likewise considered a materially different record when it denied a stay as to the individual sanctions against Mr. Epstein and Mr. Brito. The Court cited "significant doubts about appellate jurisdiction," Appeal.Doc.68 at 15, and

observed that Appellants "did not submit or offer any evidence" to rebut the district court's collusion and bad-faith findings, *id.* at 19-20. The record is now materially different. Mr. Epstein provides sworn testimony addressing the factual premises underlying those findings, and the Faculty Senate materials provide documentary support of concrete professional consequences arising after the stay proceedings. Epstein Decl. ¶¶ 9-10, 14-24 & Exs. A-F.

Those consequences are concrete and ongoing. The unlawful Sanctions Order is now being wrongly used as the basis to remove Mr. Epstein from active leadership while his appeal remains pending, and the Faculty Senate has expressly conditioned his return on being "cleared" of the challenged findings. *Id.* ¶¶ 18-20 & Exs. B-C. Absent prompt appellate review, Mr. Epstein may suffer the very professional consequences Appellants warned would not be fully remediable through a later appellate victory, before this Court can decide whether the findings producing those consequences were proper (they were not).

## ARGUMENT

### I. Good Cause Exists Because Delay Threatens Concrete Professional Consequences and Meaningful Appellate Review.

This Court may expedite an appeal "upon motion and for good cause shown." 11th Cir. R. 27-1, I.O.P. 3; *see also* 28 U.S.C. § 1657(a) ("the court shall expedite the consideration of … any other action if good cause therefor is shown"). Good cause exists because new circumstances arising during this appeal now threaten

immediate and concrete professional harm to Mr. Epstein, while the time-limited sanction against him continues to run.

***First***, the erroneous Sanctions Order now threatens Mr. Epstein's deanship. On October 13, 2026, FIU's Faculty Senate formally called for Mr. Epstein to be placed on administrative leave from his position as Interim Dean while this appeal remains pending. The administration is now actively considering that request. Epstein Decl. ¶¶ 14-16, 19. That concrete employment threat arose only after this appeal was filed and the Stay Motion was decided. Mr. Epstein now faces losing the authority and responsibilities of the deanship before this Court can determine whether the sanction precipitating that action was properly imposed.

That concern is particularly significant in the context of attorney discipline. This Court has recognized that professional discipline may "hang over [an attorney's] name and career for years to come." *Kirkland v. Nat'l Mortg. Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989); *see also Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1562 (11th Cir. 1997) (the power to exclude attorneys "ought always to be exercised with great caution" and "never … except in clear cases of misconduct"). That concern is real: the challenged sanction is now being wrongly invoked against Mr. Epstein in the professional leadership position he currently holds, even though the sanction improperly rests on a flawed inference he had no opportunity to contest. The district court never ordered Mr. Epstein to show cause,

gave him notice that his professional standing was at risk, or afforded him a hearing. Doc.65 at 3; Appeal.Doc.67 at 40-42, 55-57. Nor did the district court identify any evidence that Mr. Epstein participated in any collusive arrangement, because there was none. Epstein Decl. ¶¶ 8-10. He signed and filed nothing in the district court. *Id.* ¶ 3. Instead, the district court shockingly acknowledged that it could "only surmise" that Mr. Epstein knew he would never need to litigate the case, based on his *pro hac vice* applications in unrelated matters. Doc.106 at 30-31 & n.42; *see* Appeal.Doc.67 at 55-57. Surmise is not evidence, much less a sound basis for an unjust sanction now threatening concrete professional consequences.

Mr. Epstein further attests that there was no pre-filing agreement or collusive arrangement, that he fully expected to litigate the merits of the action, and that he did not know or expect that the matter would be voluntarily dismissed by May 18, 2026. Epstein Decl. ¶¶ 9-10. The professional consequences now confronting him thus stem from improper findings premised on an inference that his sworn testimony directly refutes, and that he had no opportunity to rebut before sanctions were imposed.

***Second***, delay threatens to defeat meaningful relief. The one-year *pro hac vice* ban expires on July 13, 2027. If the appeal proceeds on an ordinary timeline, Mr. Epstein may serve all or substantially all of the restriction before this Court reaches the merits. The continuing professional consequences of the wrongful

Sanctions Order keep the controversy live. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1200 n.14 (11th Cir. 1985) (disciplinary action and disqualification "portend[] adverse effects upon counsel's careers and public image"). But a fully expired restriction is a punishment already served, and relief that arrives after the fact is no relief at all. *See In re Gonzalez*, No. 12-MC-60047, 2012 WL 12895515, at *1 (S.D. Fla. Jan. 23, 2012) (staying attorney suspension that otherwise "may be largely complete" before appellate review).

At the same time, the collateral consequences extend beyond the *pro hac vice* restriction itself. Any administrative leave would remain in place absent a favorable ruling on the erroneous Sanctions Order, even after the restriction expires. Epstein Decl. ¶¶ 15, 20 & Ex. B at 1. FIU's contemplated employment action turns on the district court's erroneous findings of professional misconduct, not merely the duration of the one-year *pro hac vice* restriction. *Id.* ¶¶ 15, 17-24. Expedition would therefore permit meaningful review of the time-limited restriction before it expires and of the underlying findings before their deeply damaging professional consequences become further entrenched. *See, e.g.*, *TransUnion Risk & Alt. Data Sols., Inc. v. MacLachlan*, No. 15-10985, Doc.27-2 (11th Cir. Apr. 2, 2015) (expediting merits consideration); *Acheron Cap., Ltd. v. Mukamal*, No. 22-12216, Doc.29 (11th Cir. July 29, 2022) (same).

These circumstances present precisely the timing problem that warrants expedition. Without prompt review, Mr. Epstein will suffer the professional consequences of the wrongly entered, and challenged, Sanctions Order while simultaneously serving all or substantially all of the sanction itself. A later favorable decision cannot return the months lost in the interim. Administrative leave would prevent Mr. Epstein from actively serving as Interim Dean, exercising the authority of that office, leading the College of Law, and carrying out the academic and administrative responsibilities of the deanship. Epstein Decl. ¶¶ 20-21. Even a complete victory on appeal could not give those lost months of leadership back to him or fully undo the professional and reputational harm caused by placing him on administrative leave based on the challenged findings. *Id.*

## II. The Requested Relief Is Narrow and Will Not Prejudice Any Party.

Mr. Epstein seeks narrow relief. He does not ask the Court to stay the Sanctions Order, alter the *status quo*, or otherwise revisit the Court's prior stay ruling. He asks only for expedited merits consideration once briefing is complete. Because the professional consequences now threatening him flow from the erroneous sanctions findings, not merely the one-year *pro hac vice* restriction, meaningful review necessarily encompasses the underlying sanctions determination. Expedition requires no change to the existing briefing schedule, imposes no additional briefing burden, and leaves the Court full discretion regarding oral

argument. Moreover, the actual Parties to this appeal—Plaintiffs-Appellants and Defendants-Appellees/Cross-Appellants—agree to the requested relief. Thus, expedition will prejudice no Party.

The prejudice from delay, by contrast, falls squarely on Mr. Epstein. While the appeal proceeds, the one-year *pro hac vice* restriction continues to run, and Mr. Epstein faces the prospect of being wrongly placed on administrative leave and stripped of the authority and responsibilities of his deanship before this Court reviews the erroneous sanction precipitating those consequences. Expedition therefore preserves the Court's ability to afford meaningful relief without altering the *status quo* or imposing any additional burden on the Parties.

Nor does this Motion seek reconsideration of the Court's prior stay ruling. The Stay Motion sought to suspend the Sanctions Order while the appeal proceeded; this Motion leaves the Sanctions Order fully in effect, and asks only that the Court reach the merits promptly in light of concrete professional consequences that only recently materialized after the stay proceedings.

## CONCLUSION

For the foregoing reasons, Mr. Epstein respectfully requests that the Court grant this Motion and expedite consideration and disposition of the appeal upon completion of briefing; direct that the existing briefing schedule not be further extended absent extraordinary circumstances; resolve the appeal before expiration

of the one-year *pro hac vice* ban entered on July 13, 2026 (Doc.106); and, if the Court determines that oral argument is warranted, place the appeal on the earliest practicable oral-argument calendar.

October 21, 2026

Respectfully submitted,

*/s/ Christopher G. Oprison*

Christopher G. Oprison
Tal Aburos
DLA PIPER LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8522
chris.oprison@dlapiper.com
tal.aburos@dlapiper.com

Rachel A.H. Horton
DLA Piper LLP (US)
1650 Market St., Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
rachel.horton@dlapiper.com

*Counsel for Appellant Daniel Epstein*

Josh Halpern
JH Legal PLLC
1100 H Street NW, Suite 840
Washington, DC 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify, on this 21st day of October 2026, that this Motion complies with the Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This Motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4, this Motion contains 3,041 words.

2. This Motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this Motion has been prepared in a proportionally spaced typeface using Microsoft 365 in 14-point Times New Roman.

*/s/ Christopher G. Oprison*
Christopher G. Oprison

October 21, 2026

## CERTIFICATE OF SERVICE

I certify that on October 21, 2026, I caused the foregoing document to be electronically filed using the Court's CM/ECF system, which will send notification of such filing to all current counsel of record.

*/s/ Christopher G. Oprison*
Christopher G. Oprison

October 21, 2026

NO. 26-12692

IN THE

# United States Court of Appeals for the Eleventh Circuit

PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, THE TRUMP ORGANIZATION, LLC,

*Plaintiffs-Appellants, Cross-Appellees*,

ALEJANDRO BRITO, DANIEL EPSTEIN,

*Interested Parties-Appellants, Cross-Appellees*,

v.

INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE TREASURY,

*Defendants-Appellees, Cross-Appellants*,

THIRTY-FIVE FORMER FEDERAL JUDGES,

*Interested Parties-Appellees.*

On Appeal from the United States District Court for the Southern District of Florida, Case No. 1:26-CV-20609, District Judge Kathleen M. Williams

**DECLARATION OF DANIEL EPSTEIN IN SUPPORT OF TIME-SENSITIVE MOTION TO EXPEDITE CONSIDERATION AND DISPOSITION OF THE APPEAL**

*(Counsel's Information on Inside Cover)*

Christopher G. Oprison
Tal Aburos
DLA PIPER LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
(305) 423-8522
chris.oprison@dlapiper.com
tal.aburos@dlapiper.com

Rachel A.H. Horton
DLA PIPER LLP (US)
1650 Market Street
Suite 5000
Philadelphia, PA 19103
(215) 656-3300
rachel.horton@dlapiper.com

Josh Halpern
JH Legal PLLC
1100 H Street NW, Suite 840
Washington, DC 20005
(610) 405-5531
jhalpern@jhlegalpllc.com

*Counsel for Appellant Daniel Epstein*

# DECLARATION

I, Daniel Z. Epstein, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I submit this declaration in support of my Time-Sensitive Motion to Expedite Consideration and Disposition of the Appeal ("Motion"). I have personal knowledge of the facts set forth below and, if called as a witness, could and would testify competently to them.

## A. Background and Sanctions Order

2. I was retained to represent Plaintiffs President Donald J. Trump, Donald J. Trump Jr., Eric Trump, and The Trump Organization, LLC (collectively, "Plaintiffs"), in the underlying action styled *Trump, et al. v. Internal Revenue Service, et al.*, Case No. 1:26-cv-20609-KMW, filed in the United States District Court for the Southern District of Florida.

3. The Complaint was filed on January 29, 2026. Doc.1. My name appeared on the Complaint as counsel for Plaintiffs, with an indication that my application for admission *pro hac vice* was forthcoming. *Id.* at 27. Although my name appeared on the Complaint, I did not sign it, and I did not personally sign or file any pleading, motion, or other paper with the district court in the underlying action.

4. On May 18, 2026, Plaintiffs voluntarily dismissed the action with prejudice. Doc.52. That same day, the district court cancelled the remaining deadlines and closed the case. Doc.62.

5. On May 27, 2026, thirty-five non-party former federal judges ("Former Judges") moved under Rule 60 to improperly reopen the closed case, alleging that the litigation and resulting settlement were collusive and constituted a fraud on the court. Doc.63. The Former Judges did not request that any professional sanction be imposed on me. *See id.* at 14-18.

6. On May 29, 2026, the district court directed Plaintiffs alone to address, among other things, the allegations of collusion, whether the parties were truly adverse, and whether the dismissal had been premised on deception by the parties. Doc.65 at 3. That order did not direct me to show cause, did not identify any conduct by me as potentially sanctionable, and did not notify me that professional sanctions against me were under consideration. *See id.*

7. On July 13, 2026, the district court entered a 56-page order *sua sponte* and wrongly sanctioning Plaintiffs and their counsel, including me. Doc.106 ("Sanctions Order"). Among other things, the district court erroneously found that the action was "non-adversarial, collusive, and jurisdictionally improper," had been brought "for an improper purpose," and was intended "to manipulate the judicial

process." *Id.* at 38, 43, 50-52. The district court further erroneously found that Plaintiffs "acted in bad faith." *Id.* at 52.

8. As to me specifically, the district court relied on my failure to file the contemplated *pro hac vice* application. The Sanctions Order observed that no application was filed and, based on that circumstance and my *pro hac vice* applications in unrelated matters, stated that the district court "can only surmise that Mr. Epstein was aware that he would never need to appear and litigate the merits of Plaintiffs' claims." Doc.106 at 30-31 & n.42.

9. That inference was wrong. The lack of filing of the contemplated *pro hac vice* application was an administrative oversight. I did not intentionally refrain from seeking admission because I expected the case to settle (I did not expect so) or because I believed that I would never need to appear and litigate the merits of Plaintiffs' claims (I did not hold such belief). At the time the action was filed, I fully expected to litigate the merits of the action and did not know or expect that the action would be voluntarily dismissed by May 18, 2026.

10. There was no pre-filing agreement or collusive arrangement with Defendants, the Department of Justice, or any government attorney concerning the settlement or ultimate disposition of the lawsuit. I did not participate in any such arrangement, and before the action was filed I had no communications with any government attorney regarding a potential settlement. I was not, and am not, aware

of any agreement or understanding between Plaintiffs and the Government concerning a settlement or predetermined disposition of the action, and I did not participate in the action for the purpose of lending judicial legitimacy to any predetermined settlement or outcome, which there was none.

11. Before the Sanctions Order was entered, I was never ordered to show cause why sanctions should be imposed against me personally, and I did not understand that the district court was considering professional sanctions against me. I was not afforded a hearing or an opportunity to testify concerning why my *pro hac vice* application had not been filed, whether I expected to litigate the action, or whether I had participated in any pre-filing or collusive arrangement (which did not exist). The district court therefore did not hear my testimony on those subjects before wrongly drawing the inference described above.

12. As a sanction, the district court ordered that all of my future applications for admission *pro hac vice* in the Southern District of Florida "will be DENIED for one year or until further order of this Court." Doc.106 at 47. No party or *amicus* group requested that sanction. The Sanctions Order was entered on July 13, 2026, and, absent further order of the district court, the one-year restriction is therefore scheduled to expire on July 13, 2027.

**B. Professional Consequences of the Sanctions Order**

13. On August 10, 2026, I assumed my role as Interim Dean of the Florida International University ("FIU") College of Law, which is located in Miami, Florida, within the Southern District of Florida. As Interim Dean, I oversee the College of Law's academic programs, faculty, budget, administration, and student affairs and exercise the responsibilities and authority associated with leading the law school.

14. On October 13, 2026, the FIU Faculty Senate held a meeting whose published agenda included a Faculty Senate Steering Committee motion to approve a statement regarding me in my capacity as Interim Dean of the College of Law (the "Statement"). A true and correct copy of the meeting agenda is attached hereto as **Exhibit A**. The agenda identified both the proposed Statement and a supporting "Summary and Chronology." Ex. A at 1 (Item VII.B.i).

15. At that meeting, the Faculty Senate voted to adopt the Statement, which urged the University administration to place me on administrative leave "pending the outcome of [my] appeal of the court's order" and stated that "[o]nly if [I am] cleared of the findings of professional misconduct should [I] return to the position of interim dean." Ex. B at 1; *see also* Ex. A at 1. A true and correct copy of the Statement is attached hereto as **Exhibit B**.

16. The Faculty Senate's vote and adoption of the Statement were also publicly reported shortly after the meeting. The report stated that the Faculty Senate

passed the Statement, with only two senators voting against it. Ex. D at 3. A true and correct copy of the *PantherNOW* article reporting the Faculty Senate's action is attached hereto as **Exhibit D**.

17. Materials submitted in connection with the Faculty Senate's consideration of the Statement included "Scott Norberg's Summary of Relevant Facts and Chronology." Ex. A at 1. A true and correct copy of the Summary and Chronology is attached hereto as **Exhibit C**.

18. The Summary and Chronology expressly relied on the Sanctions Order. Among other things, it stated that the district court found that I "filed the lawsuit 'in bad faith' 'for an improper purpose' 'to manipulate the judicial process,'" characterized the *pro hac vice* sanction as "akin to suspension from practice," and asserted that the Sanctions Order and related proceedings negatively affect the College of Law's reputation, "faculty recruitment, student recruiting, student pride, graduate job placement, alumni pride and support, and possibly fundraising." Ex. C at 1-2 ¶¶ 2-3, 8.

19. FIU's administration is now actively considering the Faculty Senate's request that I be placed on administrative leave. To my knowledge, the administration has not yet issued a final decision concerning my placement on administrative leave.

20. If I am placed on administrative leave, I will be unable to actively serve as Interim Dean, exercise the authority of that office, lead the College of Law, or carry out the academic and administrative responsibilities of the deanship. The Statement calls for that leave to remain in place pending this appeal and for me to return as Interim Dean only if I am cleared of the findings of professional misconduct. Ex. B at 1. Even if I ultimately prevail on appeal, I cannot recover the intervening months during which I was unable to lead the College of Law and exercise the responsibilities and authority of the deanship.

21. Administrative leave would also further affect my professional reputation and standing. The Sanctions Order and my position as Interim Dean have already generated public criticism and media coverage concerning my professional conduct. If I am placed on leave because of the Sanctions Order while this appeal remains pending, that action would become an additional public professional consequence of the challenged findings. Even if I ultimately prevail on appeal, the reputational effects suffered in the interim cannot be fully undone.

22. The Sanctions Order has also affected the anticipated process concerning my potential permanent appointment as Dean. Before these developments, I expected to be presented to the law school faculty for consideration as permanent Dean by the end of the Fall 2026 semester. On September 18, 2026,

Provost Elizabeth Béjar informed me that the process for consideration as permanent Dean will be delayed until the sanctions are resolved.

23. The Sanctions Order has also become a basis for publicly questioning my professional ethics and fitness to lead the College of Law. For example, a member of the FIU College of Law dean search committee and founding director of the law school's Trial Advocacy Program, publicly, and incorrectly, characterized me as the "poster boy for ethical corruption." Ex. E at 3. A true and correct copy of the *Miami Herald* article reporting that statement is attached hereto as **Exhibit E**.

24. The consequences of the Sanctions Order extend well beyond the one-year *pro hac vice* restriction. The Sanctions Order now threatens my continued service as Interim Dean, has affected the anticipated process concerning my potential permanent appointment as Dean, and has affected my professional standing within the FIU and legal communities. Members of the local legal community have likewise publicly relied on the Sanctions Order to criticize my appointment, including two local attorneys who recently urged FIU in the *Miami Herald* to "mov[e] quickly to correct" it. Ex. F at 3-4. A true and correct copy of that published letter is attached hereto as **Exhibit F**. These consequences will continue while this appeal remains unresolved.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 21st day of October, 2026.

*/s/ Daniel Z. Epstein*
Daniel Z. Epstein

# EXHIBIT A

# Florida International University
# Faculty Senate Meeting
## Tuesday, OCTOBER 13, 2026 – 1:00 PM to 3:00 pm
### MARC PAVILLION-2ND FLOOR - MODESTO MAIDIQUE CAMPUS
### HOSPITALITY MANAGEMENT 211 – BISCAYNE BAY CAMPUS

| | | |
|---|---|---|
| **I.** | **Approval of the Agenda** | **Noël Barengo** |
| **II.** | **Approval of Faculty Senate Minutes of September 22, 2026** | **Noël Barengo** |
| **III.** | **Chairperson's Report** | **Noël Barengo** |
| **IV.** | **Provost's Report** | **Elizabeth Béjar** |
| **V.** | **Governmental Liaison Report** | **David Chatfield** |
| **VI.** | **UFF-FIU Report – UFF FIU President** | **Marc Weinstein** |

**VII. Discussion/Action Items:**

A) Faculty Senate Academic Policies and Personnel Committee Motion – Yasmin Campbell, Chair, and Katherine Perez, member

**i. Motion**: The Faculty Senate **approves** the Administrative Outcomes – Policy #350.030
(Link to: : Revised policy #350.030 / Clean copy)

B) Faculty Senate Steering Committee Motion – Amy Paul-Ward, Vice-Chair

**i. Motion**: The Faculty Senate **approves** the statement regarding the Interim Dean of the Law School
(Link to: Statement regarding Interim Dean-Law School / Summary and Chronology)

**ii. Motion**: The Faculty Senate **approves** the Resolution Supporting FIU Student Media (PantherNow/ROAR Radio) (Faculty Contact: Neil Reisner)
(Link to: Resolution Supporting FIU Student Media)

**VIII. Reports:**

A) Ad Hoc Committee on Academic Freedom, Martha Schoolman, Chair

| | | |
|---|---|---|
| **IX.** | Unfinished Business | Noël Barengo |
| **X.** | New Business | Noël Barengo |
| **XI.** | Adjourn | Noël Barengo |

**Announcements**

The next *Faculty Senate* meeting is on Tuesday, **October 27, 2026**,
at **1:00pm**, MARC Pavillion-2nd Floor (MMC) / HM 249-(BBC)
All are invited.
The next meeting of the *Steering Committee* is on Tuesday, **October 20, 2026,**
at 1:00pm Via Zoom Conferencing.

*Note to Senators*:
It is the responsibility of each Senator to specifically notify the Alternate of the unit of any anticipated absence. To find your College's/School's Alternate: Link: List of Senators & Alternates.

Should you need an ADA accommodation to participate in a University event, program, or activity or need to request materials in an accessible format, please contact FIU's Office of Civil Rights Compliance and Accessibility (CRCA) at 305-348-2785 or *accommodations@fiu.edu*. All requests for ADA accommodation or accessible materials for this event must be submitted to CRCA at least seven (7) business days prior to the event or at the earliest possible opportunity.

# EXHIBIT B

Scott Norberg

Statement

Considering the U.S. District Court's order sanctioning law school interim dean Daniel Z. Epstein for professional misconduct, the Faculty Senate urges the University administration to place Epstein on administrative leave pending the outcome of his appeal of the court's order. Only if he is cleared of the findings of professional misconduct should he return to the position of interim dean.

# EXHIBIT C

Scott Norberg's Summary of Relevant Facts and Chronology

1. Daniel Epstein applied to be dean of the College of Law last spring, and the provost-appointed search committee deemed him unqualified even for an initial screening interview. The search committee recommended three well-qualified finalists, but the University administration declared a failed search and named Epstein anyway.
2. Shortly after he was named interim dean, the federal district court in Miami, acting on a motion by 35 former federal judges, issued a blistering order sanctioning Epstein for professional misconduct in his representation of Donald Trump in Trump's lawsuit against the federal government. See the court's order here: https://storage.courtlistener.com/recap/gov.uscourts.flsd.706172/gov.uscourts.flsd.706172.106.0_3.pdf
3. The federal district court found that Epstein filed the lawsuit "in bad faith" "for an improper purpose" "to manipulate the judicial process." The order bans Epstein from practicing in the District Court for the Southern District of Florida for one year, a sanction akin to suspension from practice.
4. Epstein filed an emergency motion in the U.S. Court of Appeals for the Eleventh Circuit seeking to stay the sanctions order. Epstein's own lawyers argued that the sanctions "could well hang over his name and career for years to come," and that "[t]hat concern is especially significant given Mr. Epstein's role as a new law school dean in the very district he was sanctioned. Findings of this nature do not merely restrict his ability to practice; they wrongly impugn his integrity, professional judgment, and fitness to lead a law school."
5. The Eleventh Circuit panel unanimously denied the stay, finding that Epstein failed to make a strong showing that he was likely to succeed on appeal with respect to the district court's findings that he acted in bad faith.
6. The 35 former federal judges have continued to represent the public interest in the case in both the district court and Eleventh Circuit.
7. Looking ahead, the future public flare-ups that are possible if not likely include:
   - Motions, briefs, and oral arguments in the Eleventh Circuit.
   - Further proceedings in the district court, including on whether to award "further relief based on fraud perpetrated on the court" (quoting the Eleventh Circuit). These proceedings could involve hearings with witnesses including Epstein.
   - Disciplinary/disbarment proceedings in the three jurisdictions where Epstein is a member of the bar – Maryland, D.C., and Texas
   - As things stand now and for the foreseeable future, the law school cannot even invite judges from the Eleventh Circuit to appear at the College of Law because of the conflict posed by Epstein's appeal.
8. All of this negatively impacts the law school's reputation among other law schools, the legal profession, judges, and the community. It also negatively impacts faculty

recruitment, student recruiting, student pride, graduate job placement, alumni pride and support, and possibly fundraising.

# EXHIBIT D

# FIU Faculty Senate urges Interim Law Dean Daniel Z. Epstein to take administrative leave

panthernow.com/2026/10/15/fiu-faculty-senate-urges-interim-law-dean-daniel-z-epstein-to-take-administrative-leave

Candela Maceda October 15, 2026




**David Brown | Staff Writer**

FIU's Faculty Senate passed a statement urging the university's administration to place the Interim law school dean on administrative leave following federal court sanctions against him for professional misconduct.

On Oct. 13, the Senate met on the second floor of the MARC building to discuss College of Law Dean Daniel Z. Epstein's leave following federal court sanctions.

Scott Norberg, a College of Law senator, introduced a statement concerning Epstein to the Senate floor, in which he urged university administrators to place Epstein on leave while he appeals the court's order, to preserve the reputation of FIU and its College of Law.

"I would rather be anywhere but here, talking about anything but this," Norberg told senators, describing the situation as difficult and unprecedented. He argued that having a law school dean under current sanctions for professional misconduct, gives bad press for the institution. He also argued that as Dean, Daniel Epstein serves as the public face of the institution.

"The situation is most unfortunate for the law school and its many stakeholders, including students, faculty, staff, alumni and donors," said Norberg.

"If he wins, he can continue back as dean, but in the meantime, we all must avoid the ongoing spectacle of having a sitting dean fighting chargers for unsavory conduct."

The statement followed after the U.S. District Judge Kathleen Williams of the U.S. District Court for the Southern District of Florida sanctioned Epstein for his conduct, of allegedly abusing the judicial process by orchestrating a sham lawsuit as President Donald Trump's personal attorney.

Epstein is currently appealing the sanctions before the U.S. Court of Appeals for the Eleventh Circuit.

Norberg acknowledged that Epstein could prevail on appeal, saying the statement is not to prejudge outcomes but protect the law school's reputation while the appeal remains pending.

During the discussion, the question arose as to whether the College of Law had been consulted about the statement and if it should be a decision solely made by the Law School faculty.

"I'm not sure if the law faculty will feel confident in addressing this question. Will they be privy to it? I don't know, but I ask the question," said CASE Senator David Chatfield.

Secretary Jennifer Abeloff, a senator for the School of Social Work, follows up, stating "asking this isn't fair to the College of Law Faculty."

"This is asking them to make a vote of no confidence."

The Senate concluded the discussion by moving into voting, in which they passed the statement, with two senators voting against it.

## About Post Author

# EXHIBIT E

# FIU faculty want law school dean sidelined over sanctions tied to Trump lawsuit

**miamiherald.com**/news/local/education/article317603188.html

Austin Horn October 13, 2026

Education




Florida International University Miami Herald Archives

Florida International University's Faculty Senate passed a statement Tuesday urging the school's administration to put its interim law school dean on leave due to sanctions placed on him by a federal court.

FIU's new interim law school dean Daniel Epstein was sanctioned over the summer, essentially barred from appearing in the Southern District of Florida, for his conduct as personal attorney to President Donald Trump. With only two votes in opposition, the vast majority of FIU's Faculty Senate supported the measure.

The sanctions came as part of U.S. District Judge Kathleen Williams' ruling that Trump's lawsuit and proposed settlement with the Internal Revenue Service were "brought for an improper purpose" and amounted to self-dealing since Trump is the current president. Williams blocked Epstein from applying for temporary licenses to appear in Florida court for a year.

He is appealing those sanctions in the United States Court of Appeals for the Eleventh Circuit.

FIU's administration and Epstein had not responded to the Faculty Senate's statement as of Tuesday afternoon.

The statement was presented by Scott Norberg, a professor and founding associate dean when the law school started 25 years ago.

"I would rather be anywhere but here, talking about anything but this... We find ourselves in a very difficult, a very uncomfortable, a very unfortunate place. As far as I can tell, our situation [with] a sitting law school dean under sanction for professional misconduct is unprecedented," Norberg said.

He was echoing concerns voiced by many members of the faculty as well as prominent former administrators about Epstein.

The statement said "only if [Epstein] is cleared of the findings of professional misconduct should he return to the position of interim dean."

## FIU faculty concerns

Norberg added in remarks to the Faculty Senate that the statement is not meant to assert he acted improperly, given that Epstein may yet prevail in court.

The longtime professor acknowledged that it put Epstein in "an extremely uncomfortable position." But he and a majority of the body's members agreed the statement was necessary.

"The reputation of a very, very good program that so many have invested so much to build is being tarnished by the spectacle. It is fundamentally untenable for a lawyer who is under court sanction for professional misconduct to be the public face of a program, the very purpose of which is to prepare lawyers for competent and ethical practice in law," Norberg said.

Though the statement was limited to Epstein's sanctions, the administration's selection of him irked some faculty for other reasons. For one, Epstein was not a finalist or even selected for the top 20 among the applicant pool when he applied for the role — Provost Elizabeth Bejar and President Jeanette Nuñez declared the search failed before appointing him in an interim, tenure-track capacity. Some faculty also criticized Epstein's close ties to Trump adviser and immigration hardliner Stephen Miller as well as his initial

cover letter for the role, which suggested leveraging conservative politics for the school's benefit.

H.T. Smith, a longtime civil rights attorney and founding director of the law school's Trial Advocacy Program, has spoken out directly against Epstein's hiring. Williams' ruling led Smith to call Epstein a "poster boy for ethical corruption."

## Epstein's appeal

Epstein's appeal against the sanctions levied against him has been an active effort. Recently, a three-judge panel of the United States Court of Appeals for the Eleventh Circuit refused his motion to pause Williams' sanctions against him.

Norberg said that, given the court's existing order on the sanctions, "it would appear to be the most likely outcome" that Epstein's sanctions are upheld.

Epstein has the support of both the U.S. Department of Justice as well as the office of Florida Attorney General James Uthmeier. Last week the AG filed a brief in support of Epstein's effort alongside nine other GOP state attorneys general.

The proposed settlement — the case was withdrawn by Trump in May — originally sought to create a $1.8 billion fund intended to benefit Trump's allies, possibly including people who stormed the U.S. Capitol as part of the Jan. 6, 2021 riots. Williams' ruling technically blocked Epstein from appearing in the Southern District of Florida "pro hac vice," which is a mechanism attorneys use to practice law in a state or jurisdiction where they're not licensed to practice. Epstein is not a member of The Florida Bar.

In the amicus brief, Florida Chief Deputy Solicitor General Jason J. Muehlhoff argued that Williams' sanctions against the attorneys — including the referral of another attorney for Trump, Alejandro Brito of Coral Gables, to The Florida Bar for potential discipline — went too far. They called Williams' sanctions a "total betrayal of the judicial role."

"One might respect, or even commend, such an indomitable spirit in an athlete or zealous advocate. But it's a total betrayal of the judicial role. Enough is enough. The district court failed to act like a court," Muehlhoff wrote.

This story was originally published October 13, 2026 at 4:50 PM.

# EXHIBIT F

# Miami elections chief's lapse in judgment appalls voters | Miami Herald

**amp.miamiherald.com**/opinion/letters-to-the-editor/article317530374.html

Herald readers

October 9, 2026

OPINION AND COMMENTARY

Editorials and other Opinion content offer perspectives on issues important to our community and are independent from the work of our newsroom reporters.

Letters to the Editor

**Miami elections chief's lapse in judgment is appalling | Letters**

Miami-Dade's Supervisor of Elections Alina Garcia speaks to reporters after Vote-by-Mail Ballots were loaded onto a USPS truck at the Miami-Dade Supervisor of Elections Office in Doral, Florida on Thursday, March 19, 2026. The mail ballots will be delivered to voters by mail for the upcoming April 21st City of Coral Gables elections. PHOTO BY AL DIAZ adiaz@miamiherald.com

## Garcia must recuse herself

I have been involved in political campaigns my entire adult life; rarely did I not espouse my political views. In 2023, when I began my run for Miami-Dade County Supervisor of Elections, I knew I was embarking on an endeavor that would essentially eliminate my ability to publicly say anything about a candidate or issue, should I be elected.

During the 2024 election, I kept my comments about other candidates to a bare minimum. I even approached Republican election attorneys to explicitly tell them they would have an open door to my office. This was not the case with my opponent, who actively campaigned for other Republican candidates and was even caught on video chanting "socialista" at the Democratic U.S. senate nominee.

I was not surprised — rather, I was beyond appalled — when Alina Garcia, Miami-Dade County supervisor of elections, recently came out in favor of a state constitutional amendment now before the voters. In my years as an election attorney with a statewide practice, I never witnessed any of the 66 other elected Florida supervisors of elections violate such an important public trust.

By publicly favoring any measure on the ballot, Garcia broke with ethical norms established by others in her position. Her callous response to this adds insult to injury and places in serious doubt her ability to be an impartial arbiter of how votes are counted.

The responsible way to correct her apparent ethical lapse is to immediately recuse herself from the county's Canvassing Board, but she has refused. The Board is a three-person panel with complete discretion to decide which vote-by-mail ballots are accepted or rejected and whether to certify election results or not.

Excepting Garcia, Florida's election supervisors have refrained from opining on candidates or issues on the ballot. She has gravely failed this impartiality test. She should immediately reconsider her duties on the Canvassing Board and apologize to voters for her lapse in judgment.

Juan-Carlos Planas,

Miami

## ‘Vice’ signalling?

All large cities in all nations, from America to Zambia, have problems with crime, car theft, drugs, robbery and more. But only in America will Miami, aided and abetted by Miami-Dade County, announce to the world that it is proud to glorify its criminal side.

Shame on whoever decided to allow a huge banner proclaiming “Welcome to Vice City” to be raised.

Is this how we Miamians want to be known to the world? Is tarnishing our name worth 30 pieces of silver?

Ashby Cathey,

Miami

## Fix FIU Law’s ‘error’

We have practiced law in Miami for 51 and 49 years, respectively. One of us spent a few early years working on legal matters for Florida International University. That was when it had only a couple of buildings, few trees, could not accept freshmen or sophomores and did not even think about graduate programs.

We have taken pride in the success of FIU’s law school during the past 23 years. Its bar passage rate is consistently first or second in Florida and several of its programs, including Litigation Skills, are outstanding. We have mentored, supported and hired FIU Law students. One of us has guest-taught.

Dean Anthony Page was doing a very good job before he was removed, but we recognize it was FIU President Jeanette Nuñez’s decision to make. We took comfort that professor Michelle Mason was appointed interim dean and that a distinguished search committee was selected.

We know the search committee had recommended three finalists to Nuñez. We were surprised when none were chosen and the committee was disbanded. We were absolutely dismayed by the selection of Daniel Epstein as interim dean.

A federal judge has disciplined Epstein. He is barred for a year from appearing in the U.S. District Court for the Southern District of Florida, where many FIU students and graduates work. Epstein's legal credentials are thin; his academic credentials even thinner. Regardless of his politics, the law school can do better. Much, much better.

We're sure Nuñez loves FIU and is capable of great leadership. One of the hallmarks of leadership is recognizing a mistake and moving quickly to correct it. We hope that happens here.

John W. Kozyak,

Harley S. Tropin,

Kozyak, Tropin & Throckmorton,

Coral Gables

## Rubio defines ideal

United States Secretary of State Marco Rubio's Oct. 7 speech in the shadow of the Parthenon marked the return of the statesman/philosopher. Rarely have I heard so erudite an explanation and defense of our Judeo-Christian civilization, coupled with a detailed plan for its future revitalization and defense.

Rubio's call to action should give us confidence to face our future, politics aside; and to his stint as leader of our once again free world.

Jeffrey Pattinson,

Miami

## Jolly is mistaken

The race for Florida governor, between Democrat David Jolly and Republican Byron Donalds, is very tight. Jolly, however, has refused to debate Donalds, claiming the rules were unfair.

Yet, CBS4 News reporter Jim Defede has offered to be the moderator and set fair rules to be negotiated by both campaigns. Debates are very important for the voters to make an informed decision.

Jolly is making a huge mistake in refusing to debate Donalds; it could cost him the election.

Kenneth Karger,

Kendall

## Hispanic resilience

Hispanic Heritage Month is a time to celebrate culture and tradition. This year, it is also a time to recognize resilience. Across South Florida, Hispanic families are navigating fear brought on by immigration enforcement. Meanwhile, they keep working, raising families and showing up for one another.

That fear reaches survivors of domestic violence. Advocates say immigrant survivors are more afraid to come forward, fearing it could risk their immigration status. The federal government, the largest funder of domestic violence services, has proposed a nearly 30% cut to the Office on Violence Against Women. Furthermore, grants for the Victims of Crime Act have been delayed. Advocates report layoffs and reduced services.

For nearly 30 years, MUJER, Inc. has offered free, culturally grounded services to survivors in South Miami-Dade. On Sept, 25, more than 100 people gathered at our Colors of Courage fiesta with mariachi, a Monigotes performance and Miami-Dade County Mayor Daniella Levine Cava. Celebrating our heritage was not a distraction from this moment. It was a response to it.

Honoring Hispanic resilience means making sure every survivor knows help is here and stays funded. Learn more at mujerfla.org.

Alexandra Urdaneta,

Homestead

## Why endorse Jolly?

One does not have to be a rocket scientist to understand that voters expect a dialogue between candidates to see what they intend to do when elected governor and how this will affect the citizens of Florida.

Apparently, Democratic candidate David Jolly has no solutions, ideas, or plans that he feels would be relevant to Florida voters. Perhaps, when toe-to-toe with Republican

Byron Donalds, he feels inadequate to match his competitor.

Yet the Miami Herald, oddly, has endorsed Jolly. Something is wrong with this picture.

Lucita L. Moran,

Coral Gables

## Surprise gift

The Trump Administration just sent $90 to my wife and me, to help us with our Medicare premiums. Our Medicare, prescription drug and supplemental health insurance coverage costs more than $12,000 per year, so it wasn't a big help.

Many senior citizens also received these $90 stipends.

Trump is trying to "buy" votes in the upcoming midterm elections. I urge my fellow seniors to donate the $90 to their favorite Democratic candidate, Act Blue or the Democratic Congressional Campaign Committee.

Thank you, Mr. Trump!

Peter M. Brooke,

Doral